UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY,<br><br>      Plaintiff,<br><br>     vs.<br><br>FLUOR CORPORATION, HARTFORD ACCIDENT & INDEMNITY COMPANY, AND DOES 1 THROUGH 100,<br><br>      Defendants.<br><br>AND RELATED COUNTERCLAIMS AND CROSS-CLAIMS | Case No. 4:16-CV-00429 ERW<br><br>**FLUOR'S RESPONSE TO ZURICH'S MOTION TO COMPEL PRODUCTION OF UNDERLYING DEFENSE COUNSEL FILES [DOCKET # 124]** |

Defendant/Cross-Claimant Fluor Corporation ("Fluor") hereby responds to Plaintiff/ Cross-Defendant Zurich American Insurance Company's ("Zurich") Motion to Compel Production of Underlying Defense Counsel Files ("Motion"), filed July 9, 2018 (Dkt. No. 124).

I.       **INTRODUCTION**

Zurich's Motion subverts the process laid out at the June 28, 2018 hearing by mischaracterizing the issues in dispute in this case, expanding its requested relief to include categories of documents never before discussed, and ignoring commitments made during the meet and confer.  More importantly, by focusing primarily on unfairly maligning Fluor's good faith efforts to reasonably compromise, Zurich fails to meet its burden to justify the unduly burdensome demand for production of ***all*** Fluor's defense counsel files from the underlying Lead Lawsuits (the "Defense Files"), most of which are irrelevant.  Zurich's Motion should be denied.

Pursuant to the parties' discussion with the Court, Zurich committed to "put Fluor on notice" of the specific portions of the Defense Files that Zurich contends should be produced, and explain *why* they are relevant to this case.  See Dkt. 120 (June 28, 2018 Hr'g Tr.) at 37:9–19.  Instead, Zurich filed a Motion seeking production of the *entire* Defense Files—from three different law firms, on multiple cases, some of which stretch back decades—despite Zurich's recent acknowledgement that a "broad swath" of defense counsel's files are "irrelevant" and "not necessary in this litigation." *See* Zurich Ex. AA at 3; Dkt. 120 at 31:10–11.[1]  Consequently, Zurich fails to answer the threshold inquiries posed by Fluor throughout the meet and confer process and articulated by this Court during the June 28 discovery hearing.

Only three paragraphs of the 15-page Motion address any arguable relevance of the entire Defense Files.  Zurich targets vague and amorphous topics like defense counsel's "tactical decisions" and "work on the files," which forecast Zurich's intent to essentially re-litigate the underlying Lead Lawsuits.  These unbounded topics bear little or no relevance to the actual disputes between the parties, and would greatly expand this litigation.  The few topics that Zurich describes with specificity could be addressed by more efficient means, such as a factual

---

[1]    Zurich even demands production of one defense counsel's files despite admittedly never raising the issue as part of the parties' extensive meet and confer efforts.  *See* Mot. at 1, n. 1.

stipulation between the parties (underlying plaintiff birthdays) or by narrowly tailored searches (economic experts). These mechanisms would avoid the disproportionate costs associated with compiling, reviewing, and producing the voluminous Defense Files, while also providing Zurich the information it claims to need.

Fluor is even willing, after accounting for the stipulations the parties can and should finalize, to produce additional, non-privileged materials from the Defense Files (e.g. pleadings, discovery responses, and transcripts) that can be compiled at a reasonable cost. However, Zurich's Motion goes on to demand quintessentially privileged documents—attorney-client communications and internal work product—under the guise of a "common interest" that even Zurich admits does not cover periods after Zurich breached its duties to Fluor.

Zurich does not seek this information for the legitimate reason that typically allows insurers access to documents generated in connection with a policyholder's defense—to work cooperatively to ensure the policyholder's interests are protected against third-party claims—but rather to mine for information that could now be used to limit Zurich's obligations to Fluor. Zurich cannot invoke and derive an advantage from the "common interest" doctrine after having long taken positions adverse to Fluor's interests. The purpose of the "common interest" doctrine is not to benefit an insurer in a coverage dispute, nor to allow insurers to pore through the day-to-day minutiae of underlying lawsuits despite having "no direct communication or involvement with underlying defense counsel" during the pendency of the cases of the cases. *See* Ex. 1.[2]

Zurich's Motion is a blunt instrument that would unnecessarily bog down the parties (and the Court) in the production of irrelevant material and sidetrack the core discovery disputes, when the limited set of relevant, non-privileged documents Zurich is entitled to could be efficiently identified and produced. Fluor respectfully requests that Zurich's Motion be denied.

---

[2] Unless otherwise specified, all exhibits referenced herein are attached to the Declaration of John M. Wilson ("Wilson Decl."), filed concurrently with this brief.

## II.     FACTUAL BACKGROUND

### A.     Fluor's Voluminous Defense Files

Dating back to 1995, Fluor retained Armstrong Teasdale LLP ("Armstrong") to defend against lead exposure claims in Missouri, including the Lead Lawsuits. *See* Declaration of S. Kozak ("Kozak Decl.") ¶¶ 3–4. Because Zurich and Doe Run Resources Corporation ("Doe Run") largely controlled the defense, litigation, and settlement of the Lead Lawsuits in connection with their respective obligations as Fluor's insurer and indemnitor, Armstrong primarily played a secondary monitoring role. *See id.* That dynamic changed dramatically in November 2010, when Doe Run and Zurich negotiated a "global settlement" that excluded Fluor shortly before trial in the *Alexander* matter.

After being abandoned by its insurer and indemnitor, Fluor was forced to mount a defense in a short window and the pace of its litigation activity increased dramatically. Following the trial in *Alexander*, which resulted in a verdict against Fluor and its affiliates in excess of $360 million, Fluor engaged, with Zurich's approval, a new law firm—Sandberg Phoenix & Von Gontard P.C. ("Sandberg")—to serve as lead trial counsel for *Hawley*, the next of the Lead Lawsuits set for trial.[3] Attorneys at Sandberg and Armstrong then worked in tandem to defend Fluor in the Lead Lawsuits until those cases were settled in October 2014.

The files maintained by Fluor's two defense firms are voluminous and encompass the documents generated on a day-to-day basis in any active litigation. In assessing the scope of materials potentially responsive to Zurich's request, Armstrong has identified over 89,000 documents from its files and Sandberg has identified over 46,500 documents (including nearly 215 Bankers Boxes of documents that Sandberg previously scanned), totaling more than 100 gigabytes of data combined. Kozak Decl. ¶¶ 5–8; Ryan Decl. ¶¶ 4–7. Fluor reasonably expects

---

[3]   Fluor also retained Bryan Cave Leighton Paisner LLP ("Bryan Cave") to pursue an appeal.

3

that this amount of data could contain more than one million pages of documents.[4]

### B. Zurich Mischaracterizes the Parties' Meet and Confer Efforts

Zurich's lengthy discussion of the parties' dispute over production of the Defense Files is unnecessary to the resolution of the Motion. However, because it is replete with misstatements and omissions, Fluor briefly responds to correct certain of Zurich's claims.

Zurich first propounded its requests for production on November 14, 2016, and Fluor has produced in excess of 106,000 pages of responsive documents.[5] Fluor met and conferred in good faith with Zurich throughout 2017 with the aim of reaching an informal agreement on the scope of additional documents to be produced. This process was interrupted—necessarily—by threshold issues that required the parties to divert their attention to resolving disputes that would affect *all* production-related issues in the case, including the parties' electronically-stored information ("ESI") protocol and Stipulated Protective Order ("SPO"). Fluor first drafted and circulated a proposed SPO on August 9, 2016, and the ESI Protocol on April 10, 2017. Disputes Zurich raised regarding the SPO were presented to the Court on December 28, 2017, and the final SPO entered on January 22, 2018. Similarly, after many fits and starts concerning the custodians and search terms to be included, the parties finally submitted the ESI protocol to the Court for approval on June 26, 2018. Fluor repeatedly explained to Zurich that delay in finalizing the ESI protocol would impact the collection and production of additional documents, including any defense-related files. *E.g.*, Ex. 2 at n. 1; Zurich Ex. X at 3.

The parties met and conferred regarding Zurich's demand for production of the entire Defense Files while negotiating the ESI protocol, and presented an initial dispute regarding

---

[4]   Fluor has not yet been able to determine the amount of data contained in Bryan Cave's files, since Zurich first raised the issue of compelling their production when it filed its Motion on July 9.

[5]   Zurich, in turn, has produced less than 14,000 pages of documents, despite the fact that the issues driving this case—bad faith and exhaustion—turn on ***Zurich's*** conduct, not Fluor's.

4

Defense Files to the Court during a telephonic discovery hearing in January 2018.  *See* Dkt. 84 (Jan. 9, 2018 Hr'g Tr.).  The Court's guidance during that hearing spurred further efforts to negotiate the scope of Zurich's demand.  Shortly thereafter, per the discussion with the Court, Fluor provided a more detailed index of Sandberg's files so that Zurich could specifically identify the documents it targeted for production.  *Id*. at 51-54; Zurich Ex. R.

Fluor also reiterated to Zurich that Armstrong's litigation files are not similarly indexed.  Zurich Ex. Q at 2–3.  However, Zurich mischaracterizes what Fluor has made available from that firm.  As Fluor explained in prior correspondence, for each underlying case, Armstrong maintains litigation files organized into broad categories such as pleadings, correspondence, discovery, and other standard litigation topics.  *See* Zurich Ex. I at 2–3.  Zurich has not engaged with Fluor in any attempt to narrow these categories, instead demanding the entire Armstrong file.  Nor did Zurich ever press for Fluor to produce any Bryan Cave files.  In fact, the Motion was the first time Zurich demanded the entire Bryan Cave file be produced.  *See* Mot. at 1, n. 1.

The parties conferred again after Fluor provided the above information in February.  Zurich sent Fluor 40 pages of questions regarding Sandberg's index and agreed that there were several categories of documents and folders of documents Zurich did not need for this case.  *See* Zurich Ex. V.  Although Fluor objected to the overbreadth of Zurich's request and Zurich still had not provided a justification for discovery that appeared facially irrelevant, Fluor nonetheless committed to evaluate Zurich's 40 pages of questions with defense counsel.  Zurich Ex. X.  The Sandberg partner most familiar with their files (who has no involvement in this litigation) spent over ***30 hours*** reviewing and responding to Zurich's requests, generating a comprehensive and detailed 69-page response.  Ryan Decl. ¶¶ 9–12;  *see* Zurich Ex. AB.

Just days before filing the instant Motion, Zurich responded to Sandberg's comprehensive response indicating its agreement not to pursue *over half* of the categories.  *See*

5

Zurich Ex. AG. While this should have drastically *reduced* the scope of Defense Files in dispute, Zurich has now *expanded* the scope of its request to include the complete files of Armstrong, Sandberg *and* Bryan Cave.

### C.  Zurich's Requested Relief Ignores the Fact Stipulations it Proposed as a Basis for Streamlining Discovery

Fluor negotiated with Zurich and agreed to submit two stipulations (discussed below) that Zurich represented would limit the scope of its requested production of Defense Files. Yet Zurich's Motion discards these efforts and insists on an order compelling *all* Defense Files.

On June 13, Zurich proposed for the first time—and Fluor immediately indicated agreement—to stipulate to biographical information regarding the plaintiffs in the Lead Lawsuits ("Plaintiff Stipulation"). *See* Zurich Exs. AA, AB. Zurich contended that a stipulation based on the "ages of each of the underlying plaintiffs" and the "earliest date of potential injury (that is supported by evidence)" would provide the factual underpinnings for one of Zurich's legal arguments. *Id*. In turn, Zurich explained that the Plaintiff Stipulation would "eliminate as irrelevant" certain unspecified "broad[] swath[s] of the underlying defense counsel files." *Id.*[6]

Fluor received Zurich's draft Plaintiff Stipulation on June 26 and provided revisions on July 2. Fluor accepted the birthdates for all 63 of the underlying plaintiffs, and the "exposure" information provided for 53 of the 63, while agreeing to work cooperatively to address the disputed exposure dates for the remaining ten. *See* Motion Ex. AF. While negotiations are ongoing—Zurich did not substantively respond to Fluor until July 13, one business day before Fluor was scheduled to file this opposition—Zurich nevertheless seeks to compel documents relating to the nearly 85% of underlying plaintiffs for which there is *no dispute*.

---

[6]  As explained below, Fluor disagrees with Zurich's asserted relevance of this information, because Zurich's legal argument is immaterial to the issues in dispute. Nevertheless, Fluor has no objection to stipulating to these facts while the parties dispute their legal import.

6

Fluor also has worked with Zurich to reach a stipulation to avoid further production of defense invoices that were tendered contemporaneously to Zurich, produced again in this action, and thus already are in Zurich's possession. The goal of this stipulation is to avoid the unnecessary production of paper because the Defense Files (and Fluor's internal records) include duplicate copies of the *exact same* invoices. Fluor drafted the initial invoice stipulation and has continued to work in good faith to finalize it. *See* Zurich Ex. AE.[7] Nevertheless, Zurich's Motion discards these compromises and now demands an order compelling the entire Defense Files, including invoices that are already in Zurich's possession.

### III. ARGUMENT

The Court should deny Zurich's Motion because the Defense Files are irrelevant and the burden associated with producing the voluminous files is not proportional to the needs of the case. Any relevant documents can be obtained through less obtrusive means. Therefore, there is no need to transform this case into a re-litigation of the Lead Lawsuits.

In addition, the Court should reject Zurich's blanket assertion that the attorney-client privilege and work product protection categorically cannot apply to the Defense Files of Fluor's defense attorneys, particularly since ***Zurich already conceded*** that "it is not entitled to discovery of Fluor's communications with its defense counsel" after Zurich stopped reimbursing Fluor's defense costs. *See* Zurich Ex. S, at 2. Zurich also conceded that there can be no "common interest" after Zurich first contended "there was no longer any coverage" for the Lead Lawsuits, which occurred in 2012. *See* Ex. 4.

---

[7] Fluor's draft contemplates an exhibit that identifies each of the numerous invoices at issue in Fluor's damages claim by bates number. As Zurich knows, Fluor is working to prepare that document, which it anticipates will take some time to complete. *See* Zurich Ex. AE. But this should not prevent the parties from finalizing the remaining terms of the stipulation.

7

Finally, Zurich's Motion improperly seeks relief concerning the files of Bryan Cave, about which Zurich has *never* previously consulted with Fluor. This request should be denied.[8]

### A. The Underlying Defense Files Are Irrelevant

Zurich may only obtain discovery that is non-privileged, relevant to a claim or defense *in this case*, and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "A threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Smith v. Toyota Motor Corp.*, No. 2:16-cv-00024-ERW, 2017 WL 1425993, at *2 (E.D. Mo. Apr. 21, 2017) (Webber, J.) (citations omitted). Despite Fluor's repeated requests, Zurich has not demonstrated the relevance of the voluminous documents it seeks to disputed issues in this case. *E.g.*, Zurich Ex. X; *cf.* Dkt. 120 at 37:11–14 (Court directing Zurich to precisely define the documents it seeks and explain their relevance to the issues in the case).

As the parties have noted, this case centers on Zurich's abandonment of Fluor when a reasonable settlement opportunity was presented, and Zurich's effort to exhaust Fluor's policy limits through payments to Doe Run.[9] Instead of targeting specific categories of documents related to those issues, which turn primarily on **Zurich's conduct**, Zurich's Motion retreats to its original demand for the entire Defense Files generated by multiple law firms over a number of

---

[8] Fluor first became aware of Zurich's request for Bryan Cave's appellate defense counsel file upon reading the Motion. As Zurich admits, this issue has never been raised before in the parties' extensive meet and confer efforts on this dispute. *See* Mot. at 1, n. 1. Zurich has an obligation to meet and confer with Fluor before raising a discovery issue with the Court. *See* E.D.Mo. L.R. 3.04. The Court should therefore deny Zurich's Motion as to the Bryan Cave files and require Zurich to meet and confer with Fluor about those files in good faith.

[9] *See* Dkt. 84 at 44:15–20 (Fluor's counsel: "[T]he real issue that is driving this case, is Fluor's bad faith claim. Fluor is the party that is out $306 million and believes that Zurich has an obligation to pay those damages as a result of its failure to consummate a settlement when a reasonable opportunity presented itself."); *id*. at 40:17–19 (Zurich's counsel: "[T]he crux of the litigation from Zurich's point of view is Zurich is seeking a declaration that the policies are exhausted[.]").

8

years, and fails to demonstrate the relevance of such a sweeping demand.

Zurich's Motion argues that the Defense Files are relevant to "coverage" for the Lead Lawsuits (*see* Mot. at 11), but that issue is not legitimately in dispute here. Fluor already established its right to defense coverage for the Lead Lawsuits in prior litigation in California Superior Court. *See* Dkt. 42 (Fluor's Counterclaim) ¶¶ 19–21 & Exs. 5, 6. Zurich's duty to defend Fluor carried with it an obligation to settle when a reasonable opportunity arose. If Fluor establishes that Zurich unreasonably failed to settle on Fluor's behalf, Zurich is responsible for the consequential damages Fluor incurred. *See Scottsdale Ins. Co. v. Addison Ins. Co.*, 448 S.W.3d 818, 827 (Mo. 2014) (Missouri Supreme Court clarifying the elements of the tort of bad faith failure to settle: "a liability insurer: (1) reserves the exclusive right to contest or settle any claim; (2) prohibits the insured from voluntarily assuming any liability or settling any claims without consent; and (3) is guilty of fraud or bad faith in refusing to settle a claim within the limits of the policy").

In contrast, establishing a right to **indemnity** coverage under the policy is not an element of a bad faith failure to settle claim, particularly where, as here, the insurer's duty to **defend** has already been established. Once a carrier obligated to defend fails to consummate a reasonable settlement, the question of indemnity coverage under the insurance contract is immaterial to the insurer's tort liability. Indeed, bad faith failure to settle claims are properly presented to the jury even after an express finding of no coverage under a policy. *See, e.g.*, *Advantage Bldgs. & Exteriors, Inc. v. Mid-Continent Cas. Co.*, 449 S.W.3d 16, 27 (Mo. Ct. App. 2014) (noting the "failure to settle in good faith" and "an overall failure to handle the claim in good faith" can be actionable even in the absence of coverage); *cf. Elec. Power Sys. Int'l v. Zurich Am. Ins. Co.*, 2016 U.S. Dist. LEXIS 3980, *8 (E.D. Mo. Jan. 13, 2016) ("An insurer's duty to provide coverage to its insured is treated by Missouri courts as a distinct contractual issue from the same

9

insurer's duty to settle within the policy limits when it has the chance to do so."). Accordingly, under Missouri law, whether Zurich has indemnity obligations for the Lead Lawsuits is irrelevant to Fluor's bad faith claim.

Regardless, ***Zurich expressly acknowledged that the underlying liabilities are covered***. By withdrawing its prior reservation of rights and contributing indemnity money to a settlement on behalf of Doe Run, a co-insured under Zurich's policies, then claiming its payment(s) exhausted the coverage available to Fluor, Zurich necessarily admitted coverage. *See* Ex. 3.[10]

Zurich now seeks to repudiate its prior indemnity coverage determination and re-litigate the Lead Lawsuits, digging into the minutiae of the day-to-day defense as a means of 'Monday morning quarterbacking' every decision. This is improper. *See Allen v. Bryers*, 512 S.W.3d 17, 31-34 (Mo. 2016) (precluding insurer "from relitigating any facts" determined in the underlying case); *Assurance Co. of Am. v. Secura Ins. Co.*, 384 S.W.3d 224, 232 (E.D. Mo. 2012) (insurer with duty to defend is bound by the result of underlying litigation).

Zurich's only remaining argument for the relevance of Fluor's Defense Files is that "Fluor has put the work of its defense counsel directly at issue" in this case by alleging bad faith. *See* Mot. at 10 (citing Fluor's Counterclaim ¶¶ 13, 35, 72). As described above, this is incorrect, because a bad faith failure to settle claim focuses on ***Zurich's conduct***. *See Scottsdale*, 448 S.W.3d at 827. Fluor ***does*** seek reimbursement of defense invoices that Zurich failed to timely pay after breaching its duty to defend and failing to settle on Fluor's behalf, then improperly seeking to exhaust Fluor's policy limits through payments to Doe Run. *See* Mot. at 10 (citing Fluor's Counterclaim ¶¶ 18, 50). However, the only information needed to assess those claims

---

[10] Zurich recently argued that its payment to Doe Run was merely as settlement of bad faith claims. However, the "Herculaneum" agreement was not a typical "settlement" where the insurer disavows liability. Rather, Zurich expressly withdrew its reservation of the right to contest coverage, admitted that the Lead Lawsuits constitute five "occurrences" under the Zurich policies, and paid Doe Run the policy limits available under that analysis. *See id*.

are the invoices that Zurich *already has* in its possession. Moreover, the unpaid invoices concern a time period—from February 2013 forward—that Zurich conceded during the meet and confer is not discoverable in this case because the "tripartite relationship" does not cover periods during which an insurer is not paying defense costs. *See* Zurich Ex. S; *accord* Ex. 4. Zurich does not need, and is not entitled to, production of the entire Defense Files for this purpose.

      **B.**      **The Burden of Producing the Defense Files Is Disproportionate to Any Purported Relevance**

Even if the entire Defense Files were marginally relevant, the burden of collecting, processing, and reviewing three law firms' litigation files, spanning more than a decade, vastly outweighs any benefit to this case. Under the Federal Rules, discovery must be proportional, taking "into account the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Toyota Motor Corp.*, 2017 WL 1425993, at *2 *see also* Fed. R. Civ. P. 26(b)(1).

A critical factor in determining whether discovery is proportional to the needs of a case under Rule 26 is "the importance of the discovery in resolving the issues" at stake in the action which informs "whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(1); *see also Baranski v. U.S.*, 2015 WL 3505517, at *17–18 (E.D. Mo. June 3, 2015) ("[T]he [$85,000] cost and burden associated with obtaining [marginally relevant] emails cannot be justified in the absence of some showing by petitioner of a likelihood that the emails may contain significant information to resolve issues presented by his case."). As noted above, Zurich has not identified relevant issues in *this case* that would be advanced by unbounded discovery of defense counsel's files, nor can it given the attenuated link

11

between the day-to-day defense of the Lead Lawsuits and the claims and defenses at issue here, which center on Zurich's conduct.

Zurich's requested relief would, however, impose significant burden and expense on Fluor. Zurich's request encompasses over 89,000 documents from Armstrong and over 46,500 documents from Sandberg, totaling more than 100 gigabytes of data. Kozak Decl. ¶¶ 5–8; Ryan Decl. ¶¶ 4–7. Thus, the Defense Files likely contain over one million pages and could cost upwards of $45,000 to $55,000 just to prepare the data for review. That cost does not include the many hundreds of attorney hours that will be required to review the voluminous documents for responsiveness, privilege, and potential production, including preparing a privilege log. This is all time, effort, and money spent on issues with scant relevance to the primary issues of this case.

**C.  Zurich Is Not Entitled to Fluor's Attorneys' Files on the Basis of a "Common Interest" with Fluor**

While Fluor remains willing to produce the non-privileged portions of its Defense Files (e.g. pleadings, discovery, expert reports) that can be cost-efficiently made available (after the requests are narrowed pursuant to the parties' stipulations), Zurich is not entitled to discover the privileged or work product-protected material of Fluor's defense counsel. *See* Fed. R. Civ. P. 26(b)(1). Zurich does not contend that the Defense Files fail to meet the elements of attorney-client privilege or work product, or that Fluor has waived either protection. Instead, Zurich argues that it is entitled to the Defense Files because it shared a "common interest" with Fluor while the Lead Lawsuits were pending. Mot. at 12–15. Zurich is wrong on the law and the facts.

The purpose of the "common interest" doctrine, particularly as it pertains to insurers and policyholders, is to permit the parties to work cooperatively to defend the insured against third-party claims. *See N. River Ins. Co. v. Columbia Cas. Co.*, No. 90 CIV. 2518 (MJL), 1995 WL 5792, at *4 (S.D.N.Y. Jan. 5, 1995) ("when an insurer actually retains counsel to provide a defense for the insured, there is a common legal interest" in defending against a third-party

claim); *State ex rel. Winkler v. Goldman*, 485 S.W.3d 783, 790 (Mo. Ct. App. 2016) ("The 'common interest' doctrine allows parties with a community of interests to preserve the privilege's protections where the parties had joined forces for the purpose of obtaining more effective legal assistance.") (internal citations and quotations omitted). The doctrine is not intended to give insurers who repudiate their obligations license to dig through litigation files in hopes of generating coverage defenses. *See generally* RESTATEMENT OF THE LAW OF LIABILITY INSURANCE, Proposed Final Draft § 11(2) (2017) ("An insurer does not have the right to receive any information of the insured that is protected by attorney–client privilege, [or] work-product immunity . . . to benefit the insurer at the expense of the insured."). Even where there is a "common interest" between insurer and insured, the policyholder remains entitled to assert privilege and work product over certain discussions with defense counsel, particularly those that relate to insurance coverage claims.

In this case, Zurich contested its obligation to defend the Lead Lawsuits from the beginning. Therefore, Fluor was forced to litigate and obtain court orders establishing Zurich's duty to defend. The defense Zurich provided following those orders was conditioned on a reservation of rights. These circumstances necessarily created "an atmosphere of uncertainty as to the scope of any identity of interest shared by" the insurer and the insured. *See In re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, No. MDL 764, 1990 WL 90495, *6 (E.D. Pa. June 27, 1990).[11]

---

[11]  Zurich cites two cases, *In re Allstate Ins. Co.*, 722 S.W.2d 947 (Mo. 1987), and *Fidelity Nat. Title Ins. Co. v. Captiva Lake Investments, LLC*, 941 F. Supp. 2d 1121 (E.D. Mo. Jun. 17, 2011) ("*Fidelity II*"), for the proposition that Zurich's and Fluor's interests were aligned simply by virtue of Zurich's partial reimbursement of defense costs. (Of course, Zurich concedes that any such common interest terminated when it stopped reimbursing defense costs, no later than May 2012 or February/October 2013. *See* Ex. 4; Zurich Ex. S at 2.) Neither case supports Zurich's argument. [Footnote continues on page 14]

13

At the very least, the evidence now shows that Zurich's interests have been adverse to Fluor's—vitiating any alleged claim of "common interest"—dating back to the November 2010 mediation. *See* Dkt. 126, Ex. 12.[12] This acknowledged "adversity" manifested itself when Zurich breached its obligations to Fluor by failing to consummate a settlement on Fluor's behalf when the opportunity arose in 2010, which is the genesis of this dispute. An insurer that breaches or repudiates its duty to defend forfeits the rights that might otherwise have been available to defending carriers as part of the common interest of minimizing or avoiding the policyholder's liability. *See Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 89 (Mo. Ct. App. 2005) (insurer that breaches duty to defend "is treated as if it waived any control of the defense of the underlying tort action") (citing *Ballmer v. Ballmer*, 923 S.W.2d 365, 369 (Mo. Ct. App. 1996)); *Intergulf Development LLC v. Super. Ct.*, 183 Cal. App. 4th 16, 20 (2010).

Zurich bases its expansive concept of the "common interest" doctrine on a case, *Fidelity Nat. Title Ins. Co. v. Captiva Lake Investments, LLC*, No. 4:10–CV–1890 (CEJ), 2011 WL 2462048 (E.D. Mo. Jun. 17, 2011) ("*Fidelity I*"), that is inapposite. In *Fidelity I*, the insurer retained a law firm to defend the insured in underlying lawsuits that subsequently led to a

---

*In re Allstate* stands for the simple proposition that there may be situations where the insurer and insured have a common interest in defending a lawsuit. 722 S.W.2d at 952. But the *Allstate* case was not addressing a situation where the insured retained counsel to protect its interests because the carrier contested its defense obligation. *Id.* at 951. Similarly, contrary to Zurich's characterization of *Fidelity II*, that case did not hold that an insurer providing a defense subject to a reservation of rights necessarily establishes a common interest between insurer and insured. That case merely held that an insurer does not automatically breach its duty to defend when it provides the insured with a conditional defense. 941 F. Supp. 2d at 1130–31. However, conflicts of interest between the insurer and insured can arise where an insurer provides a defense under a reservation of rights. *See Allen*, 512 S.W.3d at 31-34; *Missouri ex rel. Rimco, Inc. v. Dowd*, 858 S.W.2d 307, 308 (Mo. App. E.D. 1993) ("conflict of interest [where] the insurer may be more concerned with developing facts showing non-coverage than facts defeating liability"). That is precisely the situation here, where Fluor was forced to litigate Zurich's duty to defend and Zurich has repeatedly acknowledged that Fluor's and Zurich's interests diverged.

[12] Zurich also described its interests as "adverse" to Fluor's in prior briefing. *See* Ex. 5, at 9.

14

coverage dispute. *Id.* at *1. In connection with the coverage dispute, the ***policyholder*** subpoenaed the case file of its own defense attorney under the theory that the insured necessarily had an attorney-client relationship with the law firm representing it in the underlying case. *Id.* at *1–2. The court agreed that the insured was necessarily a client of the firm, so the attorney-client privilege could not shield the firm's case file. *Id.* at *2–3. Likewise, the Court held that the work product protection did not apply because the attorney that generated it was "common" to both the insurer and insured. The situation is entirely different here where Zurich, the insurer, is attempting to gain access to privileged communications generated by Fluor's attorneys even though the parties' interests were divergent for many years.

However, Zurich recognized the limits of "common interest" during the meet and confer process. Zurich expressly conceded that any alleged "common interest" between Zurich and Fluor applies only during periods where "Zurich continued to fund Fluor's defense in good faith," and Zurich "is not entitled to discovery of Fluor's communications with its defense counsel" after Zurich stopped reimbursing Fluor's defense costs because of its contention that "there was no longer any coverage." Zurich Ex. S, at 2; *see* Ex. 4. Zurich contends that policy limits available to Fluor for the Lead Lawsuits were exhausted by March 2012 (*see* Dkt. 126 at 7, n.4), and Zurich therefore repudiated its duty to defend by failing to reimburse defense costs incurred from February 2013 forward.[13] Zurich thus has admitted that it cannot claim any common interest with Fluor after March 2012.

IV.   **CONCLUSION**

For the foregoing reasons, Fluor requests that the Court deny Zurich's Motion.

---

[13]   Zurich later sought to mitigate its concession by advancing the date on which any common interest terminated to October 8, 2013. *See* Zurich Ex. S, at 2. However, Zurich actually stopped reimbursing Fluor's defense costs for work performed by Armstrong dating back to ***February*** 2013. *See* Ex. 6.

15

DATED:     July 16, 2018                    Respectfully Submitted,

                                                  */s/ John M. Wilson*
                                                Brook B. Roberts # 214794CA
John M. Wilson # 229484CA
John T. Ryan # 211899CA
Drew T. Gardiner # 234451CA
Steven Lesan # 294786CA
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
858.523.5400 telephone
858.523.5450 fax
brook.roberts@lw.com
john.wilson@lw.com
jake.ryan@lw.com
drew.gardiner@lw.com
steven.lesan@lw.com

- AND -

Randal K. Mullendore, # 40889MO
Christine F. Miller, # 34430MO
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
314.480.1882 telephone
314.480.1505 fax
chris.miller@huschblackwell.com
randy.mullendore@huschblackwell.com

ATTORNEYS FOR DEFENDANT/CROSS-CLAIMANT FLUOR CORPORATION

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 16, 2018, the foregoing document was served on all counsel of record by electronic mail.

DATED: July 16, 2018

/s/ John M. Wilson
John M. Wilson # 229484CA
Attorney for Defendant Fluor Corporation
Latham & Watkins, LLP
12670 High Bluff Drive
San Diego, CA 92130
Tel: 1.858.523.5400