UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 4:16CV00429 ERW ) |
| FLUOR CORPORATION, et al., | ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff/Counter-Defendant Zurich American Insurance Company's Motion for Partial Summary Judgment against Defendant/Counter-Claimant Fluor Corporation with respect to Zurich's claim in its First Cause of Action [192]; Fluor's Motion to Dismiss Zurich's First, Second and Third Causes of Action [218]; and Fluor's Motion for Partial Summary Judgment against Zurich [220] with respect to Zurich's Affirmative Defenses 1, 6, 7, and 18 to Fluor's Second Cause of Action for bad faith failure to settle ("BFFS").

**BACKGROUND**

Zurich issued general liability policies at certain periods from December 31, 1958, to June 1, 1985 (the "Zurich Policies"), to a company called St. Joseph Lead, which later became St. Joe Minerals. ECF No. 1 at ¶ 12. From 1981 to 1994, Fluor Corporation owned St. Joe Minerals, ("St. Joe"), which operated a lead smelter facility in Herculaneum, Missouri. *Id.* at ¶¶ 7, 12. In 1994, Fluor sold its interest in St. Joe to the Renco Group, Inc., which renamed the company The Doe Run Resources ("Doe Run"). *Id.* at ¶ 7.

Each of the Zurich Policies provide in relevant part, that Zurich:

1

> shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false, or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient.

Fluor's Statement of Uncontroverted Material Facts in Support of its Motion for Partial Summary Judgment ("FSUMF"), ECF No. 221-1 at ¶ 2. The Zurich Policies also provide that the insured "shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense." *Id.* at ¶ 3. The Zurich Policies state that Zurich:

> will pay on behalf of the insured all sums which the insured shall
> become legally obligated to pay as damages because of
> A. bodily injury or
> B. property damage
> to which this insurance applies, caused by an occurrence[.]

*Id.* at ¶ 4.

Commencing in 1995, various parties, including Fluor and Doe Run, were sued for bodily injury and property damage claims arising from St. Joe's lead smelter facility in Herculaneum, Missouri (hereafter referred to as the "Herculaneum Claims"). ECF No. 1 at ¶¶ 22-23. In 2005, certain residents of Herculaneum filed claims against Fluor, Doe Run, and others in the Missouri Circuit Court, Twenty-Second Judicial Circuit in the City of St. Louis, Missouri, for alleged injuries arising from the operation of the smelter, including the period 1981 through 1994. *Id.* at ¶ 23. On September 5, 2005, Fluor tendered seven lawsuits (the "Herculaneum Lawsuits"), including *Alexander, et al. v. Fluor Corporation, et al.*, *Heilig, et al. v. Fluor Corporation, et al.*, *Pedersen, et al. v. Fluor Corporation, et al.* (the "*Alexander/Pedersen/Heilig* Litigation) to Zurich for a "full and complete defense" under each of the Zurich Policies. FSUMF, ECF No. 221-1 at ¶¶ 5-11.[1] On December 14, 2005, Zurich agreed to defend Fluor in these lawsuits

---

[1] In 2009, 2010, and 2014, three other lawsuits were filed against Fluor and tendered to Zurich for a "full and complete defense" under the Zurich Policies. FSUMF, ECF No. 221-1 at ¶¶ 12-

pursuant to a reservation of rights. *Id.* at ¶¶ 15-21. Among the rights Zurich reserved in connection with each of the Herculaneum Lawsuits, Zurich asserted that coverage was "not available if and to the extent that any insured has failed to satisfy any of the conditions precedent to coverage set forth in the Zurich/St. Joe policies," including "the duty to refrain from making voluntary payments or voluntarily assuming obligations (except at its own expense)." *Id.* at ¶ 25.

On November 18, 2010, a mediation of the Herculaneum Lawsuits involving representatives from Fluor, Doe Run, Zurich, and the underlying plaintiffs was conducted in Clayton, Missouri. *Id.* at ¶ 28. After this mediation, on December 13, 2010, Doe Run reached a settlement with plaintiffs in the remaining Herculaneum Claims, including the plaintiffs in the *Alexander/Pedersen/Heilig* Litigation ("Doe Run Settlement"). ECF No. 1 at ¶ 24. Fluor was not included in the Doe Run Settlement. *Id.* at ¶ 25. Fluor never requested Zurich fund any settlement on its behalf at that mediation nor at any subsequent mediation of the *Alexander/Pedersen/Heilig* litigation. *Id.* The claims against Fluor in the *Alexander/Pedersen/Heilig* Litigation proceeded to trial and resulted in a judgment against Fluor for $38,527,186 in compensatory damages, and $320 million in punitive damages. *Id.* at ¶ 26. In October 2014, Fluor entered into a settlement with plaintiffs from the Herculaneum Lawsuits (that had settled with Doe Run in December 2010) for approximately $300 million (the "Fluor Global Settlement"). FSUMF, ECF No. 221-1 at ¶ 32.[2]

---

14. Zurich also agreed to defend Fluor in these suits pursuant to a reservation of rights. *Id.* at ¶¶22-24. These lawsuits are considered part of the "Herculaneum Lawsuits" referenced above for purposes of this Memorandum.

[2] Zurich disputes this fact only in that it contends Fluor reached the Fluor Global Settlement to resolve the Herculaneum Lawsuits *and an additional suit*. Zurich also discusses conditions of the Fluor Global Settlement irrelevant to the Motions at issue here. *See* ECF No. 244 at ¶ 4.

In March 2012, Zurich made payments to Doe Run through a settlement (the "Zurich-Doe Run Global Settlement") to resolve disputes with regard to coverage for the Doe Run Settlement. ECF No. 1. at ¶ 29. Zurich alleges the Global Settlement payments exhausted the Zurich Policies for the Herculaneum Claims. *Id*. at ¶ 30.

On March 29, 2016, Zurich filed suit in this Court, asserting five separate claims in its Complaint. Zurich's first three Causes of Action seek declaratory judgments stating the Zurich Policies do not provide coverage for the defense or indemnity of Fluor's litigation. Fluor filed a counterclaim against Zurich asserting three Causes of Action. At issue in the Motions considered here is Fluor's Second Cause of Action in its counterclaim for bad faith failure to settle in the Underlying Actions.[3]

Zurich has filed a Motion for Partial Summary Judgment against Fluor with respect to Zurich's claim in its First Cause of Action seeking a Declaratory Judgment that Zurich has no duty to indemnify Fluor for any liability it incurred in connection with certain Herculaneum Claims−the *Bronson/Smoger* lawsuits.[4] Pursuant to Federal Rule of Civil Procedure 12(b)(1), Fluor has filed a Motion to Dismiss Zurich's First, Second, and Third Causes of Action to the extent they seek a declaration regarding Zurich's contractual duty to indemnify. Fluor has also filed a Motion for Partial Summary Judgment against Zurich with respect to Zurich's

---

[3] Fluor lists in detail the "Underlying Actions" that are the basis of its counterclaim. These actions include lawsuits brought by plaintiffs represented by Newman, Bronson & Willis, The Smoger Law Firm, and the Law Offices of James R. Dowd (collectively, the "*Bronson/Smoger* Lawsuits"). The *Alexander/Pedersen/Heilig* litigation is part of the *Bronson-Smoger* Lawsuits. The "Underlying Actions" also include the "*Gray Ritter Graham* Lawsuits," brought by plaintiffs represented by Gray, Ritter & Graham, P.C. Cases are listed individually by Fluor in its Counterclaim at ECF No. 42 at ¶ 15.

[4] As noted in the previous footnote, the *Bronson/Smoger* lawsuits consist of suits brought by Herculaneum plaintiffs represented by Newman, Bronson & Willis, The Smoger Law Firm, and the Law Offices of James R. Dowd.

Affirmative Defenses 1, 6, 7, and 18 (collectively, "Indemnity Defenses") to Fluor's Second Cause of Action for bad faith failure to settle ("BFFS"). The Court will first address Fluor's Motion to Dismiss Zurich's First, Second, and Third Causes of Action.

## I.  FLUOR'S MOTION TO DISMISS

Fluor requests that the Court dismiss the First, Second, and Third Causes of Action in Zurich's Complaint insofar as they seek a declaration that Zurich's Policies "do not provide coverage for the . . . indemnity of the *Alexander/Pedersen/Heilig* litigation" or the broader set of "Herculaneum Claims." ECF No. 218 at 5. Fluor argues dismissal is required as there is no ripe dispute between the parties concerning Zurich's contractual duty to indemnify Fluor under the comprehensive general liability policies at issue in this case.

### Legal Standard – Motion to Dismiss

Fluor's Motion to Dismiss [218] is brought pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Wax'n Works v. City of St. Paul,* 213 F.3d 1016, 1020 (8th Cir. 2000) (indicating that whether a claim is ripe for adjudication goes to a court's subject matter jurisdiction under the case or controversy clause of Article III of the federal Constitution). "A district court has the authority to dismiss an action for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Johnson v. United States,* 534 F.3d 958, 962 (8th Cir. 2008) (internal punctuation and quoted case omitted).

### Discussion

Zurich's complaint seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, which provides that federal courts can grant declaratory relief in "a case of actual controversy."

The controversy requirement of the Declaratory Judgment Act is synonymous with that of Article III of the Constitution." *Carson v. Pierce,* 719 F.2d 931, 933 (8th Cir. 1983) (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–40, 57 S.Ct. 461, 81 L.Ed. 617 (1974)).

In the declaratory judgment context, Article III requires a plaintiff to allege facts that, "under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941)). "The Supreme Court has emphasized that the 'case of actual controversy' language limits federal court action to justiciable cases." *Public Water Supply Dist. No. 10 of Cass County, Mo. v. City of Peculiar, Mo.,* 345 F.3d 570, 572–73 (8th Cir. 2003) (citing *Haworth,* 300 U.S. at 239–40). To resolve the instant motion, the Court must determine whether Zurich's request for declaratory relief meets the traditional justiciability requirement of ripeness.

"The ripeness doctrine flows both from the Article III 'cases' and 'controversies' limitations and also from prudential considerations for refusing to exercise jurisdiction." *Nebraska Pub. Power Dist. v. MidAmerican Energy Co.,* 234 F.3d 1032, 1037 (8th Cir. 2000). The intent of the ripeness doctrine is to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The ripeness inquiry requires a court to examine both "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.,* 387 U.S. at 149, 87 S.Ct. 1507. This is a two-pronged test, and "[a] party seeking judicial relief must necessarily satisfy both prongs to at least a minimal degree." *Nebraska Pub. Power,* 234 F.3d at 1039.

The fitness prong of the test requires examination of the definiteness or certainty of a claim, to "safeguard[ ] against judicial review of hypothetical or speculative disagreements." *Id.* at 1038. "Whether a case is 'fit' depends on whether it would benefit from further factual development." *Public Water Supply,* 345 F.3d at 573. "The case is more likely to be ripe if it poses a purely legal question and is not contingent on future possibilities." *Id.* "Whether the factual basis of a declaratory judgment action is hypothetical−or more aptly, too hypothetical−for purposes of the ripeness doctrine (and concomitantly Article III) is a question of degree." *Public Water Supply Dist. No. 8 of Clay County, Mo. v. City of Kearney, Mo.,* 401 F.3d 930 (8th Cir. 2005) (citing *Nebraska Pub. Power,* 234 F.3d at 1037–38).

The hardship prong recognizes that a party need not wait until a threatened injury actually occurs, but the immediacy and extent of the alleged threatened harm must be significant. *Nebraska Pub. Power,* 234 F.3d at 1038. "Abstract injury is not enough. It must be alleged that the plaintiff has sustained or is immediately in danger of sustaining some direct injury . . . ." *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (internal quotations and citations omitted). "The threatened "injury must be 'certainly impending.'" *Paraquad, Inc. v. St. Louis Hous. Auth.,* 259 F.3d 956, 958–59 (8th Cir. 2001) (quoting *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)). In evaluating the hardship requirement, courts ask whether delaying review will cause injury to the parties. *Nebraska Pub. Power*, 234 F.3d at 1038.

Fluor contends Zurich's claims for declaratory relief are not ripe for judicial determination as Zurich has failed to allege any dispute with Fluor regarding its indemnity rights under the Zurich Policies. Fluor points out that although it settled the Herculaneum Lawsuits five years ago, it has not sought indemnification from Zurich for the approximately $300 million

7

in damages it suffered. Moreover, Fluor maintains because no demand has been made for indemnification, no immediate or threatened harm will result if Zurich's declaratory claims are not litigated. Fluor contends the parties' dispute centers not on contractual indemnity, but instead on tort damages for Zurich's bad faith failure to settle the Herculaneum Claims when a reasonable opportunity arose in late 2010.

Zurich responds that its claims are ripe for declaratory judgment because the question of Zurich's duty to indemnify Fluor under the Zurich Policies is directly disputed by the parties. Zurich contends, citing to *Aetna Casualty & Surety Co. v. General Dynamics Corp.*, 968 F.2d at 711, that a live justiciable controversy was created when Zurich agreed to defend pursuant to a reservation of rights after Fluor tendered its claims. Zurich alternately argues its declaratory judgment claims are ripe because Fluor's counterclaim against Zurich for bad faith failure to settle ("BFFS") requires Fluor to establish Zurich's duty to indemnify.

Fluor replies that Zurich's attempts to assert the parties were in dispute fail because without a demand for contractual indemnification, a dispute over indemnification is purely hypothetical. Fluor points out that Zurich concedes in its Complaint that Fluor has not sought indemnity. Fluor further notes that for the reasons discussed in detail in Fluor's Motion for Partial Summary Judgment, Zurich's duty to indemnify Fluor under the Zurich Policies is irrelevant to Fluor's BFFS claim.

The Court finds Zurich fails to meet its burden under both prongs of the ripeness inquiry. First, Zurich has alleged only a hypothetical or speculative indemnity dispute−not a dispute fit for judicial determination. A coverage dispute can form the basis for a declaratory judgment action when the insured has made a clear demand for defense, indemnity, or other payment under a policy. *See Century Indem. Co. v. Anheuser-Busch, Inc.*, No. 4:11-CV-1097 CEJ, , at *3 (E.D.

8

Mo. Mar. 19, 2012) (citing *Federal Ins. Co. v. Sammons Financial Group, Inc.*, 595 F.Supp.2d 962, 972 (S.D. Iowa 2009)). Here, however, Zurich's Complaint does not contain an allegation that Fluor has demanded payment or sought indemnification against Zurich under the Zurich Policies. Under a 12(b)(1) motion to dismiss based upon subject matter jurisdiction, the Court may consider the undisputed facts evidenced in the record or resolve disputed facts to supplement the Complaint. However, the Court finds no evidence of record that Fluor requested contractual indemnification at any point, including after it settled the *Alexander/Pedersen/Heilig* litigation and other Herculaneum Lawsuits in October 2014.[5] Moreover, Zurich acknowledges in its Complaint that "Fluor and its other related entities never requested that Zurich fund any settlement on its behalf at [the mediation that led to the Doe Run Settlement] nor at any subsequent mediation of the *Alexander/Pedersen/Heilig* litigation . . . ." ECF No. 1 at ¶ 25. The possibility that Fluor may demand indemnity from Zurich at some point in the future falls short of establishing an actual controversy. *See Century Indem. Co. v. Anheuser-Busch, Inc.*, No. 4:11-CV-1097 CEJ, 2012 WL 919008, at *3 (E.D. Mo. Mar. 19, 2012) (stating that the allegation that a defendant "has or may" assert a claim for coverage is ambiguous with regards to jurisdiction and is insufficient to nudge the claims across the line from conceivable to plausible).

As noted above, Zurich contends a live controversy regarding indemnity exists. Specifically, Zurich alleges Fluor's tendering of the Herculaneum Lawsuits and Zurich's agreement to defend under a reservation of rights constituted a ripe "dispute" sufficient to

---

[5] Zurich does allege in its Response in Opposition to Fluor's Motion to Dismiss that Fluor tendered the Herculaneum Lawsuits to Zurich for "defense and indemnity." However, in support of this statement, Zurich cites to Fluor's Statement of Undisputed Material Facts which states only that Fluor tendered claims to Zurich for a "full and complete *defense*." (*See* ECF No. 241 at 3 and FSUMF, ECF No. 221-1 at ¶ ¶ 5-11) (emphasis added). Thus, the Court finds Zurich's allegation to be unsupported by the record and the Court will consider it no further.

provide jurisdiction here for a declaratory judgment claim regarding Zurich's duty to indemnify. Zurich relies on *Aetna Casualty & Surety Co. v. General Dynamics Corp.*, 968 F.2d 707 (8th Cir. 1992). *Aetna*, however, is distinguishable from the circumstances here. In *Aetna*, the insured, General Dynamic, demanded the insurer, Aetna, provide a defense and indemnify General Dynamics for any sums paid to resolve lawsuits concerning environmental contamination and letters from environmental protection agencies demanding the clean-up of certain sites. *Id*. at 709. Aetna initially agreed to defend General Dynamic under a reservation of rights, but then withdrew its defense commitment and filed an action for declaratory judgment. *Id.* The Court in *Aetna* found a justiciable controversy existed between the insurer and insured as General Dynamics had made a clear demand for the payment of defense and indemnity costs which Aetna had disputed while the claims at issue in Aetna were being litigated. *Id*. at 711.

This case is factually distinguishable as neither Zurich's Complaint, nor the undisputed facts allege Fluor demanded indemnification. Zurich provides no other authority for its proposition that tendering a claim to an insurer who agrees to defend under a reservation of rights is sufficient to create a justiciable dispute years after the litigation has reached settlement where no demand for indemnity has been sought. The Court therefore declines to find a ripe dispute here based on Zurich's reasoning under *Aetna*.[6]

---

[6] Zurich also argues its claims are ripe and justiciable because, in Fluor's Answer, Fluor 1) admits jurisdiction is proper and 2) denies Zurich's allegation set forth in its Complaint that Zurich has no indemnity obligation under the policies. Zurich does not support its contention−that an admission of subject matter jurisdiction in an answer constitutes waiver−with citation to any authority. Zurich's contention fails as subject matter jurisdiction cannot be waived by the parties or conferred by consent. *United States v. Redstone*, 488 F.2d 300, 301 (8th Cir. 1973). Zurich also fails to provide case law in support its other argument−that the mere denial of an allegation in a Complaint satisfies the ripeness requirement−and the Court accordingly declines to consider it.

Having considered the fitness prong, the Court turns to the Court hardship prong of the ripeness test and similarly concludes Zurich fails to satisfy its burden. The Complaint does not allege, as it must, Zurich has sustained or is immediately in danger of sustaining some direct injury related to its duty to indemnify Fluor under the Policies. *See O'Shea v. Littleton,* 414 U.S. at 494 (internal quotations and citations omitted). Because Fluor has not demanded indemnity from Zurich, Zurich cannot establish an injury that is "certainly impending." *Paraquad*, 259 F.3d at 958–59. The possibility of injury here is attenuated and can only result if, at some future date, Fluor demands indemnification from Zurich. The Eighth Circuit has "repeatedly stated that a case is not ripe if the plaintiff makes no showing that the injury is direct, immediate or certain to occur." *Public Water Supply,* 345 F.3d at 573 (citing *Paraquad*, 259 F.3d at 959–60).

Finally, Zurich also asserts the question of indemnity is ripe for adjudication as Zurich's duty to indemnify Fluor must be proved by Fluor as a prerequisite to its Second Cause of Action for bad faith failure to settle. However, in addressing Fluor's Partial Motion for Summary Judgment below, the Court concludes Fluor's counterclaim against Zurich for BFFS does not require Fluor to establish a right to indemnity coverage. The Court, therefore, rejects Zurich's current argument that a ripe controversy regarding indemnity is created by virtue of the Fluor's assertion of a BFFS counterclaim.

Accordingly, the Court will dismiss Zurich's First, Second and Third Causes of Action insofar as they seek a declaration that Zurich's Policies do not provide coverage for the *indemnity* of the Herculaneum Lawsuits. Fluor has not sought dismissal of, and the Court does not dismiss the portions of Zurich's First, Second and Third Causes of Action that seek a declaration with regard to Zurich's defense of Fluor. Furthermore, because the Court will dismiss Zurich's First Cause of Action seeking a declaration with respect to its duty to indemnify

Fluor, it will deny as moot Zurich's Motion seeking Partial Summary Judgment against Fluor on Zurich's First Cause of Action that it has no duty to indemnify Fluor for any liability incurred by Fluor in connection with the *Bronson/Smoger* Lawsuits.[7]

## II. FLUOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Fluor moves for partial summary judgment against Zurich with respect to Zurich's Affirmative Defenses 1, 6, 7, and 18 (collectively the "Indemnity Defenses")[8] to Fluor's Second Cause of Action for bad faith failure to settle ("BFFS"). Fluor argues indemnity coverage is irrelevant to whether Zurich committed the BFFS tort at the time of the November 18, 2010 mediation aimed at reaching a global settlement of the Herculaneum Lawsuits. Thus, Fluor contends Zurich's Indemnity Defenses fail as a matter of law to state legally viable defenses to Fluor's second cause of action for BFFS.

### Legal Standard −Motion For Summary Judgment

---

[7] The Court notes that although Zurich's Partial Motion for Summary Judgment on its First Cause of Action seeks relief with regard to the *Bronson/Smoger* Lawsuits, Zurich's First Cause of Action in the Complaint instead asks for a declaration pertaining to the *Alexander/Pedersen/Heilig* litigation. This discrepancy is irrelevant here as the *Alexander/Pedersen/Heilig* litigation is part of the *Bronson/Smoger* Lawsuits and the Court's instant ruling on Fluor's Motion to Dismiss encompasses the *Bronson/Smoger* Lawsuits as it is directed at the even broader group of plaintiffs in the Herculaneum Lawsuits.

[8] *See* ECF No. 46, Aff. Def. 1 ("Coverage is barred under the Zurich Policies to the extent that recovery is sought for claims which do not involve an occurrence of bodily injury during the policy periods"); Aff. Def. 6 ("Coverage is barred under the Zurich Policies to the extent that recovery is sought for 'damages' that are not attributable to 'bodily injury' or 'property damage'"); and Aff. Def. 7 ("Coverage is unavailable under the Zurich Policies for any liability any insured might incur as a result of its involvement with the Doe Run Company Partnership, Doe Run Investment Holdings or the Homestake Lead Company of Missouri because that involvement commenced after the last of the Zurich Policies expired on June 1, 1985."); Aff. Def. 18 ("Coverage is unavailable under certain of the Zurich Policies to the extent that any alleged 'bodily injury' or 'property damage' arose from releases of pollutants that were not 'sudden or accidental' within the meaning of the Zurich Policies").

"Rule 8(c) of the Federal Rules of Civil Procedures governs affirmative defenses. The term 'affirmative defense' is defined as '[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's ... claim, even if all allegations in the complaint are true.'" *PNC Bank, Nat. Ass'n v. El Tovar, Inc.,* No. 4:13–CV–1073 CAS, 2014 WL 538810, at *7–8 (E.D. Mo. Feb. 11, 2014) (quoting Black's Law Dictionary 430 (7th ed.1999)). "Affirmative defenses, if accepted by the court, will defeat an otherwise legitimate claim for relief." *Id.* (quoting 2 James Wm. Moore, et al., *Moore's Federal Practice* § 8.08[1] (3d ed. 2013).

As with any motion for summary judgment, a movant seeking summary judgment on an affirmative defense must first "inform [ ] the district court of the basis for its motion and identify[ ] those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex v. Catrett,* 477 U.S. 317, 323 (1986)). There is no requirement that the movant support its motion with materials negating the affirmative defense. *Id.* (citing *Celotex,* 477 U.S. at 323). Rather, the party with "the burden of proof on an issue ... must present evidence sufficient to create a genuine issue of material fact to survive a properly supported summary judgment motion." *Crotty v. Dakotacare Admin. Servs., Inc.*, 455 F.3d 828, 831 (8th Cir. 2006). Thus, if a defendant fails to make a showing sufficient to establish an essential element of a defense on which it will bear the burden of proof at trial, Rule 56(c) mandates the entry of summary judgment against it. *See Celotex,* 477 U.S. at 322.

## **Discussion**

"'The duty to defend arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case and is not dependent on the probable liability to pay based on the facts ascertained through trial.'" *Freeman v. Leader Nat. Ins. Co.*, 58 S.W.3d 590, 597

13

(Mo. Ct. App. 2001) (quoting *McCormack Baron Management Serv., Inc. v. Am. Guarantee and Liab. Ins. Co.,* 989 S.W.2d 168, 170 (Mo. banc 1999)). This duty to defend potentially insured claims arises "even though claims beyond coverage may also be present." *Truck Ins. Exch. v. Prairie Framing, LLC,* 162 S.W.3d 64, 79 (Mo. App. 2005). "An insurer's right to control settlement and litigation under a liability insurance policy creates a fiduciary relationship between insurer and insured." *Freeman*, 58 S.W.3d at 598. "Thus, an insurer owes a duty to exercise good faith in evaluating and negotiating third-party claims against its insured, and the insurer may be held liable in tort for a third-party judgment in excess of policy limits if it fails to perform its fiduciary obligation in good faith." *Id.* "It is the existence of this fiduciary relationship between insurer and insured, aside from insurer's subsisting implied covenant of good faith and fair dealing under the insurance policy, that exposes an insurer to tort liability for failing to exercise good faith in evaluating and negotiating third-party claims against an insured." *Id.*

"BFFS is a tort action based on the insurer's failure to protect the interests of its insured, not an action on the insurance contract." *Shobe v. Kelly*, 279 S.W.3d 203, 212 (Mo. App. W.D. 2009). A bad faith refusal to settle action arises from an insurer's breach of its duty to settle third-party claims in good faith. *Scottsdale Ins. Co. v. Addison Ins. Co.*, 448 S.W.3d 818, 828 (Mo. 2014) (citing *Shobe,* 279 S.W.3d at 209). "An insurer 'may be liable over and above its policy limits if it acts in bad faith ... in refusing to settle the claim against its insured within its policy limits when it has a chance to do so." *Id.* at 828 (quoting *Landie v. Century Indem. Co.,* 390 S.W.2d 558, 563 (Mo. App. 1965). 360 Mo. 362, 228 S.W.2d 750, 753 (1950). A bad faith refusal to settle action will lie when a liability insurer: (1) reserves the exclusive right to contest or settle any claim; (2) prohibits the insured from voluntarily assuming any liability or settling

14

any claims without consent; and (3) is guilty of fraud or bad faith in refusing to settle a claim within the limits of the policy. *Scottsdale*, 448 S.W.3d at 827 (citing *Zumwalt v. Utilities Ins. Co.*, 360 Mo. 362, 228 S.W.2d 750, 753 (1950). Circumstances that indicate an insurer's bad faith in refusing to settle include the insurer's not fully investigating and evaluating a claim, not recognizing the severity of a third-party claimant's injuries and the probability that a verdict would exceed policy limits, and refusing to consider a settlement offer. *Johnson v. Allstate Ins. Co.*, 262 S.W.3d 655, 662 (Mo. App. W.D. 2008). Other circumstances indicating an insurer's bad faith include not advising an insured of the existence of settlement offers. *Id.*

The question before the Court is whether Zurich's affirmative defenses asserting a lack of coverage under the Zurich Policies fail as a matter of law in light of the undisputed facts. Fluor argues indemnity coverage is irrelevant to whether Zurich committed the BFFS tort at the time of the settlement opportunity in 2010. Fluor claims the undisputed facts show Zurich reserved the exclusive right to settle and prohibited Fluor from voluntarily assuming liability−which gave rise to Zurich's duty to act in good faith in settling the Herculaneum Lawsuits. Fluor contends a determination of coverage now cannot immunize Zurich for its conduct in 2010 and therefore, the Indemnity Defenses fail as a matter of law. Zurich responds that under Missouri law, where there is no coverage, an insured has no claim for bad faith. Zurich argues the Court should deny summary judgment on its Indemnity Defenses as proof of lack of coverage will defeat Fluor's BFFS claim.

Under the undisputed language of the Zurich Policies, Zurich had the "right and duty to defend any suit against the insured seeking damages . . . [and to] investigat[e] and settle[…] any claim or suit as it deems expedient." FSUMF, ECF No. 221-1 at ¶ 2. The Zurich Policies also provided the insured "shall not, except at his own cost, voluntarily make any payment, assume

15

any obligation or incur any expense." *Id.* at ¶ 3. It is uncontested that: Fluor tendered the Herculaneum Lawsuits to Zurich for a "full and complete defense;" Zurich agreed to defend the claims pursuant to a reservation of rights; and, the reservation of rights reaffirmed Fluor's "duty to refrain from making voluntary payments or voluntarily assuming obligations." FSUMF, ECF No. 221-1 at ¶¶ 5-11, 15-21, 25.

Thus, at the outset, when Fluor tendered the lawsuits to Zurich and Zurich agreed to defend under a reservation of rights, the potential for coverage existed, giving rise to Zurich's duty to defend Fluor. The policies' language vests Zurich with the right to control litigation and settlement, giving rise to a fiduciary relationship between the parties, exposing Zurich to tort liability if it failed to evaluate and negotiate third-party claims in good faith. Moreover, based upon the language of the policies and Zurich's reservation of rights affirming Fluor's duty to refrain from voluntarily assuming obligations, Zurich had a duty to act in good faith with regard to the 2010 settlement opportunity.

Zurich's Indemnity Defenses relate to whether indemnity coverage is "barred" or otherwise "unavailable" under the Zurich Policies. A proper affirmative defense "if true, will defeat the plaintiff's ... claim, even if all allegations in the complaint are true.'" *PNC Bank*, 2014 WL 538810, at *7. Zurich argues a determination of no coverage will bar Fluor's BFFS claim under Missouri law. Zurich cites to several cases in support of its contention, all of which are inapposite to the circumstances here and do not support the contention that an indemnity obligation must be proven as a threshold to establishing a BFFS claim. For example, three of cases cited by Zurich[9] are factually distinguishable, as in each case, the insured tendered claims

---

[9] *Elec. Power Sys. Int'l, Inc. v. Zurich Am. Ins. Co.*, No. 4:15-CV-1171 CDP, 2016 WL 4990498, (W.D. Mo. Sept. 19, 2016); *Spirtas Co. v. Fed. Ins. Co.,* 481 F. Supp. 2d 993 (E.D. Mo.

to its insurer, the insurer denied coverage and refused to defend the insured. Moreover, in all three cases, the insurers determined coverage was lacking at the very outset of the case, and the dispute over coverage was therefore essential to the resolution of any contractual or tort claim by the insureds against the insurers. Here, in contrast Zurich did not deny coverage and refuse to defend Fluor at the outset of the case. Another case relied upon by Zurich, *Arch Ins. Co. v. Sunset Fin. Servs. Co.*, is likewise inapposite as the insured did not even assert a BFFS claim. 475 S.W.3d 730 (Mo. App. W.D. 2015). As such, the Court finds Zurich has not established a determination of no coverage will bar a BFFS claim. Accordingly, Zurich has not met its burden to show indemnity constitutes an affirmative defense to BFFS.

The Court further concludes that a determination on coverage here, after Zurich's alleged bad faith conduct occurred, is irrelevant to and cannot defeat Fluor's BFFS claim. *See Advantage Bldgs. & Exteriors, Inc. v. Mid-Continent Cas. Co.*, 449 S.W.3d 16, 28 (Mo. App. W.D. 2014) (concluding that because the trial court's coverage ruling came after the insurer had already refused to settle, the court did not abuse its discretion in excluding evidence of that ruling on the basis that it was irrelevant, confusing, and prejudicial). From a common-sense standpoint, Zurich's proposal would allow insurers to undertake the defense of a claim, bar the insured from voluntarily making payment on the claim, fail to act in good faith with regard to settlement opportunities, and later evade BFFS liability for this conduct by procuring a determination at trial or otherwise that coverage was non-existent─a fact that was not established at the time of the alleged bad-faith conduct.

---

2007), aff'd, 521 F.3d 833 (8th Cir. 2008); *Stone v. Farm Bureau Town & Country Ins. Co. of Mo.*, 203 S.W.3d 736 (Mo. App. S.D. 2006).

Thus, under the undisputed facts here, the Court does not find Zurich's Indemnity Defenses constitute cognizable affirmative defenses to Fluor's BFFS claim.[10]

Therefore, Zurich's Indemnity Defenses (Affirmative Defenses 1, 6, 7, and 18) fail as a matter of law with respect to Fluor's BFFS claim. Accordingly, the court will grant partial summary judgment against Zurich with respect to Zurich's Affirmative Defenses 1, 6, 7, and 18 to Fluor's Second Cause of Action for BFFS. As noted above, Fluor only moves the Court to grant partial summary judgment with regard to Zurich's Indemnity Defenses to Fluor's *bad faith failure to settle* claim in its Second Cause of Action−not the separate claim in Fluor's Second Cause of Action for *bad faith failure to defend*. As such, the Court confines its grant of summary judgment to BFFS only.

Finally, the Court notes both Zurich and Fluor requested the Court take Judicial Notice of certain court filings in other cases. *See* ECF Nos. 195, 223. The Court declines to address these requests as the rulings contained herein did not rely on any of the filings. Zurich also filed a Motion for Leave to Supplement the Parties Oral Arguments, which the Court will deny as moot because the Court finds it unnecessary to the resolution of the parties dispositive Motions.

Accordingly,

**IT IS HEREBY ORDERED** that Fluor Corporation's Motion to Dismiss the First, Second, and Third Causes of Action in Zurich's Complaint insofar as they seek a declaration that Zurich's Policies do not provide indemnity coverage [ECF No. 218] is **GRANTED**. Zurich's

---

[10] Zurich also argues Fluor's BFFS claim fails as Zurich never controlled Fluor's defense or settlement negotiations. However, the issue in this Motion is whether Zurich may assert certain affirmative defenses to Fluor's BFFS claim, not whether Fluor has sufficiently established BFFS. *See Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707, 722 (E.D. Mo. 2015) (noting a defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense). Moreover, the conduct of both parties relevant to the control of Fluor's defense and settlement opportunities clearly constitutes disputed facts for trial.

First, Second, and Third Causes of Action will be **DISMISSED** with regard to the extent that they seek a declaration regarding indemnity coverage.

**IT IS FURTHER ORDERED** that Zurich American Insurance Company's Motion for Partial Summary Judgment against Fluor Corporation with respect to Zurich's First Cause of Action [ECF No. 192] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Fluor Corporation's Motion for Partial Summary Judgment [ECF No. 220] against Zurich with respect to Zurich's Affirmative Defenses 1, 6, 7, and 18 to Fluor's Second Cause of Action for bad faith failure to settle is **GRANTED**.

**IT IS FURTHER ORDERED** that Zurich American Insurance Company's Motion to Supplement the Parties Oral Arguments [ECF No. 283] is **DENIED** as moot.

Dated this 30th Day of September, 2019.

*E. Richard Webber*

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE