# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:16CV00429 ERW |
| FLUOR CORPORATION, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant/Counter-Claimant Hartford Accident and Indemnity Company's Motion to Dismiss Plaintiff/Counter-Defendant Zurich American Insurance Company's Fourth Cause of Action [256].

## BACKGROUND

Beginning in the 1950's, St. Joseph Lead Company ("St. Joseph Lead") conducted certain lead mining operations. ECF No. 1 at ¶ 7. In 1970, St. Joseph Lead's name was changed to St. Joe Minerals. From 1981 to 1994, Defendant/Counter-Claimant Fluor Corporation owned St. Joe Minerals, ("St. Joe"), which operated a lead smelter facility in Herculaneum, Missouri. *Id.* at ¶¶ 7, 12. In 1994, Fluor sold its interest in St. Joe to the Renco Group, Inc., which renamed the company The Doe Run Resources ("Doe Run"). *Id.* at ¶ 7.

Zurich American Insurance Company issued general liability policies at certain periods from December 31, 1958, to June 1, 1985 (the "Zurich Policies"), to St. Joseph Lead and St. Joe Minerals. ECF No. 1 at ¶ 12. In addition, Hartford Accident and Indemnity Company issued certain primary liability policies to Fluor from 1981 to 1987 (the "Hartford Policies"), under

1

which Doe Run, as successor to St. Joseph Lead and St. Joe Minerals, is an additional insured. *Id.* at ¶ 19.

Commencing in 1995, various parties, including Fluor and Doe Run, were sued for bodily injury and property damage claims arising from St. Joe's lead smelter facility in Herculaneum, Missouri (hereafter referred to as the "Herculaneum Claims"). *Id.* at ¶¶ 22-23. In 1998, Zurich filed suit against Hartford for contribution to the defense and indemnity of Doe Run and Fluor in the Herculaneum Claims, in *Zurich Insurance Company v. Hartford Accident & Indemnity Company, et al.*, Orange County Superior Court, California, Case No. 791336. *Id.* at ¶ 21. In 2004, a final judgment was entered holding that Hartford provide coverage for Doe Run and Fluor (and contribution to Zurich) once certain retrospective premiums in the Hartford Policies were satisfied. *Id.* Those retrospective premiums have been satisfied. *Id.*

In 2005, certain residents of Herculaneum filed claims against Fluor, Doe Run, and others in the Missouri Circuit Court, Twenty-Second Judicial Circuit in the City of St. Louis, Missouri, for alleged injuries arising from the operation of the smelter, including the period 1981 through 1994. *Id.* at ¶ 23. In September 2005, Fluor tendered seven lawsuits (the "Herculaneum Lawsuits"), including *Alexander, et al. v. Fluor Corporation, et al.*, *Heilig, et al. v. Fluor Corporation, et al.*, *Pedersen, et al. v. Fluor Corporation, et al.* (the "*Alexander/Pedersen/Heilig* Litigation) to Zurich for a "full and complete defense" under each of the Zurich Policies. Fluor's Statement of Uncontroverted Material Facts in Support of its Motion for Partial Summary Judgment ("FSUMF"), ECF No. 221-1 at ¶¶ 5-11. Zurich agreed to defend Fluor in these lawsuits pursuant to a reservation of rights. *Id.* at ¶¶ 15-21.

On November 18, 2010, a mediation of the Herculaneum Lawsuits involving representatives from Fluor, Doe Run, Zurich, and the underlying plaintiffs was conducted. *Id.* at

¶ 28. After this mediation, on December 13, 2010, Doe Run reached a settlement with plaintiffs in the remaining Herculaneum Claims, including the plaintiffs in the *Alexander/Pedersen/Heilig* Litigation ("Doe Run Settlement"). ECF No. 1 at ¶ 24. Fluor was not included in the Doe Run Settlement. *Id.* at ¶ 25. Fluor never requested Zurich fund any settlement on its behalf at that mediation nor at any subsequent mediation of the *Alexander/Pedersen/Heilig* litigation. *Id.* In March 2012, Zurich made payments to Doe Run through a settlement (the "Zurich-Doe Run Global Settlement") to resolve disputes with regard to coverage for the Doe Run Settlement. *Id.* at ¶ 29. Zurich alleges the Zurich-Doe Run Global Settlement payments exhausted the Zurich Policies for the Herculaneum Claims. *Id*. at ¶ 30.

The claims against Fluor in the *Alexander/Pedersen/Heilig* Litigation proceeded to trial and resulted in a judgment against Fluor for $38,527,186 in compensatory damages, and $320 million in punitive damages. *Id.* at ¶ 26. In October 2014, Fluor entered into a settlement with plaintiffs from the Herculaneum Lawsuits (that had settled separately with Doe Run in December 2010) for approximately $300 million (the "Fluor Global Settlement"). FSUMF, ECF No. 221-1 at ¶ 32.[1]

On March 29, 2016, Zurich filed suit in this Court, asserting five separate claims in its Complaint. Under its Fourth Cause of Action, Zurich seeks a declaration it has no obligation to provide contribution or indemnity to Hartford as the Zurich Policies were exhausted by virtue of the Global Settlement with regard to the Herculaneum Claims. *Id.* at ¶¶ 1, 46. The Fourth Cause of Action reads in relevant part: "Zurich seeks a judicial determination that the Zurich Policies were exhausted by virtue of the Zurich-Doe Run Global Settlement with regard to the

---

[1] Zurich disputes this fact only in that it contends Fluor reached the Fluor Global Settlement to resolve the Herculaneum Lawsuits *and an additional suit*. Zurich also discusses conditions of the Fluor Global Settlement irrelevant to the Motion at issue here. *See* ECF No. 244 at ¶ 4.

Herculaneum Claims and the personal injury coverage in the Zurich Policies. Upon information and belief, Fluor and Hartford dispute Zurich's contention." *Id.* at ¶¶ 46-47. None of Zurich's other claims are asserted against Hartford. Hartford has filed a Motion to Dismiss [256] Zurich's fourth cause of action from its Complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. Pro. 12(b)(1).

I. **HARTFORD'S MOTION TO DISMISS**

In its Motion, Hartford asks the Court to dismiss Zurich's Fourth Cause of Action against Hartford from its Complaint for lack of subject-matter jurisdiction. According to Hartford, Zurich's claim seeking a declaration that its Policies are exhausted is not ripe for adjudication because it rests on contingent future events.

**Legal Standard – Motion to Dismiss**

Hartford's Motion to Dismiss is brought pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Wax'n Works v. City of St. Paul,* 213 F.3d 1016, 1020 (8th Cir. 2000) (indicating that whether a claim is ripe for adjudication goes to a court's subject matter jurisdiction under the case or controversy clause of Article III of the federal Constitution). "A district court has the authority to dismiss an action for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Johnson v. United States,* 534 F.3d 958, 962 (8th Cir. 2008) (internal punctuation and quoted case omitted).

**Discussion**

Zurich's complaint seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, which provides that federal courts can grant declaratory relief in "a case of actual controversy."

4

The controversy requirement of the Declaratory Judgment Act is synonymous with that of Article III of the Constitution." *Carson v. Pierce,* 719 F.2d 931, 933 (8th Cir. 1983) (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–40, 57 S.Ct. 461, 81 L.Ed. 617 (1974)).

In the declaratory judgment context, Article III requires a plaintiff to allege facts that, "under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941)). "The Supreme Court has emphasized that the 'case of actual controversy' language limits federal court action to justiciable cases." *Public Water Supply Dist. No. 10 of Cass County, Mo. v. City of Peculiar, Mo.,* 345 F.3d 570, 572–73 (8th Cir. 2003) (citing *Haworth,* 300 U.S. at 239–40). To resolve the instant motion, the Court must determine whether Zurich's request for declaratory relief meets the traditional justiciability requirement of ripeness.

"The ripeness doctrine flows both from the Article III 'cases' and 'controversies' limitations and also from prudential considerations for refusing to exercise jurisdiction." *Nebraska Pub. Power Dist. v. MidAmerican Energy Co.,* 234 F.3d 1032, 1037 (8th Cir. 2000). The intent of the ripeness doctrine is to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The ripeness inquiry requires a court to examine both "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.,* 387 U.S. at 149, 87 S.Ct. 1507. This is a two-pronged test, and "[a] party seeking judicial relief must necessarily satisfy both prongs to at least a minimal degree." *Nebraska Pub. Power,* 234 F.3d at 1039.

The fitness prong of the test requires examination of the definiteness or certainty of a claim, to "safeguard[ ] against judicial review of hypothetical or speculative disagreements." *Id.* at 1038. "Whether a case is 'fit' depends on whether it would benefit from further factual development." *Public Water Supply,* 345 F.3d at 573. "The case is more likely to be ripe if it poses a purely legal question and is not contingent on future possibilities." *Id.* "Whether the factual basis of a declaratory judgment action is hypothetical−or more aptly, too hypothetical−for purposes of the ripeness doctrine (and concomitantly Article III) is a question of degree." *Public Water Supply Dist. No. 8 of Clay County, Mo. v. City of Kearney, Mo.,* 401 F.3d 930 (8th Cir. 2005) (citing *Nebraska Pub. Power,* 234 F.3d at 1037–38).

The hardship prong recognizes that a party need not wait until a threatened injury actually occurs, but the immediacy and extent of the alleged threatened harm must be significant. *Nebraska Pub. Power,* 234 F.3d at 1038. "Abstract injury is not enough. It must be alleged that the plaintiff has sustained or is immediately in danger of sustaining some direct injury . . . ." *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (internal quotations and citations omitted). "The threatened "injury must be 'certainly impending.'" *Paraquad, Inc. v. St. Louis Hous. Auth.,* 259 F.3d 956, 958–59 (8th Cir. 2001) (quoting *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)). In evaluating the hardship requirement, courts ask whether delaying review will cause injury to the parties. *Nebraska Pub. Power*, 234 F.3d at 1038.

Zurich's fourth cause of action seeks a declaration that Zurich's policies have been exhausted with respect to the Herculaneum Claims. According to Hartford, at the present, there is no real controversy between Zurich and Hartford regarding the exhaustion of the policies' limits. Hartford argues Zurich's claim for declaratory judgment is speculative and rests upon

contingent future events, such as Fluor seeking indemnification from Zurich and Zurich subsequently seeking contribution from Harford. Hartford points out Fluor has not asked for contractual indemnity from Zurich, but instead seeks tort damages for Zurich's bad faith failure to settle the Herculaneum Claims. Hartford argues Zurich will not suffer any hardship from postponing consideration of the exhaustion issue as there is no prospect of an indemnity claim by Fluor that could trigger a contribution claim.

In its Response, Zurich asserts the Court should not dismiss its fourth cause of action because Hartford admits, in its Answer, the existence of a justiciable dispute between the parties concerning exhaustion. Zurich further states Hartford's own counterclaim against Zurich disputes exhaustion, which establishes the controversy is justiciable. Finally, Zurich argues Hartford's Motion lacks merit to the extent it argues a dispute over indemnity is not ripe. Zurich states indemnity is directly in dispute between Fluor and Zurich as Missouri law requires Fluor to prove it was entitled to indemnity to recover on its bad faith failure to settle claim.

In its Reply, Hartford counters that the parties' pleadings cannot create jurisdiction because not every disagreement that exists at the pleading stage remains ripe as the controversy progresses. Here, Hartford contends that subsequent developments in the case, such as Fluor seeking damages for bad faith instead of requesting indemnification, have made it clear the case is no longer about insurance coverage.

The Court finds Zurich fails to meet its burden under both prongs of the ripeness inquiry. First, Zurich has alleged only a hypothetical dispute with Hartford—not a dispute fit for judicial determination. There is no real controversy between Hartford and Zurich as to whether Zurich has exhausted its policies' limits. If Fluor was seeking indemnification from Zurich, and Zurich sought contribution from Hartford, exhaustion would be relevant to the resolution of those

7

claims.  However, Zurich denies it is seeking contribution from Hartford. ECF No. 277 at p. 12. A claim for contribution from Hartford is not imminent either, as it depends on a future contingency−a demand by Fluor for indemnification from Zurich.  *See Nebraska Pub. Power*, 234 F.3d at 1038.  Although a coverage dispute can form the basis for a declaratory judgment action when the insured has made a clear demand for defense, indemnity, or other payment under a policy, *Century Indem. Co. v. Anheuser-Busch, Inc.*, No. 4:11-CV-1097 CEJ, at *3 (E.D. Mo. Mar. 19, 2012) (citing *Federal Ins. Co. v. Sammons Financial Group, Inc.*, 595 F.Supp.2d 962, 972 (S.D. Iowa 2009)), here, Zurich's Complaint does not contain an allegation that Fluor has demanded indemnification against Zurich.

Under a 12(b)(1) motion to dismiss, based upon subject matter jurisdiction, the Court may consider the undisputed facts evidenced in the record or resolve disputed facts to supplement the Complaint. However, the Court finds no evidence of record Fluor requested contractual indemnification at any point, including after it settled the *Alexander/Pedersen/Heilig* litigation and other Herculaneum Lawsuits in October 2014.  Zurich acknowledges in its Complaint that "Fluor and its other related entities never requested that Zurich fund any settlement on its behalf at [the mediation that led to the Doe Run Settlement] nor at any subsequent mediation of the *Alexander/Pedersen/Heilig* litigation . . . ."  ECF No. 1 at ¶ 25.  The possibility Fluor may demand indemnity from Zurich at some point in the future, triggering a contribution claim with Hartford, falls short of establishing an actual controversy.  *See Century Indem. Co. v. Anheuser-Busch, Inc.*, No. 4:11-CV-1097 CEJ, 2012 WL 919008, at *3 (E.D. Mo. Mar. 19, 2012) (stating that the allegation that a defendant "has or may" assert a claim for coverage is ambiguous with regards to jurisdiction and is insufficient to nudge the claims across the line from conceivable to plausible).

As noted above, Zurich contends a live controversy regarding indemnity exists. Zurich argues its Fourth Cause of Action is ripe as the Herculaneum claims have been resolved and Zurich has made payments exhausting its policies. Therefore, Zurich argues it is entitled to a ruling that its Policies are exhausted and it no longer owes coverage obligations to anyone, including Hartford. However, as discussed above, the possibility Zurich may seek contribution form Hartford is an attenuated controversy as it rests upon the contingency of an indemnification demand from Fluor. Without a demand for indemnity or contribution, a determination on exhaustion fails both prongs of the ripeness inquiry.

Zurich also argues its claims are ripe and justiciable because Hartford admits, in its Answer, the existence of a justiciable dispute between the parties concerning exhaustion. Zurich does not support its contention−that an admission of a justiciable dispute in an answer confers jurisdiction−with citation to any authority. The Court finds Zurich's contention fails as subject matter jurisdiction cannot be waived by the parties or conferred by the parties' consent. *United States v. Redstone*, 488 F.2d 300, 301 (8th Cir. 1973).

Zurich additionally maintains Hartford's own counterclaim renders the dispute here justiciable. At the Hearing held on July 26, 2019, Zurich noted Hartford seeks a declaration regarding the exhaustion of the Zurich Policies because Hartford disputes Zurich's request for reimbursement from Hartford of certain invoices (defense costs). However, counsel for Hartford explained there was no longer a justiciable controversy regarding defense invoices because eight months after pleadings were filed, Zurich and Hartford entered into a settlement agreement addressing defense costs. As such, the Court does not find Hartford's counterclaim creates a justiciable dispute regarding exhaustion. Moreover, as addressed at the Hearing, the Court

9

anticipates the filing of a stipulation to dismiss Hartford's counterclaims in conjunction with the Court's instant ruling on Hartford's Motion to Dismiss.

Having considered the fitness prong, the Court turns to the Court hardship prong of the ripeness test and similarly concludes Zurich fails to satisfy its burden. The Complaint does not allege, as it must, Zurich has sustained or is immediately in danger of sustaining some direct injury related to the exhaustion of its Policies its duty to indemnify Fluor under the Policies. *See O'Shea v. Littleton,* 414 U.S. at 494 (internal quotations and citations omitted). Because Fluor has not demanded indemnity from Zurich, Zurich cannot establish an injury that is "certainly impending." *Paraquad*, 259 F.3d at 958–59. The possibility of injury here is attenuated and can only result if, at some future date, Fluor demands indemnification from Zurich and then Zurich seeks contribution from Hartford. The Eighth Circuit has "repeatedly stated that a case is not ripe if the plaintiff makes no showing that the injury is direct, immediate or certain to occur." *Public Water Supply,* 345 F.3d at 573 (citing *Paraquad*, 259 F.3d at 959–60).

Finally, Zurich also argues the question of indemnity and exhaustion is ripe for adjudication as Zurich's duty to indemnify Fluor must be proved by Fluor as a prerequisite to its counterclaim for bad faith failure to settle. However, the Court thoroughly addressed and disposed of this argument in its Memorandum and Order dated September 30, 2019. In its September 30, 2019 Memorandum, the Court concluded Fluor's counterclaim against Zurich for BFFS does *not* require Fluor to establish a right to indemnity coverage. The Court, therefore, rejects Zurich's identical argument here that a ripe controversy regarding indemnity is created by virtue of the Fluor's assertion of a BFFS counterclaim.

Accordingly, because Zurich's allegation of a dispute over coverage is not ripe, the Court will dismiss Zurich's Fourth Cause of Action against Hartford seeking a declaration the Zurich

Policies were exhausted by virtue of the Zurich-Doe Run Global Settlement with regard to the Herculaneum Claims.

Accordingly,

**IT IS HEREBY ORDERED** that Fluor Corporation's Hartford Accident and Indemnity Company's Motion to Dismiss Zurich American Insurance Company's Fourth Cause of Action against Hartford [256] is **GRANTED**. Zurich's Fourth Cause of Action will be **DISMISSED** without prejudice with regard to the extent Zurich seeks a declaration regarding exhaustion against Hartford.

Dated this 1st Day of November, 2019.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE