# EXHIBIT 48

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2              EASTERN DISTRICT OF MISSOURI
 3                    EASTERN DIVISION
 4
 5   ZURICH AMERICAN INSURANCE        )
     COMPANY,                         )
 6                                    )
                 Plaintiff,           )
 7                                    ) Case No. 4:16-CV-00429 ERW
           vs.                        )
 8                                    ) Volume I
     FLUOR CORPORATION, HARTFORD      )
 9   ACCIDENT & INDEMNITY COMPANY AND )
     DOES 1 THROUGH 100,              )
10                                    ) Pages 1 to 243
                 Defendants.          )
11   _____)
                                      )
12   AND RELATED CLAIMS AND           )
     CROSS-CLAIMS.                    )
13   _____)
14
15
16
17
18        VIDEOTAPED DEPOSITION OF JOLYNN SCHARRER
19                  Los Angeles, California
20                 Monday, January 20, 2020
21
22
23
24   Reported by:
     ELIZABETH BORRELLI, CSR No. 7844, CCRR, CLR
25   JOB NO. 175555
```

1   Q.   With that -- with that -- with that said,
2   I just want to understand, did you coordinate with
3   Zurich to gather documents responsive to Fluor's
4   requests for information?
5   A.   In this litigation?
6   Q.   Yes.
7   A.   Yes.
8   Q.   Okay.  Is it fair to say that you dictated
9   to Zurich what Zurich should search for or otherwise
10  obtain in response to Fluor's requests for
11  documents?
12       MR. SAFER:  Object to the form of the
13  question.
14       THE WITNESS:  Yeah, I don't know that I
15  would use the word "dictated."  That was another
16  collaborative process.
17  BY MR. ROBERTS:
18  Q.   That's what I was getting at and that's
19  what I'm trying to understand just in general terms.
20       Because that's what I understood from your
21  declarations, that you and Zurich worked
22  collaboratively to identify what documents may be
23  responsive to Fluor's request for information; is
24  that fair?
25  A.   Yes.

Page 242

1  STATE OF CALIFORNIA        )
                              )   ss.
2  COUNTY OF LOS ANGELES      )

3

4       I, Elizabeth Borrelli, Certified Shorthand
5  Reporter, Certificate No. 7844, for the State of
6  California, hereby certify:
7       I am the deposition officer that
8  stenographically recorded the testimony in the
9  foregoing deposition;
10      Prior to being examined the deponent was
11 first duly sworn by me;
12      The foregoing transcript is a true record
13 of the testimony given;
14      Before completion of the deposition,
15 review of the transcript [ x] was [ ] was not
16 requested.  If requested, any changes made by the
17 deponent (and provided to the reporter) during the
18 period allowed are appended hereto.
19
20 Dated: 1-22-2020

                              _____
                              ELIZABETH BORRELLI, CSR 7844

Page 99

1   Q. During your time on this matter where you
2 were collaborating with Zurich to gather documents
3 responsive to Fluor's requests in this case, did you
4 ever become aware of a restricted network drive used
5 by the environmental claims group?
6   A. I don't even know what that is so my
7 answer is no.
8   Q. So you're not aware of any separate claims
9 drive that Zurich maintains separate and apart from
10 its normal claims files?
11   A. You mean like a computer drive?
12   Q. Yes.
13   A. No.
14       (Whereupon Exhibit 781 was marked for
15       identification.)
16       THE REPORTER: Exhibit 781...
17 BY MR. ROBERTS:
18   Q. The court reporter has just handed you a
19 document labeled Exhibit 781, I believe.
20       MR. ROBERTS: Correct?
21       THE REPORTER: (Inaudible response.)
22 BY MR. ROBERTS:
23   Q. And, Ms. Scharrer, I represent to you I
24 know you're not copied on this, but what I'm
25 interested in is the communication from Ms. Grounds

Page 100

1  to Mr. Wilson by e-mail on or around -- well, it's a
2  letter transmitted by e-mail on or around
3  October 11, 2019.
4        Do you see that?
5     A.  No.  The -- are you talking about the top
6  e-mail?
7     Q.  No, I'm talking about the last couple
8  pages of the exhibit.
9     A.  Oh, okay.  One second.
10       So not the e-mail, just the letter?
11    Q.  Yeah, it's the letter on October 11, 2019.
12  That's where I'm referring to right now.
13       If you look at the second paragraph, half
14  the way down on page -- well, let's see.  It doesn't
15  look like it has a Bates label on it.
16       It starts "Zurich then investigated."
17       Do you see that?
18    A.  I'm just finishing reading the letter.
19       Okay.
20    Q.  Directing you to the second page of the
21  letter where it starts "Zurich confirmed that this
22  single page," do you see that?
23       [Reporter requests clarification.]
24       MR. ROBERTS:  Where it says "Zurich
25  confirmed that this single page."

1    BY MR. ROBERTS:
2         Q.   Do you see that?
3         A.   No.  What does the paragraph start with?
4         Q.   It starts with "Now" --
5         A.   Oh, okay.
6         Q.   -- "in response to."
7         A.   Okay, the top paragraph on the last page
8    of this --
9         Q.   Sure.
10        A.   -- exhibit, okay.
11        Q.   About halfway through that paragraph, it
12   says "Zurich confirmed that this single page was not
13   included in the electronic claims file and, instead,
14   was part of a larger electronic document created and
15   maintained by Brad Rausa on a restricted shared
16   network folder."
17             Do you see that sentence?
18        A.   I do see that sentence.
19        Q.   And then below, it has a footnote, and it
20   says "Mr. Rausa's shared network is located on a
21   restricted network drive used by the environmental
22   claims group."  That was the reference I was making
23   to you earlier with my question regarding a
24   restricted network drive used by the environmental
25   claims group.

Page 102

1                During your time collaborating with Zurich
2     and gathering documents responsive to Fluor's
3     request, were you aware of restrictive -- restricted
4     network drive used by the environmental claims
5     group?
6                MR. SAFER:  Objection.  Asked and
7     answered.
8                [Reporter requests clarification.]
9                MR. SAFER:  Objection.  Asked and
10    answered.
11               THE WITNESS:  You prefaced the question
12    with what time period?
13    BY MR. ROBERTS:
14         Q.   During the time that you were
15    collaborating with Zurich gathering documents.
16         A.   No.
17         Q.   Okay.
18               (Whereupon Exhibit 782 was marked for
19               identification.)
20               THE REPORTER:  Exhibit 782...
21    BY MR. ROBERTS:
22         Q.   Ms. Scharrer, the court reporter has just
23    handed you a document labeled Exhibit 782.  And I
24    understand that you were no longer representing
25    Zurich in this case at the time that this letter was

Page 104

1  A. Okay. I'll read it.
2  Q. Ms. Scharrer, on the back page of the
3  letter, starting with the paragraph "As accurately
4  described in my correspondence," do you see that?
5  A. Yes.
6  Q. Ms. Grounds is communicating to Mr. Wilson
7  that Zurich has now identified a "a source from
8  which Zurich had not previously produced ESI," and
9  I'll represent to you that they're, in this
10 correspondence. Discussing the shared drive that I
11 referenced in prior correspondence.
12       And then further on down the letter, it
13 talks about producing additional documents from this
14 source.
15       And, again, I just want to make clear,
16 based upon your testimony, you weren't aware of any
17 other additional sources of ESI information that
18 could have been responsive to Fluor's requests for
19 documentation, correct?
20 A. Are you -- if you're referring to that
21 restricted computer drive, that's correct.
22 Q. Okay.
23       (Whereupon Exhibit 783 was marked for
24       identification.)
25       THE REPORTER: Exhibit 783...

Page 108

1  MR. ROBERTS: I'm just asking if she knows
2  about it.
3  MR. McCARTHY: Yeah, but you're asking for
4  privileged communication from 2016.
5  MR. ROBERTS: Okay. I'll rephrase the
6  question.
7  BY MR. ROBERTS:
8  Q. In and around -- as of -- as of
9  October 5th through -- as of -- I'll say just that.
10  Wiping the slate clean, as of October 5th,
11  were you aware of a restricted claim drive that the
12  environmental claims department used that may
13  contain materials responsive to Fluor's document
14  request?
15  MR. SAFER: Asked and answered.
16  THE WITNESS: I have answered that
17  question. My answer is the same. No.
18  MR. ROBERTS: Why don't we take a break
19  for lunch and then we'll come back?
20  I think there's a cafe down in -- there
21  might be a cafe at the bottom of the building.
22  THE REPORTER: We're still on.
23  THE VIDEOGRAPHER: Off video at 12:36 p.m.
24  (Lunch taken.)
25  THE VIDEOGRAPHER: Back on video at