**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| FLUOR CORPORATION, )<br>)<br>)<br>Plaintiff/Counterclaim Defendant )<br>)<br>v. )<br>)<br>ZURICH AMERICAN INSURANCE )<br>COMPANY, )<br>)<br>Defendant/Counterclaim Plaintiff. ) | No. 4:16CV00429 ERW |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Zurich American Insurance Company's Motion to Compel Production [510] and Plaintiff Fluor Corporation's Motion for Leave to File Supplemental Response to Zurich's Motion to Compel Production [521]. Zurich seeks the production of three categories of documents from Fluor witness John Wilson. Zurich also requests it be permitted a reasonable amount of time to depose Mr. Wilson on the produced writings.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Zurich's current motion to compel before the Court can be traced to the parties briefing of their cross motions for summary judgment. On March 2, 2020, Zurich filed a motion for partial summary judgment on Fluor's bad faith failure to settle claim. In this motion, Zurich argued it did not refuse to settle in bad faith as Fluor never made a demand upon Zurich to settle the Bronson Smoger lawsuits. Zurich offered the testimony of its claims handler, Catherine Tetzlaff, to support these contentions. Ms. Tetzlaff testified that after the global mediation John Wilson told her there were no settlement opportunities for Fluor and Fluor wanted to go to trial.

1

In its Response in Opposition, Fluor disputed Zurich's contentions and stated Ms. Tetzlaff's testimony was false. Fluor asserted it made several demands on Zurich to settle the Bronson Smoger lawsuits. To support Fluor's assertions, on April 7, 2020, John Wilson, Fluor's trial counsel, submitted a testimonial declaration in support of Fluor's opposition to Zurich's motion for partial summary judgment.

In his declaration, Mr. Wilson disputes Ms. Tetzlaff's account of their (December 6, 2010) conversation, stating he did not indicate to Ms. Tetzlaff Fluor did *not* want to settle the Bronson Smoger suits. Moreover, to establish Fluor demanded Zurich settle the cases on Fluor's behalf, Wilson testified in his declaration as to three additional telephone communications he engaged in with Zurich. Mr. Wilson states during a teleconference with Zurich on November 12, 2010, Fluor made it clear it expected Zurich contribute to settlement so Fluor would not be forced to go to trial alone. Wilson also averred he "reiterated Fluor's demand to settle" in telephone communications with Zurich's counsel, Randy Sinnott, on November 29th and 30th of 2010. ECF No. 427 at ¶ 7. In his declaration, Mr. Wilson also describes Fluor's participation in mediation of the Bronson Smoger lawsuits on March 24, 2011, and various communications between Fluor and Zurich in March 2011 related to that mediation.

Zurich filed a motion to exclude Mr. Wilson's declaration, arguing its submission violated Federal Rule of Civil Procedure 26. Because Zurich's motion to exclude Mr. Wilson's declaration impacted the record the Court would consider in ruling on Zurich's motion for partial summary judgment, the Court first addressed the motion to exclude. Concluding Fluor did not technically violate Rule 26 warranting exclusion of the declaration, the Court denied Zurich's motion to exclude Mr. Wilson's declaration. In its ruling, the Court made several observations regarding Fluor's filing of Mr. Wilson's declaration. First, the Court found Fluor's purported

explanation as to why the declaration was rendered necessary late in the litigation disingenuous. Fluor asserted the declaration was necessary to rebut Ms. Tetzlaff's testimony. The Court, however, noted Ms. Tetzlaff was deposed almost ten months prior to the filing of the declaration, but Fluor delayed Mr. Wilson's rebuttal until after discovery was closed. The Court also concluded Fluor's explanation fell flat as the statements made by Mr. Wilson in his declaration went beyond a mere rebuttal of Ms. Tetzlaff's testimony.

The Court also observed that although Mr. Wilson stated in his declaration he demanded Zurich settle the cases in two telephone communications with Zurich's counsel, Fluor did not provide this crucial information to Zurich during the prior four years of litigation. Specifically, the Court noted Fluor failed to identify either communication in its response to Zurich's 2016 first set of interrogatories, in which Interrogatory No. 4 asked if "Fluor or its independent counsel [made] a demand on Zurich." Fluor provided a lengthy response to Interrogatory No. 4, but did not mention Mr. Wilson's alleged demands to Mr. Sinnott. Although Fluor's conduct was troubling, the Court did not find adequate grounds to exclude Mr. Wilson's declaration. The Court emphasized to Fluor it would not condone Mr. Wilson as *both* an advocate and witness at trial.

After denying Zurich's motion to exclude Mr. Wilson's declaration, the Court ruled on the parties' cross motions for summary judgment. In addressing Zurich's motion for partial summary judgment on Fluor's bad faith failure to settle claim, the Court noted an insurer's disregard of an insured's demand to settle is highly relevant in assessing whether the insurer acted in bad faith. The Court found, *other than Mr. Wilson's specific averments of demands in his declaration*, the evidence provided by Fluor of its alleged demands for settlement was too vague. The Court relied on Mr. Wilson's statements in his declaration in finding the existence of disputed issue of fact for trial as to whether Fluor demanded Zurich settle the Bronson Smoger

suits. The Court denied Zurich's motion for partial summary judgment on Fluor's bad faith failure to settle claim.

Fluor has now determined to call Mr. Wilson as a witness at trial and disclosed his status as a witness to Zurich in February 2021. Zurich took Mr. Wilson's deposition on March 26, 2021. During his deposition, Mr. Wilson testified he kept a Notepad during the period 2008 to 2011, and it was his general practice to take contemporaneous handwritten notes of phone calls and meetings. Mr. Wilson stated he copied and scanned approximately twenty pages of notes from this Notepad relevant to this action. Nevertheless, he conceded he could not recall if he comprehensively identified and scanned all pertinent notes. During Mr. Wilson's deposition, Fluor refused Zurich's request to produce Mr. Wilson's notes, claiming they constitute attorney work product.

In addition, during his deposition, Mr. Wilson was questioned about communications and conversations referenced in his declaration. Mr. Wilson confirmed he took handwritten notes memorializing these conversations and stated he may have contemporaneously summarized them for Fluor via email afterwards. Mr. Wilson also testified he did certain analyses of Zurich's existing policy limits. Fluor declined Zurich's request to disclose Mr. Wilson's emails or the policy analyses, arguing they called for attorney/client communications and work product.

On April 12, 2021, after Mr. Wilson's deposition, Zurich filed a motion to compel production. Zurich requests the Court: (1) compel the production of Mr. Wilson's scanned notes; (2) conduct an *in camera* review of the remainder of Mr. Wilson's Notepad; (3) compel the production of email communications between Mr. Wilson and Fluor summarizing conversations with Zurich in November and December 2010 and March 2011; and (4) compel the production

4

of Wilson's policy limits analyses. Zurich also asks the Court to produce Mr. Wilson for deposition testimony regarding these documents.

In its Response in Opposition, Fluor asserts Zurich is not entitled to discover attorney work product notes, communications between Fluor and Mr. Wilson, or his privileged coverage analyses. Fluor argues it has not waived privilege and asks the Court to deny Zurich's Motion in its entirety. Zurich filed a Reply to Fluor's Response in Opposition. Fluor seeks the Court's leave to file a Supplemental Response in support of its Opposition, which Zurich in turn asks the Court to deny.

## II. DISCUSSION

Zurich argues this Court should compel the production of Mr. Wilson's scanned notes, email communications, and coverage analyses as Fluor has waived attorney/client privilege and work product immunity. Zurich claims Fluor has waived any privilege with respect to the subject matter of Mr. Wilson's testimony by offering him as a witness. Zurich argues to allow privilege to shield Mr. Wilson's contemporaneous notes and related materials created by him about events to which he seeks to testify, is inherently unfair. In response, Fluor argues Zurich has not met its heavy burden to invade attorney/client privilege and work product immunity.

Generally, the Federal Rules of Civil Procedure allow discovery of any relevant matter relating to a claim or defense of the party seeking discovery. Fed. R. Civ. P. 26(b)(1). The Supreme Court construes relevancy in a broad and liberal manner. *Herbert v. Lando,* 441 U.S. 153, 177, 99 S.Ct. 1635, 1649, 60 L.Ed.2d 115 (1979); *Schlagenhauf v. Holder,* 379 U.S. 104, 114–15, 85 S.Ct. 234, 240–41, 13 L.Ed.2d 152 (1964); *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 391–92, 91 L.Ed. 451 (1947). In spite of this liberal thrust, confidential communications or information considered privileged customarily remains protected from

disclosure during the discovery process. Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, federal courts have the authority to protect privileged information from disclosure. *Herbert*, 441 U.S. at 177, 99 S.Ct. at 1649, 60 L.Ed.2d 115 (1979). As a result, independent precepts such as the attorney/client privilege and the work product doctrine shield litigants from the unfettered disclosure of privileged information during the discovery process. *See Upjohn Co. v. United States*, 449 U.S. 383, 386, 101 S.Ct. 677, 681, 66 L.Ed.2d 584 (1981); *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975); *Hickman*, 329 U.S. at 508, 67 S.Ct. at 391–92; Fed.R.Civ.P. 26(b)(3).

As the oldest privilege for confidential communications, the attorney/client privilege encourages the "full and frank communication between attorneys and their clients ... promot[ing] broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389, 101 S.Ct. at 682. The client however may waive attorney/client privilege. *Am. Standard Inc. v. Bendix Corp.*, 80 F.R.D. 706, 709–10 (W.D. Mo. 1978) (citing 4 Moore's Federal Practice P 26.60(2), pages 26-229-232). By voluntarily injecting into a litigated case, a material issue which requires ultimate disclosure by the attorney of the information, ordinarily protected by the privilege, the client makes the information discoverable. *Id.* at 709–10.

The work product doctrine codified at Rule 26 of the Federal Rules of Civil Procedure shields from discovery "documents and tangible things . . . prepared in anticipation of litigation. . . . ." Fed. R. Civ. P. 26(b)(3). The doctrine preserves an attorney's professional ability to provide legal services in a manner that is private, confidential, and discrete from an adversary. *Hickman*, 329 U.S. at 511, 67 S.Ct. at 393–94. Like the attorney/client privilege, the work product doctrine is not without limitations. *See* Fed. R. Civ. P. 26(b)(3). The work product privilege is not absolute and may be waived. *See Nobles*, 422 U.S. at 239; *see also In re Chrysler Motors Corp.*

6

*Overnight Evaluation*, 860 F.2d 844 (8th Cir. 1988). Missouri courts have found "at issue" waiver to exist where the privilege holder makes assertions in a litigation context that put its otherwise privileged communications in issue. *State ex rel. St. John's Reg'l Med. Ctr. v. Dally*, 90 S.W.3d 209, 215 (Mo. Ct. App. 2002). In determining whether a party has waived its attorney work product privilege, the Court must not only look at whether the party impliedly waived the privilege, but also "whether the interests of fairness and consistency mandate a finding of waiver." *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 732 (8th Cir. 2002) (citing Wigmore, Evidence at Common Law, § 2327, at 636 (J. McNaughton rev. 1961)). The Eighth Circuit has instructed that the work product privilege be "applied in a commonsense manner in light of reason and experience as determined on a case-by-case basis." *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997). The privilege is designed to balance the needs of the adversary system to promote an attorney's preparation in representing a client against society's interest in revealing all true and material facts relevant to the resolution of a dispute. *See Hickman*, 329 U.S. at 510–11. When a party seeks a greater advantage from its control over work product than the law must provide to maintain a healthy adversary system, the privilege should give way." *Pamida, Inc.*, 281 F.3d at 732.

      Here, there is no dispute the three categories of documents sought by Zurich constitute privileged information protected from disclosure. The question is whether Fluor has waived attorney-client privilege and work product immunity. The claims made by Mr. Wilson in his declaration were critical to Fluor's opposition to Zurich's motion for partial summary judgment. Not only did Mr. Wilson dispute Catherine Tetzlaff's account of their December 6, 2010 conversation, he also testified as to other interactions with her and averred to communications with Zurich in which he demanded Fluor settle the Bronson Smoger suits. As the Court

recognized in its ruling on Zurich's motion for partial summary judgment, to prove bad faith failure to settle, Fluor must show Zurich was guilty of bad faith in *refusing* to settle a claim within the policy limits. *Scottsdale Ins. Co. v. Addison Ins. Co.*, 448 S.W.3d 818, 827 (Mo. banc 2014) (emphasis added).  The Court observed disregarding an insured's demand to settle was "highly relevant in determining whether an insurer acted in bad faith in refusing to settle." *Id.* at 827 n.5.  Zurich argued summary judgment was warranted as it could not have acted in bad faith in *refusing* settlement as Fluor never made a demand Zurich settle the Bronson Smoger cases. Zurich offered evidence to support its claim.  The Court, however, found a disputed issue of fact as to whether Fluor demanded Zurich settle based upon Mr. Wilson's averments in his declaration.

Now, Mr. Wilson will be offered by Fluor as a factual witness at trial concerning the same crucial and material issues in this controversy.  The Court finds Fluor cannot voluntarily disclose facts in its favor to help it oppose a motion for summary judgment and create a genuine issue for trial, then invoke privilege as a shield to prevent a thorough inquiry as to the truthfulness of these facts.  In submitting his declaration and in offering Mr. Wilson as a fact witness, the Court finds Fluor has placed the subject matter of his averments and testimony at issue. The Court concludes the invasion of the privilege is necessary to allow Zurich to test the validity of Wilson's assertions. Therefore, the Court finds Fluor has waived attorney/client privilege and work product immunity with respect to the scanned notes and requested email communications.  Zurich asks the Court to conduct an *in camera* review of the remainder of Mr. Wilson's handwritten notes in his Notepad.  As Mr. Wilson conceded he was not sure he scanned all his relevant notes, the Court will conduct an *in camera* review and any notes subject to waiver will be ordered produced to Zurich.

The Court, however, does not find Fluor has waived privilege with regard to the policy analyses sought by Zurich. The Court has previously reviewed these documents *in camera* and determined they were privileged. The Court now finds they remain protected, as their disclosure goes beyond what is necessary to challenge the sufficiency of Mr. Wilson's averments.

The Court has considered another argument offered by Zurich in favor of waiver and finds it provides additional support to compel the production of Mr. Wilson's scanned notes. Zurich contends Fluor waived privilege by failing to properly record the requested documents on its privilege log. When a party withholds materials as privileged, it must "expressly make the claim," and "describe the nature" of the withheld materials "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). "A party must notify other parties if it is withholding materials otherwise subject to disclosure under the rule or pursuant to a discovery request because it is asserting a claim of privilege or work-product protection. To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection." *Fid. Nat. Title Ins. Co. v. Captiva Lake Invs., LLC*, No. 4:10-CV-1890 CEJ, 2012 WL 3562207, at *2 (E.D. Mo. Aug. 17, 2012) (citing Rule 26(b) advisory committee note (1993 amend.)).

With regard to the requested emails exchanged by Mr. Wilson and his policy analyses, the Court finds Fluor has adequately shown they were individually scheduled and properly logged on Fluor's privilege log.[1] With regard to Mr. Wilson's handwritten notes, Fluor asserts it

---

[1] In its Response in Opposition, Fluor provided a listing of the Privilege Log entries corresponding to Zurich's requests for production of Wilson's contemporaneous emails and policy analyses. The requested email communications correspond to Privilege Log Entry Nos. 663, 664, 1711, 1716, 1717, 1718, and the coverage analyses are listed at Entry Nos. 614, 674, 713. The Court previously reviewed *in camera* the documents corresponding with all of these

9

properly disclosed the notes by way of a footnote included on its June 30, 2017 Privilege Log:[2] The footnote stated: "Fluor is withholding on a categorical basis, any and all potentially responsive communications and documents exchanged only internally at Latham Watkins LLP pursuant to both the attorney-client privilege and work product doctrine." *See* ECF No. 517-1. The Court does not find this footnote adequate to put Zurich on notice as to the existence of Mr. Wilson's handwritten notes. The notes do not fall into the description provided by the footnote as they are not "communications or documents exchanged only internally at Latham Watkins." Moreover, given Mr. Wilson was initially identified as a potential witness by Zurich and Fluor's knowledge of the significance of his potential testimony as a witness, Fluor should have separately logged his notes instead of relying on a general categorical footnote to adequately give notice.[3] Thus, the Court finds Fluor did not disclose Mr. Wilson's notes as required by Rule 26(b)(5)(A) and has waived privilege pursuant to Rule 37(b)(2).

Although unnecessary to its ruling, the Court further notes Fluor's conduct weighs in favor of disclosure of the emails and notes requested by Zurich. Zurich's first set of interrogatories asked if Fluor made a demand for settlement on Zurich. Although Mr. Wilson's declaration provided specific instances of demands to settle, these averments were conspicuously

---

entries, except 1717. The Court previously ordered 663, 664, and 1716 disclosed, so these have already been produced and are not at issue in this Motion. As the Court has found work product immunity waived with regard to Mr. Wilson's email communications (but *not* the policy analyses) as discussed above, communications corresponding to Privilege Log Entries 1711, 1717, and 1718 shall be produced to Zurich.

[2] The footnote was similarly included on Fluor's Aug. 31, 2019 Master Privilege and Redaction Log.

[3] The Court further observes that similar to Mr. Wilson's handwritten notes, Zurich's claims handler Bradley Rausa also maintained a contemporaneous claims diary of notes recording his conversations (including those with Zurich counsel). Zurich failed to disclose the existence of Mr. Rausa's "diary" or list it on a privilege log. This failure served as a basis for Fluor's third motion for sanctions. Just as Zurich should have logged and disclosed the existence of its claims handler Bradley Rausa's personal notes, so should Fluor have properly disclosed and logged Mr. Wilson's notes.

10

absent from Fluor's response to Zurich's interrogatory.  The Court also notes Fluor delayed offering Mr. Wilson's discovery until late in the litigation, after the close of discovery and after the parties' motions for summary judgment were filed.  Although Fluor tries to excuse its tardiness by casting Wilson's declaration solely as a response to Ms. Tetzlaff's account of a conversation, his testimony was not produced until ten months after Ms. Tetzlaff's deposition and far exceeded the mere rebuttal of a conversation as it contained crucial averments of communications to other individuals.

Mr. Wilson's conduct at his deposition further militates in favor of relief to Zurich. In its motion to compel, Zurich alleges Mr. Wilson engaged in obstructive behavior at his deposition by filibustering and giving non-responsive, argumentative answers to simple "yes or no" factual questions.  The Court has reviewed portions of Mr. Wilson's deposition testimony.  Akin to Fluor's lengthy non-response to Zurich's 4th Interrogatory, at his deposition, Mr. Wilson gives argumentative, rambling responses to questions posed by Zurich as to whether he demanded Zurich settle on behalf of Fluor.  For example, in the following excerpt from his deposition, Mr. Wilson was questioned by Zurich's counsel, Mr. Safer, about Mr. Wilson's November 30, 2010 conversation with Zurich counsel Randall Sinnott:

> BY MR. SAFER:
>
> Q: Did you ask Zurich through Mr. Sinnott to contribute a specific amount of money to a global settlement on Fluor's behalf?
>
> A: Well, at that time, Fluor did not know what the settlement numbers were. That was part of what I asked for in my letters to him, was there information about what the settlement numbers were. So we did not know, for example, that plaintiffs had told Mr. Sinnott that he reflected in the memo that I've now seen pursuant to the court orders telling Zurich to produce documents after it was sanctioned. He did not tell us that Zurich knew the plaintiffs intended to get the difference between their global demand to settle with all defendants and the separate amount that they would settle with Doe Run alone for, they intended to get that delta from Fluor, didn't tell me that. Didn't tell me anything about the numbers whatsoever.

So Fluor, at that time, did not know what the numbers were that would get it included in the settlement. As a result of that, I didn't have any specific number to demand that Zurich paid. Zurich was the one that had that information and they didn't share it with me.

MR. SAFER: I move to strike that answer as nonresponsive.

BY MR. SAFER:

Q: I didn't ask you what you knew, what you what you later learned about sanctions. I didn't ask you any of that and you know that.
The question is, did you ask Zurich through Mr. Sinnott to contribute a specific amount to global settlement on Fluor's behalf; yes or no?
A: Respectfully, Fluor didn't know a number to demand in terms of a specific settlement as I said. Zurich did. Zurich did not tell me that number despite my asking them to tell me that number.
In light of those facts, I did not have a specific number to demand that Zurich paid. So no, I did not ask for a specific number. I asked Zurich to protect Fluor's interests and to get Fluor included in a settlement.

MR. SAFER: Move to strike.
. . .

BY MR. SAFER:
Q: Did you ask that Zurich contribute up to a certain amount on Fluor's behalf for a global settlement?
A: It's the same answer. I asked Zurich to ensure that Fluor was included in a settlement to protect Fluor's interests by contributing was necessary. I did not know what those were, much like in the Browning/Dawson mediation I did not have a specific number that I asked Zurich contribute. I passed along the information that I had, told them that Fluor expected Zurich to protect its interests as it was required to do, and relied on Zurich to comply with its obligations. I trusted that Zurich was going to act in good faith as it was required to do. I did not anticipate that Zurich was keeping information from me that I specifically requested or failing to act on information that they had.
BY MR. SAFER:
Q: Mr. Wilson, we're going to end up spending another day together. The question -- I move to strike that answer as unresponsive.
The question, which can be answered "yes 'or "no", is, did you ask that Zurich contribute up to a specific amount on Fluor's behalf for a global settlement?

A: I did not have any specific amount available as to what would be required to get Fluor included in a settlement, either a specific number or an up to number. So, I asked Zurich to do what it was required to do based on the information that I had. I said please protect Fluor's included in the settlement, protect Fluor's interests.

12

        MR. SAFER: Move to strike that answer as unresponsive.

ECF No. 510-4 at 166-169.  Unlike his succinct averments in his declaration, the Court finds Mr. Wilson's deposition testimony to be obstructive.  Based on Mr. Wilson's non-responsive testimony and the Court's partial grant of Zurich's Motion to compel, the Court will permit Zurich additional time to complete Mr. Wilson's deposition.

        Accordingly,

        **IT IS HEREBY ORDERED** that Zurich American Insurance Company's Motion to Compel Production [510] is **GRANTED in part and DENIED in part** as set forth in detail above.

        **IT IS FURTHER ORDERED** Fluor immediately produce John Wilson's scanned handwritten notes to Zurich.

        **IT IS FURTHER ORDERED** that Fluor provide the remainder of John Wilson's handwritten Notepad to the Court for *in camera* review.

        **IT IS FURTHER ORDERED** Fluor immediately produce John Wilson's contemporaneous e-mail communications with Fluor to Zurich (corresponding to Fluor's Privilege Log Entries 1711, 1717, and 1718).

        **IT IS FURTHER ORDERED** Fluor must produce Mr. Wilson for further deposition.

        **IT IS FURTHER ORDERED** that Fluor's Motion for Leave to File Supplemental Response to Zurich's Motion to Compel Production [521] is **GRANTED**.

        Dated this 26th Day of May 2021.

                                                          E. RICHARD WEBBER
                                                          SENIOR UNITED STATES DISTRICT JUDGE