# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| FLUOR CORPORATION, | ) | |
| | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | No. 4:16CV00429 ERW |
| | ) | |
| ZURICH AMERICAN INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Zurich American Insurance Company's Motion in Limine (No. 1) to exclude argument that Fluor demanded Zurich settle the Bronson Smoger cases [528]; Zurich's Motion in Limine (No. 2) to preclude argument or evidence that it owed a duty to settle claims of uncovered plaintiffs [529]; Zurich's Motion in Limine (No. 3) to preclude argument or evidence that Plaintiffs' $60 million settlement offer remained open [530]; Zurich's Motion in Limine (No. 4) to preclude reference or argument that Zurich should have told Fluor the Doe Run settlement number [531]; Zurich's Motion in Limine (No. 5) to exclude reference to discovery disputes and discovery sanctions [532]; Zurich's Motion in Limine (No. 6) to preclude evidence of its reinsurance [533]; Zurich's Motion in Limine (No. 7) to preclude evidence of its size, ownership, financial condition, and net worth [534]; Zurich's Motion in Limine (No. 8) to exclude evidence of other bad faith claims [551]; Zurich's Motion in Limine (No. 9) to preclude evidence of reserves and settlement authority [535]; Zurich's Motion in Limine (No. 10) to preclude improper witness testimony [536]; Zurich's Motion in Limine (No. 11) to exclude Zurich's attorney' recommendations and legal opinions [537]; Zurich's Motion in

Limine (No. 12) to exclude legal opinions regarding policy limits [538]; Zurich's Motion to Bifurcate Punitive Damages [550]; and Fluor Corporation's Motion in Limine Number One [540]; Fluor's Motion in Limine Number Two [541]; Fluor's Motion in Limine Number Three [542]; Fluor's Motion in Limine Number Four [543]; Fluor's Motion in Limine Number Five [544]; Fluor's Motion in Limine Number Six [546]; Fluor's Motion in Limine Number Seven [547]; and Fluor's Motion in Limine Number Eight [548]. This Court notes any rulings on motions *in limine* are advisory. Parties attempting to introduce evidence or reference any of the relevant issues associated with any motions *in limine* that are granted should first approach the bench and raise the issue with the Court outside the presence of the jury.

## I.    <u>Motion in Limine (No. 1) to exclude argument that Fluor demanded Zurich settle the Bronson Smoger cases [528].</u>

Zurich seeks to preclude Fluor and its attorneys and witnesses from arguing Fluor made a demand on Zurich to settle, and from describing the communications they had with Zurich as demands. Zurich argues the communications Fluor describes as "demands" are not demands under Missouri law or this Court's rulings. Zurich argues although John Wilson averred in his Declaration (submitted in opposition to Zurich's motion for summary judgment) he made three oral demands to settle, his subsequent deposition testimony establishes his alleged "demands" are insufficient under Missouri law to constitute a demand for settlement. Zurich contends permitting Fluor to refer to these communications as "demands" would mislead and confuse the jury about one of the key facts bearing on Fluor's bad faith refusal to settle claim. In response, Fluor claims it made sufficiently specific demands as Missouri does not impose the hyper-technical requirements as suggested by Zurich. Fluor argues it will present evidence of at least four occasions which can fairly be considered demands.

The Missouri Supreme Court in *Scottsdale Ins. Co. v. Addison Ins. Co.* recognized that if an insurer disregards an insured's demand to settle, this fact is "highly relevant in determining whether an insurer acted in bad faith in refusing to settle." *Scottsdale Ins. Co. v. Addison Ins. Co.*, 448 S.W.3d 818, 827 n.5 (Mo. banc 2014). As noted previously by the Court in its September 21, 2020 Order, under Missouri law, a demand for settlement must be clear and specific, not general or vague. The Court cited to *Bonner v. Automobile Club Inter–Insurance Exchange*, in which the Missouri Court of Appeals determined no demand for settlement had been made where the insured's statements regarding settlement were "overly vague as to what settlement is sought" and did not "contain[] any information from which an amount of settlement can be gleaned." *Bonner v. Automobile Club Inter–Insurance Exchange*, 899 S.W. 2d 925, 928 (Mo. Ct. App. 1995). Although *Bonner* preceded *Scottsdale*, which clarified a demand for settlement is a highly relevant factor, not an essential element of bad faith failure to settle as asserted in *Bonner*, the Court found *Bonner* instructive in evaluating whether a demand is sufficient under Missouri law.[1]

In its Order ruling on Zurich's motion for summary judgment, the Court examined the evidence offered by Fluor to support its assertion it demanded Zurich settle the Bronson/Smoger suits. Specifically, Fluor offered a letter from John Wilson to claims handler Bradley Rausa, the claims notes of Bradley Rausa, a letter from John Wilson to Zurich's coverage counsel, and a letter from Zurich's coverage counsel Randy Sinnott to other Zurich representatives. Fluor also

---

[1] To the extent Fluor argues *Bonner v. Automobile Club Inter–Insurance Exchange* was overruled by *Scottsdale v. Addison*, the Court notes that while *Bonner's* recitation of the elements of bad faith failure to settle was overruled in *Scottsdale*, *Bonner's* analysis of the sufficiency of a demand for settlement was not addressed in *Scottsdale*. The Court further notes *Bonner's* analysis of sufficiency of a demand for settlement in evaluating a bad faith failure to settle claim was relied upon in *Purscell v. TICO Ins. Co.*, 790 F.3d 842, 846-47 n.5 (8th Cir. 2015), a case handed down following the decision in *Scottsdale*.

offered the Declaration of John Wilson, which contained Wilson's averments of three oral demands for settlement from Zurich. Other than Mr. Wilson's averments of three oral demands in his Declaration, the Court found Fluor's evidence of its purported demands too vague to constitute definitive demands for settlement. For example, Fluor claimed its requests for prompt updates on the status of settlement negotiations, its objections to a settlement excluding Fluor, its warnings that any settlement must provide for a release of both Doe Run and Fluor, and its insistence Zurich safeguard Fluor were all proper demands for settlement. The Court rejected this evidence as too vague under *Bonner* to constitute demands for settlement in Missouri. Although the Court was clear in its ruling, in opposition here to Zurich's motion *in limine*, Fluor again proffers the same four communications as evidence of its demands Zurich settle. The Court again rejects Fluor's argument.

On summary judgment, the Court found a genuine dispute as to whether Fluor demanded settlement based upon Mr. Wilson's averments of three oral demands. However, Mr. Wilson's recent deposition testimony following his Declaration establishes his alleged oral demands are insufficient under Missouri law. When asked during his deposition about the allegations of demand in his Declaration, Mr. Wilson provides non-responsive testimony that wholly fails to establish a legally sufficient demand for settlement. In response to pointed inquiries about whether he demanded contribution from Zurich in his communications with Randy Sinnott, Mr. Wilson merely testifies he asked that Fluor be included in settlement and its interests be protected. Moreover, the Court compelled production of Mr. Wilson's emails and notes corresponding to the dates of his alleged oral demands in his Declaration. Although Fluor initially claimed to the Court that these documents were consistent with Wilson's Declaration, they conspicuously contained no mention of any demand.

Fluor intends to offer the above communications as evidence of its demand for settlement at trial. The Court finds the evidence provided by Fluor does not constitute a demand for settlement in accordance with Missouri law and would therefore mislead and confuse the jury. Zurich's motion on this point is granted.

II. **Zurich's Motion in Limine (No. 2) to preclude argument or evidence that it owed a duty to settle claims of uncovered plaintiffs [529].**

Zurich asserts Fluor should be precluded from referring to, or presenting evidence or argument regarding any alleged duty on the part of Zurich to settle the claims of plaintiffs who were not alive and living in Herculaneum, Missouri, between February 4, 1981, and June 1, 1985, when Zurich provided the insurance coverage at issue in this litigation. Zurich anticipates Fluor may attempt to suggest to the jury that Zurich had a duty to settle the claims of plaintiffs who could not possibly have been covered by its policies. Zurich states its concern is based on the deposition testimony of Fluor's counsel John Wilson, who testified that if Zurich had a duty to defend a lawsuit, he believed Zurich had a duty to settle all the claims in that lawsuit, even those of plaintiffs who could not possibly have triggered coverage. Zurich asserts this opinion is contrary to Missouri law, the Policies' language and the parties' course of dealing.

In response, Fluor contends Zurich's motion seeks to exclude evidence concerning an argument Fluor does not intend to advance at trial. Fluor asserts it does not argue Zurich was required to pay settlement amounts allocated to non-covered plaintiffs. Fluor further states Zurich's Motion should also be denied because it targets deposition testimony elicited by Zurich that Fluor will not seek to introduce. Fluor notes Mr. Wilson was responding to Zurich's question at his deposition concerning the scope of the duty to settle—and he noted his view under California law. Fluor notes it has not advanced Wilson's view of California law in this

case which is governed by Missouri law. Fluor argues Zurich's motion to exclude this evidence is moot as Fluor does not seek to admit testimony Zurich was obligated to pay settlement amounts allocated to uncovered plaintiffs.[2]

Based upon Fluor's representations, the Court denies Zurich's motion on this point as moot.

### III.   Zurich's Motion in Limine (No. 3) to preclude argument or evidence that Plaintiffs' $60 million settlement offer remained open [530].

Zurich asks the Court to preclude Fluor from presenting evidence or arguing the Bronson/Smoger plaintiffs' $60 million global settlement offer remained open until December 13, 2010. Zurich contends both black letter contract law and undisputed evidence show the plaintiffs' $60 million offer was terminated by the $44 million counteroffer on November 18, 2010 and was never renewed or reiterated in any way by plaintiffs. Because it contends the $60 million offer remained closed after the $44 million counteroffer, Zurich argues Fluor should not be allowed to confuse the jury with argument that is contrary to contract law in Missouri. In response, Fluor contends Zurich's motion should be denied as Zurich's argument is contrary to the evidence and is based on contract law principles that have no role to play in this bad faith failure to settle case.

While Zurich's argument that the Bronson/Smoger plaintiffs' $60 million offer was legally terminated by the insureds' $44 million counteroffer may be meritorious in a contract

---

[2] The Court notes Doe Run's funding proposal to Zurich to globally settle the Bronson/Smoger suits prior to the 2010 mediation was based on a percentage of the counteroffer versus an allocation based on covered and uncovered plaintiffs. A narrow interpretation of Fluor's response could exclude the Bronson/Smoger plaintiffs at issue in Doe Run's funding proposal as the proposal was not based on allocations. The Court, however, will reasonably read Fluor's statement above as Fluor does not seek to admit testimony Zurich had a duty to settle claims for uncovered Bronson/Smoger plaintiffs.

action, the Court cannot preclude evidence that a settlement *opportunity* may have nevertheless remained for Fluor.  In a *tort* action for bad faith failure to settle, black letter contract law that an offer was rejected cannot preclude evidence the offeror remained willing to negotiate a settlement for the terms of the offer after the alleged rejection. Here, the record reflects evidence the opportunity to settle may have remained open for Fluor between November 18, 2010, and December 13, 2010.  For example, there is testimonial evidence from the Bronson/Smoger plaintiffs' counsel, Gerson Smoger, indicating that, despite the tentative separate settlement with Doe Run, a global settlement opportunity was not withdrawn prior to December 13, 2010.  The Court finds this evidence relevant to Fluor's bad faith failure to settle claim.   Zurich's motion is therefore denied.

IV. **Zurich's Motion in Limine (No. 4) to preclude reference or argument that Zurich should have told Fluor the Doe Run Settlement number [531].**

Zurich asserts evidence or argument Zurich should have told Fluor the amount for which Doe Run separately settled with the Bronson-Smoger plaintiffs should be precluded because such an argument is contrary to law and poses a substantial risk of juror confusion. Zurich notes the record reflects Doe Run's defense and coverage counsel told Zurich the plaintiffs had made confidentiality a condition of the settlement. Zurich argues it was barred by the insurer-insured privilege and the mediation-settlement privilege from disclosing the Doe Run settlement figure to Fluor.  Zurich contends it cannot be accused of acting in bad faith by Fluor because Zurich refused to breach its legal duty to its other insured Doe Run.  Absent intervention by the Court, Zurich argues the jury will have no way to determine if Zurich was barred by privilege and legal duty from disclosing the Doe Run settlement number.

In response, Fluor argues Zurich could not withhold material information concerning the difference between the amount of the Bronson/Smoger plaintiffs' global demand and the separate settlement with Doe Run. Fluor asserts Zurich's duty of candor required Zurich to disclose all the facts necessary for Fluor to evaluate the settlement opportunity. Fluor further contends the Court's previous ruling rejects Zurich's claim that Doe Run's communication about the amount of its separate settlement was privileged.

To address this motion, the Court necessarily must examine whether information communicated by Doe Run to Zurich regarding the amount of its separate settlement with the Bronson/Smoger plaintiffs (and by implication also the $7 million difference, the "delta," between that amount and Bronson/Smoger plaintiffs' original demand) constituted a privileged communication. Communications between an insured and his insurer during the course of their relationship are privileged, if the communication relates to the insured's duty to report incidents or the insurer's duty to defend and indemnify. *Ratcliff v. Spring Mo., Inc.*, 261 S.W.3d 534, 548 (Mo. Ct. App. 2008). Although the Eighth Circuit has not recognized a settlement privilege, Missouri Revised Statute § 435.014(2) states any communications relating to the subject matter of disputes made during the resolution process are confidential and not subject to discovery. The Court previously ruled on the application of the insurer-insured and mediation-settlement privileges with respect to Doe Run's communications with Zurich. The Court stated:

> [A]ny communications between Zurich and Doe Run, regarding Doe Run's settlement of the Lead Lawsuits concerns Zurich's duty to defend and indemnify Doe Run and are privileged. However, communications between Zurich and Doe Run concerning Fluor, Doe Run's relationship to Fluor, and Doe Run and/or Zurich's decision(s)to exclude Fluor from the settlement do not relate to Zurich's duty to defend and indemnify Doe Run, because they necessarily involve Doe Run's conflict with Fluor, another insured.

ECF No. 104 at 4.

At issue here are Doe Run's communications to Zurich regarding Doe Run's tentative separate settlement agreement with the Bronson/Smoger plaintiffs. Zurich was informed by Doe Run of the amount of the settlement and the Bronson/Smoger plaintiffs' requirement the amount be kept confidential from Fluor. Doe Run's communications to Zurich about details of Doe Run's tentative separate settlement agreement with the Bronson/Smoger plaintiffs relates to Zurich's duty to defend and indemnify Doe Run. It does not constitute a communication about Fluor or a communication about a decision to exclude Fluor. Instead, it solely concerned the terms of the separate settlement between Doe Run and the Bronson/Smoger plaintiffs. It was therefore a privileged communication.[3] As such, Zurich was barred by privilege from divulging the amount of Doe Run's separate settlement to Fluor. Zurich asks the Court to preclude Fluor from presenting argument or evidence that Zurich had a duty to disclose the amount for which Doe Run separately settled with the Bronson/Smoger Plaintiffs. Zurich's motion on this point is granted.

Fluor seems to draw a distinction by arguing its allegation against Zurich is not based on Zurich's failure to tell Fluor the amount for which Doe Run separately settled, but instead is focused on Zurich's failure to inform Fluor about the $7 million delta and Zurich's assessment Fluor could get out for even less. Zurich's disclosure of the $7 million "delta" would necessarily also disclose the amount of the separate settlement (by virtue of simple math as it is merely the difference between the Bronson/Smoger plaintiffs' $60 million global demand and the amount of the separate settlement). Therefore, the Court concludes the "delta" was part of a privileged communication between Doe Run and Zurich. However, Fluor also presents evidence of

---

[3] However, pursuant to the Court's previous ruling, the request to keep the terms of the tentative settlement confidential from Fluor, concerns Fluor and is therefore not privileged.

Bradley Rausa's November 23, 2010 claims note in which he states, "πs wanted to get $58M for 58πs, let everyone go. Is there a number πs will accept to get Fluor out of the case. Maybe now negotiation with Fluor. $4-5M or a little more." ECF No. 591-1 at 7. It is possible Mr. Rausa is merely speculating based upon his knowledge of Doe Run's tentative separate settlement amount. To the extent, however, Zurich had knowledge of a settlement opportunity that was not based on its privileged communication with Doe Run as to the amount of its separate settlement, it is exempted from the Court's ruling above.

V.     **Zurich's Motion in Limine (No. 5) to exclude reference to discovery disputes and discovery sanctions [532].**

Zurich asks the Court to exclude testimony, argument, evidence, or reference to (for substantive or impeachment purposes) information regarding pre-trial discovery disputes or hearings or orders regarding discovery, including the Court's sanctions orders. Zurich argues this evidence is not relevant to any issue to be decided by the jury, and any probative value will be substantially outweighed by the danger of unfair prejudice to Zurich. Zurich asserts the Court's sanction orders would influence the jurors, causing them to prejudge the case against Zurich without regard for the actual facts of the case.

In response, Fluor claims Zurich's motion asks the Court to give Zurich management a "free pass" for all of its wrongful conduct that occurred after the case was filed. Fluor argues Zurich's sanctionable conduct is probative of its bad faith state of mind. Fluor further contends Zurich ignores that the jury will be given an adverse instruction on Zurich's conduct in discovery. See ECF No. 204 at 4 ("The Court finds the appropriate sanctions to address the violations of the Court's discovery orders are for an adverse jury instruction to be given at trial[.] . . . The exact language of the adverse jury instruction will be decided, by the Court, at the time

of trial.").  Fluor asserts evidence of the conduct that led to the Court's adverse instruction will aid the jury's understanding of that instruction and should be admitted for that independent reason.

As noted by Fluor, the Court twice previously sanctioned Zurich for its discovery violations by ordering it to pay attorneys' fees and costs of $243,775.00, and $1,500,156.57 to Fluor.  Although the Court previously indicated it would give an adverse jury instruction at trial, the Court declines to do so now as it finds the monetary sanctions subsequently imposed sufficient.  The Court finds the presentation by Fluor at trial of additional evidence of Zurich's sanctionable conduct and the Court's sanctions should be precluded.  Any limited probative value of additional evidence and argument is outweighed by the risk of unfair prejudice to Zurich.  Zurich's motion will be granted.

## VI.     __Zurich's Motion in Limine (No. 6) to preclude evidence of its reinsurance [533].__

Zurich asserts evidence or argument regarding Zurich's reinsurance coverage, or its communications about or with reinsurers, is irrelevant, prejudicial, and inadmissible, and Fluor should be precluded from introducing it at trial.  In response, Fluor argues excluding this evidence is not practical or justified in a case that is about insurance and distributing risk.  Fluor notes there are dozens of trial exhibits where reinsurance is mentioned and redacting these exhibits would be cumbersome.

Rule 411 of the Federal Rules of Evidence prohibits the introduction of insurance evidence to prove whether a person acted wrongfully.  *Ventura v. Kyle*, 825 F.3d 876, 883 (8th Cir. 2016).  The risk of prejudice is high when evidence of insurance or reinsurance is introduced. In *Halladay v. Verschoor*, 381 F.2d 100, 112 (8th Cir. 1967), the Eighth Circuit explained it was "utterly repugnant to a fair trial or ... a just verdict" for the jury to hear that "the

damages sued for ... will be taken care of by an insurance ... company." The *Halladay* Court further observed that "it has been almost universally held that the receipt of such evidence constitutes prejudicial error sufficient to require reversal." *Id.* Likewise, in *Transit Cas. Co. v. Transamerica Ins. Co.*, 387 F.2d 1011, 1013–14 (8th Cir. 1967), the Eighth Circuit stated: "The fact that [the plaintiff] was reinsured and stood to bear only five percent of [its] loss is a fact that obviously would impress the jury, and might well lead it to return a defendant's verdict ... [and] [t]he interjection of the issue of reinsurance was prejudicial error."

The Court finds evidence or argument regarding Zurich's reinsurance coverage poses a high risk of prejudice to Zurich. Zurich's point on this motion is granted.

## VII.   Zurich's Motion in Limine (No. 7) to preclude evidence of its size, ownership, financial condition, and net worth [534].

Zurich asserts evidence or argument regarding its size, ownership, financial condition, and net worth is irrelevant to the claims and defenses in this action and its introduction would be highly prejudicial to Zurich. Zurich acknowledges the exception, as this Court recognized in its *Daubert* rulings, that a plaintiff may introduce evidence of the defendant's financial condition and net worth in the punitive damages phase of a trial. Zurich asks the Court to 1) exclude all evidence of Zurich's size and ownership from trial, and 2) exclude all evidence of Zurich's financial condition and net worth from the liability phase of trial.[4]

---

[4] In a separate motion, Zurich seeks bifurcation of the punitive damages stage of trial. Zurich asks the jury be permitted to engage in an initial phase of trial in which they first decide whether Zurich is liable to Fluor and, if so, what would be an appropriate award of compensatory damages. Then if the Court determines a prima facie case exists for punitive damages, Zurich contends the jury can address such damages during a second phase of trial. As such, liability for punitive damages, as well as the amount of punitive damages would be addressed during the second phase of trial. In Zurich's Reply to Fluor's response to Zurich's motion to bifurcate, Zurich asks the Court to bar presentation of any evidence regarding Zurich's net worth until after the jury has first determined Zurich is liable for punitive damages. ECF No. 618 at 3. The instant

In response, Fluor asserts the evidence Zurich seeks to exclude is relevant and admissible.  Fluor contends evidence of Zurich's financial condition and net worth are relevant to Zurich's state of mind and financial incentive to act in bad faith because they will show Zurich could have contributed to the settlement, but simply chose not to. In addition to liability for bad faith, Fluor further argues Zurich's financial condition and profit motive are relevant to whether Fluor is *liable for punitive damages* for bad faith.  Fluor asserts evidence of Zurich's financial condition will show Zurich could have established reserves and contributed to settlement but chose not to in reckless disregard for Fluor's interests.

Finally, Fluor disputes Zurich's request to exclude all reference to Zurich's size and ownership from all stages of the trial.  Fluor contends both Zurich's size and ownership are relevant and admissible.  Fluor maintains evidence of Zurich's size and sophistication bear on its state of mind and motivation. With regard to Zurich's ownership, Fluor argues it is relevant to establishing bad faith failure to settle as the evidence shows Zurich's global parent had approval power over both settlement and establishing reserves.

The Court will first address Fluor's argument that evidence of Zurich's financial condition and net worth are relevant to the jury's determination of liability for bad faith.  Fluor's argument in favor of relevance essentially boils down to an assertion Zurich had the wealth to contribute to settlement, yet chose not to do so, therefore establishing an admissible financial motive for refusing.  The Court finds this rationale for relevancy insufficient.  Under Fluor's broad theory, an insurer's financial condition would be admissible in every action for bad faith.

_____

motion is less clear.  However, the Court will interpret Zurich's request to preclude evidence of its financial condition and net worth in conjunction with its requests as articulated in its motion to bifurcate.

The Court finds no authority for such a proposition. Nor does the Court find the cases relied on by Fluor in support of its argument persuasive.[5]

Any attenuated relevance alleged by Fluor is outweighed by the danger of unfair prejudice to Zurich. Unfair prejudice means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, Advisory Committee Notes. Argument that an insurer chose not to pay a claim in spite of its its wealth carries the improper suggestion that a jury should find liability based upon the insurer's wealth.

Therefore, the Court will preclude evidence and argument of Zurich's financial condition and net worth during the liability phase of trial for bad faith failure to settle. As discussed below, the Court will bifurcate the punitive damages phase of trial in the event the jury returns a favorable monetary award for Fluor. Should the case progress to the punitive damages stage, the jury will determine both liability for punitive damages and the amount of punitive damages in one phase. The Court will allow presentation of evidence regarding Zurich's financial condition and net worth during this second phase. Evidence of corporation's net worth is typically considered in assessing punitive damages. *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 462

---

[5] Fluor cites to *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908 (8th Cir. 2007). However, in *BJC Health*, the evidence the Eighth Circuit found admissible to determine whether the insurer breached the covenant of good faith and fair dealing was the insurer's broader business goals and motivations, i.e. evidence the insurer was seeking to shed medical malpractice clients. *Id.* This case is inapposite to Fluor's argument as a particular business goal and practice of eliminating a category of insureds was at issue in *BJC Health*, not the insurer's net worth and financial condition. Fluor's reliance on *Stoltenberg v. Unum Life Ins. Co. of Am.*, No. 8:04CV288, 2005 WL 6934456, *3 (D. Neb. Dec. 12, 2005) is equally inapposite. In that case the District Court of Nevada noted plaintiff's discovery requests sought information related to the defendant's motives underlying the denial of benefits, including a claim payment policy which may have disfavored claimants, and financial motives to deny claims. The *Stoltenberg* court did not rule on the admissibility of evidence at trial of financial condition. It merely described the nature of plaintiff's discovery requests.

n. 28 (1993). Accordingly, the Court will permit Fluor to introduce evidence of Zurich's financial condition and net worth for purposes of determining punitive damages, if any.

Fluor offers another basis for the admission of evidence of Zurich's financial condition and net worth, Fluor contends Zurich's financial condition and net worth are relevant to rebut Zurich's assertion it did not need adequate reserves at the time of the crucial mediation as Zurich had sufficient money to pay any demand for contribution. Fluor states Zurich has put its financial condition at issue and Fluor must be allowed to test Zurich's claim. This argument is not persuasive as admission of such evidence will reinforce Zurich's wealth to the jury. This risk far outweighs any claim of testing the veracity of Zurich. The Court finds such an introduction of Zurich's net worth and financial condition would fail the test under Rule 403 as any probative value would be outweighed by the danger of unfair prejudice.

Finally, in its motion, Zurich asks the Court to preclude *all* evidence of its size and ownership at trial. For the same reasons the Court precluded evidence of Zurich's financial condition and net worth during the first phase of trial, the Court will preclude all evidence of Zurich's size during the the first phase. However, the Court will permit Fluor to introduce evidence of Zurich's size for purposes of determining punitive damages.

With regard to evidence of Zurich's ownership, Fluor argues such evidence is admissible as Zurich's parent was involved in the decision not to raise reserves as well as the decision to not contribute to settlement. The Court will not permit evidence or argument concerning Zurich's *parent's size, financial condition, or net worth* at trial during any stage. To the extent that Fluor seeks to introduce other evidence of ownership to explain events, the Court cannot determine the admissibility of that evidence at this time and will do so as it is presented throughout the trial, but only on advance warning by Fluor at the bench.

**VIII.** **Zurich's Motion in Limine (No. 8) to exclude evidence of other bad faith claims [551].**

Zurich asks the Court to preclude Fluor from referring to, or presenting evidence or argument regarding, other bad faith insurance claims against Zurich, *apart from the claims of Doe Run and Fluor* related to the Herculaneum lead smelter. Zurich argues Fluor should not be allowed to introduce such evidence as is irrelevant, unfairly prejudicial, violates the prohibition against character evidence, and constitutes inadmissible hearsay. In response, Fluor argues Zurich's motion should be denied as premature as Fluor does not intend to present evidence apart from Zurich's bad faith as to Fluor and Doe Run. Fluor asserts although the Court allowed Fluor to take discovery of Zurich's other bad faith cases in Missouri and ten other states over Zurich's objection, Fluor does not intend to present this evidence unless Zurich opens the door to its admission at trial.

The Court will deny Zurich's motion as premature. Should Zurich open the door through its testimony, the relevance and potential prejudicial impact of Fluor's proposed evidence of other bad faith claims will be addressed by the Court outside the presence of the jury to determine its admissibility. Fluor will be precluded, *in limine*, from offering such testimony or other evidence without prior leave of Court.

**IX.** **Zurich's Motion in Limine (No. 9) to preclude evidence of reserves and settlement authority [535].**

Zurich asks the Court to bar Fluor from "referring to, or presenting evidence or argument regarding, the existence or amount of Zurich's financial reserves and settlement authority, whether for substantive or impeachment purposes at trial." Zurich argues its reserves have no relevance to Fluor's claim Zurich acted in bad faith by allegedly failing to settle the

Bronson/Smoger lawsuits. Zurich argues Fluor has not established Zurich's reserves limited its ability to contribute to a settlement. Zurich states the uncontroverted record establishes Zurich's reserves did not factor at all into Doe Run or Fluor's ability to settle the Bronson/Smoger lawsuits, because the expectation and course of practice was for Zurich to contribute funds later. Zurich notes that, irrespective of its reserves, Zurich consented to Doe Run making a $44 million counteroffer.

Zurich also contends evidence regarding Zurich's settlement authority should be excluded as irrelevant and prejudicial. Zurich maintains it is uncontroverted that at no point during the Bronson/Smoger Lawsuits did Zurich's specific settlement authority at a mediation ever play into Doe Run's or Fluor's calculus when negotiating settlements and Zurich contributed to settlements months after agreements were reached between Doe Run and the Bronson/Smoger plaintiffs. Zurich claims an insurer's settlement authority is merely a "subsidiary" matter in a bad faith failure to settle claim, it is not a fact "of consequence in determining the action" and therefore should be excluded as irrelevant under Rule 402.

In response, Fluor argues evidence (i) Zurich did not have adequate reserves and (ii) the Zurich personnel who attended the mediation did not have settlement authority is central to Fluor's bad faith claim. Fluor disputes Zurich's assertion the record is uncontroverted and claims documents from 2010 and Zurich deposition testimony show the lack of reserves and settlement authority was a primary reason Zurich did not contribute to settlement in 2010. Fluor further notes in the Court's order granting sanctions against Zurich, the Court deemed evidence in Bradley Rausa's claims diary regarding the lack of settlement authority "significant and crucial." Fluor argues Zurich's conduct during the critical time period creates a fact issue for the jury to evaluate.

Reserves are an insurer's estimates of potential losses due to claims on its policies."
*Spirco Envtl., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, No. 4:05CV1437 DDN, 2006 U.S. Dist.
LEXIS 61834, 2006 WL 2521618 (E.D. Mo. Aug. 30, 2006) (citing *J.C. Assocs. v. Fid. & Guar.
Ins. Co.*, No. 01-2437 (RJL/JMF), 2003 U.S. Dist. LEXIS 6145, 2003 WL 1889015 at *1
(D.D.C. Apr. 15, 2003)). Settlement authority generally refers to an agent's ability to accept an
offer of settlement that binds the principal up to and including a certain amount of money. *See*
Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 203:7 (1995). Neither the amount of
a reserve or settlement authority necessarily reflects the insurer's valuation of a particular claim.
*Silva v. Basin W., Inc.*, 47 P.3d 1184, 1188–89 (Colo. 2002).

Courts have reached different conclusions as to the relevancy and admissibility of
information regarding an insurer's reserve calculations. Some courts have found that reserve
information might be relevant to whether there was a likelihood of an excess verdict, or whether
the insurer conducted a proper investigation. *See Lipton v. Superior Ct.*, 48 Cal. App. 4th 1599,
1613–14, 56 Cal. Rptr. 2d 341, 349 (1996). The setting of a reserve can also be relevant to
whether an insurer was aware of its responsibility to defend a case. *Samson v. Transamerica Ins.
Co.*, 30 Cal. 3d 220, 240, 636 P.2d 32, 44 (1981). Similarly, the failure of an insurer to offer a
reasonable amount to settle a claim, on a claim of bad faith breach of duty, might be evidenced
by the insurer's setting aside a substantially greater amount of reserve for the claim. *Starr
Indem. & Liab. Co. v. Cont'l Cement Co.*, No. 4:11CV809 JAR, 2012 WL 6012904, at *3 (E.D.
Mo. Dec. 3, 2012). In all these cases, the value of the reserve was deemed relevant to assess the
insurer's conduct at odds with that calculation. Although these circumstances are not present in
this action, they show courts consider evidence of reserves sufficiently relevant to evaluate an
insurer's state of mind.

Here, Fluor alleges Zurich refused to settle on Fluor's behalf because Zurich's management would not increase reserves before the end of 2010, constituting evidence of bad faith. Fluor cites to cited to *Stone v. Allstate Ins. Co.,* No. CIVA 2:00–0059, 2000 WL 35609369, at *3–4 (S.D.W.Va. July 24, 2000), where the district court held, relying upon West Virginia law in a motion *in limine,* that plaintiffs could introduce evidence regarding reserve calculations with respect to their under-insured motorist claims sounding in bad faith, as such evidence "is relevant to show the insurer's state of mind in relation to its claim settlement practices." *Id.* (multiple citations omitted). In the *Stone* case, despite the severity of the injuries, the defendant insurer had failed to set a reserve at the policy limits and did not raise the amount until well after it became clear that the other driver was one hundred percent at fault and the plaintiff-wife was a paraplegic. *Id.* at *4. As a result, the *Stone* court concluded: "evidence of the time of the increase [of the reserve] is relevant circumstantial evidence for a showing of bad faith and is probative." *Id.*

The Court finds evidence that although an interim indemnity increase was recommended prior to the mediation in 2010, it was not authorized by Zurich management. Fluor also offers testimony from Zurich executive Vince Biancamano suggesting a link between Zurich's failure to offer money for the global settlement and the status of the reserves. Therefore, the Court finds this evidence relevant and admissible. The Court has previously stated evidence of Zurich's settlement authority is relevant to Fluor's bad faith failure to settle claim. Thus, although Zurich argues the record is uncontroverted, the Court finds there is a genuine dispute as to whether the failure to increase reserves and the lack of settlement authority played a role in Zurich's decision making at the time of the mediation in 2010. Zurich's motion on this point is denied.

**X.** **Zurich's Motion in Limine (No. 10) to preclude improper witness testimony [536].**

Zurich seeks to exclude Fluor from rendering any opinion testimony from lay witnesses Marc Halpern, Paul Bruno and Ronald Stuff that: (1) subjectively infers Zurich's bad faith state of mind, including Zurich's supposed motivations when communicating with Doe Run and Fluor; (2) offers their own interpretations of Zurich documents they never received; (3) speculates about hypotheticals; or (4) provides legal opinions. Zurich additionally requests the Court enter a limitation against these witnesses' use of inflammatory and pejorative language to describe Zurich's conduct and interactions. Zurich asks the Court to rule *in limine* to exclude these categories of testimony and offers examples of the witnesses' anticipated objectionable testimony.

"Federal Rule of Evidence 403 allows a court to exclude evidence 'if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Howard v. Cassity*, No. 4:09CV01252, 2015 WL 410611, at *3 (E.D. Mo. Jan. 29, 2015) (quoting Fed. R. Evid. 403). "Unfair prejudice means 'an undue tendency to suggest decision is on an improper basis, commonly, though not necessarily an emotional one.'" *U.S. v. Condon*, 720 F.3d 748, 755 (8th Cir. 2013) (quoting *Firemen's Fund Ins. Co. v. Thien*, 63 F.3d 754, 758 (8th Cir. 1995)). Under Rule 602, a lay witness is limited to testifying to matters only "if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602

Federal Rule of Evidence 701 requires lay witness testimony to be rationally based on the witness's perception, helpful to understanding the testimony or determining a fact in issue, and

not based on scientific, technical or other specialized knowledge within the scope of Rule 702. Where the lay opinion proffered necessarily encompasses a legal conclusion, a trial court may very properly conclude that a response would not be helpful to the trier of fact. *United States v. Ness*, 665 F.2d 248, 250 (8th Cir. 1981).

As previously stated by the Court, it will not permit a witness to intimate or speculate Zurich's motive or state of mind as it invades the province of the jury to make such determinations. Nor will the Court permit opinion testimony that includes legal opinion. The Court, therefore, grants Zurich's motion and will bar Fluor *in limine* from presenting the categories of opinion testimony listed above from witnesses Marc Halpern, Paul Bruno and Ronald Stuff. The Court further precludes these witnesses from using inflammatory or pejorative language to describe Zurich's conduct and interactions. The Court has examined in detail the examples of the witnesses' anticipated objectionable testimony offered by Zurich and disputed by Fluor. The Court will list below the examples of potential testimony it finds ***inadmissible*** in accordance with above.

- Marc Halpern's opinion Zurich acted "in bad faith" and "without good faith" as to Doe Run is inadmissible. (Second half of the sentence–Halpern's opinion Zurich should have authorized representatives to commit funding, however, is *admissible*). ECF No. 536 at 4.

- Halpern's testimony Zurich was "trying to make it sound like they were missing information" to "try to excuse" itself "from reasonably participating" in the November 18, 2010 mediation. *Id.* at 4.

- Halpern's opinion Zurich's requests for information were not intended to be "a real request" and were a "charade" *Id.* at 4.

- Halpern's opinion Zurich's follow up requests for information were made to try to "invent its own numbers" for settlement using some "fictitious world" for purposes of deciding the amount of coverage it could offer. *Id.* at 4-5.

- Halpern's interpretations of various internal Zurich communications, notes, and records, including analysis and recommendations provided to Zurich by Zurich's coverage counsel. *Id.* at 5.

- Halpern's opinions that Zurich: "breached its contract with Doe Run"; had "no valid basis" to question that the settlement was reasonable; was legally required to commit the funding allocated by Doe Run to plaintiffs; and was avoiding its "financial obligations" and "coverage obligations" by refusing to commit the 50% funding demanded by Doe Run. *Id.*

- Paul Bruno's testimony he had heard the allegation that Doe Run had taken the position that Zurich had acted in bad faith as to Doe Run. *Id.* at 6.

- Bruno's testimony Zurich's reasons for refusing to fund Doe Run's separate settlement were an "excuse" and that Zurich was not "sincere" in communicating its actual reasons. *Id.*

- Ronald Stuff's testimony his requests to Zurich and Doe Run about what was going on (regarding the separate settlement agreement with the Bronson/Smoger plaintiffs) was met with lies. *Id.*

- Stuff's statement that he concluded Zurich was lying to Fluor during the time period of the crucial mediation and separate settlement being finalized after reviewing documents given to him by outside counsel in the last couple of months prior to his deposition. *Id.* at 6-7.

- Stuff's testimony he believes Zurich "arranged to exhaust a series of policies" that would have "otherwise benefited Fluor" based on his "subsequent review" of documents and emails that he reviewed "after the fact." *Id.* at 7.

## XI. Zurich's Motion in Limine (No. 11) to exclude Zurich's attorneys' recommendations and legal opinions [537].

The Court is withholding its ruling on the above motion at this time. The Court will consider the motion and issue its ruling prior to trial.

## XII. Zurich's Motion in Limine (No. 12) to exclude legal opinions regarding policy limits [538].

The Court is withholding its ruling on the above motion at this time. The Court will consider the motion and issue its ruling prior to trial.

## XIII. Zurich's Motion to Bifurcate Punitive Damages [550].

Zurich asks the Court to bifurcate the punitive damages phase of trial pursuant to Federal Rule of Civil Procedure 42(b). Zurich contends introducing factors the Court would consider in determining whether to award punitive damages during the liability stage of trial would prejudice Zurich's defense and unduly influence the jury. Zurich also argues bifurcation will prevent juror confusion and prevent disclosure of Zurich's confidential financial information until liability has been established. Zurich asserts Fluor will suffer no prejudice with bifurcation as it will not cause undue delay or unnecessary duplicative evidence. Zurich argues it will be more efficient for the jury to engage in an initial phase of trial in which they first decide whether Zurich is liable to Fluor and, if so, what would be an appropriate award of compensatory damages. Zurich then states if the Court determines that a prima facie case exists for punitive damages, the jury can address such damages during a second phase of trial.

Fluor opposes Zurich's Motion to Bifurcate. Fluor argues there is no risk of confusion or prejudice to Zurich if all issues in this bad faith failure to settle action are put to the jury in a single trial. Fluor contends the issue of Zurich's liability for bad faith failure to settle is not separable from the issue of Zurich's liability for punitive damages. Zurich asserts bifurcating would serve no purpose and instead could require duplicative presentation of evidence in both phases of trial. If the Court exercises its discretion to bifurcate, Fluor argues it should not bifurcate the issue of *liability* for punitive damages from the first phase of trial, but only the *amount* of punitive damages.

Federal Rule of Civil Procedure 42(b) authorizes bifurcation of trials "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Courts have recognized that many factors may be relevant to the determination of whether or not to bifurcate proceedings. *See O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1201–02 (8th Cir.1990) ("In exercising discretion, district courts should consider the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion."). In order for a trial to be bifurcated, such that particular issues are tried during each phase of the trial, a Court must find the issues to be "clearly separable." *O'Dell*, 904 F.2d at 1202 (citing *Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537 (8th Cir. 1977)). For issues to be clearly separable, factual determinations should be unique to each phase of the trial and not require reexamination by a second jury or the same jury during a later phase of the trial. *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, No. CIV.4-95-739(DWF/RLE), 2001 WL 228427, at *2 (D. Minn. Feb. 27, 2001), aff'd, 401 F.3d 901 (8th Cir. 2005). The Eighth Circuit Court of Appeals has held "[t]he decision of whether to isolate the punitive damages phase of the

trial is within the sound discretion of the trial court." *Thorne v. Welk Inv., Inc.,* 197 F.3d 1205, 1213–14 (8th Cir.1999).

Zurich's Motion requests bifurcation of "the punitive damages phase of trial." As Zurich makes clear in its Reply, it is asking the Court to bifurcate liability for punitive damages as well as the amount of punitive damages. A punitive damages award requires more than the showing for bad faith. *Shobe v. Kelly,* 279 S.W.3d 203, 212 (Mo. Ct. App. 2009). To obtain punitive damages for its bad faith failure to settle claim, Fluor would be required to prove Zurich's culpable mental state, "either by a wanton, willful or outrageous act, or reckless disregard for an act's consequences (from which evil motive is inferred)." *Johnson v. Allstate Ins. Co.,* 262 S.W.3d 655, 666 (Mo. Ct. App. 2008). By comparison, to establish liability for a bad faith failure to settle claim, an insured must show more than just negligence on the part of an insurer. *See Zumwalt v. Utils. Ins. Co.*, 228 S.W.2d 750, 753 (Mo. 1950). "The evidence must establish that insurer intentionally disregarded the insured's best interests in an effort to escape its full responsibility under the policy." *Rinehart v. Shelter Gen. Ins. Co.*, 261 S.W.3d 583, 595 (Mo. Ct. App. 2008) (citing *Zumwalt*, 228 S.W.2d at 754). Proving liability for punitive damages necessitates a higher burden of proof than the showing required for bad faith to settle, *see Shobe,* 279 S.W.3d at 212, but, to some extent the issues and evidence relevant to both determinations of liability are intertwined. Therefore, while separable, determining liability for punitive damages in a separate phase of the trial may entail some duplication of effort and resources.

Nevertheless, in considering whether to bifurcate liability for punitive damages the Court must weigh the duplication of effort with the risk of prejudice to Zurich. Rule 42(b) authorizes bifurcation to avoid prejudice. Evidence of evil motive along with evidence of Zurich's size, financial condition and net worth, while relevant to determining punitive damages, could have an

adverse effect on jury deliberations concerning liability and compensatory damages.  The Court

finds such evidence should not be presented to the jury during the first phase of the trial on

liability and compensatory damages. In the event the jury awards Fluor compensatory damages

for its bad faith failure to settle claim, the Court will consider punitive damages in the second

phase of trial.  The Court, however, declines Zurich's request to further bifurcate the

determination of *liability* for punitive damages from a determination of the *amount* of punitive

damages, essentially creating three stages of trial.  The Court grants Zurich's motion in part and

denies it in part.

## XIV.   **Fluor's Motion in Limine Number One  [540].**

Fluor asks the Court to exclude evidence and argument that Zurich, by its *conduct*,

waived (a) its exclusive right to settle or to contest the Bronson-Smoger lawsuits and (b) its

policy provisions prohibiting Fluor from making settlement payments without Zurich's consent.

Fluor seeks to establish what evidence is relevant at trial to show the first two elements of bad

faith failure to settle–whether Zurich (1) reserved the exclusive right to contest or to settle the

Bronson/Smoger lawsuits and (2) prohibited Fluor from settling without Zurich's consent.

Specifically, Fluor seeks to *exclude* the following evidence and argument:

- Zurich's reservation of rights under the policies and Fluor's selection of independent

   defense counsel waived Zurich's right to decide whether or not to settle the case.

- Due to Fluor's counsel's running of the day-to-day defense of the cases, Zurich lost its

   right to decide whether to settle and to prohibit voluntary settlement payments.

- Fluor's requirement Zurich include Fluor's coverage lawyers in communications with

   trial counsel voided Zurich's settlement rights.

Fluor argues Zurich's proposed evidence regarding the roles of Fluor's independent counsel and Doe Run vis-à-vis Zurich in the defense of the Bronson-Smoger lawsuits is not relevant to the reservation and prohibition elements of bad faith failure to settle as set forth by the Missouri Supreme Court in *Scottsdale Insurance Co. v. Addison Insurance Co.*, 448 S.W.3d 818 (Mo. 2014). Fluor asserts that Missouri law focuses on the right to decide whether or not to settle – not the day-to-day defense of the case. Further, Fluor suggests the Court's Order mistakenly incorporated into its ruling an overbroad "control" element—i.e. the requirement the "liability insurer has assumed control over negotiation, settlement, and legal proceedings brought against the insured."

In response, Zurich contends assumption of control by the insurer is a necessary element of bad faith failure to settle in Missouri. Zurich notes Fluor has failed to provide the Court with a single case holding that an insurer's conduct in assuming or ceding control of the litigation is irrelevant to bad faith failure to settle. Zurich asserts evidence Fluor did not rely on Zurich to make defense and settlement decisions is relevant and critical to the jury's evaluation of bad faith failure to settle.

In its 9/21/2020 Memorandum and Order, the Court found the trier of fact was permitted to consider the insurer's conduct in evaluating the first two elements of bad faith failure to settle. The Court concluded, after an extensive review of Missouri cases and a careful reading of *Scottsdale*, that a consideration of evidence of actual conduct was not precluded by the Missouri Supreme Court. The Court reiterates its ruling here. In *Scottsdale*, the court articulated the essential elements of a bad faith failure to settle claim. However, after reciting the first two elements, the court did not address the elements any further as the issues before the *Scottsdale* court did not involve control over settlement. The *Scottsdale* court did seek to clarify where

existing confusion existed in the lower courts over the tort's elements. Concluding the Missouri Court of Appeals had incorrectly articulated the elements of bad faith in several cases to include a demand to settle by the insured, the *Scottsdale* Court explained a demand for settlement was not a necessary element of the tort. However, although numerous cases predating *Scottsdale* considered the insurer's conduct in assuming control of the litigation in evaluating the elements of the tort, the supreme court did not suggest lower courts' analysis was in error. Fluor has not provided the Court with authority for its interpretation of *Scottsdale*—that conduct is irrelevant to the first two elements of bad faith failure to settle, and the policy language alone is relevant to their determination.

Moreover, the *Scottsdale* court did not address the formulation of the first two elements under the circumstances where an insurer is defending pursuant to a reservation of rights. When an insurer defends pursuant to a reservation of rights, necessitating the hiring of independent counsel, and both covered and uncovered claims are present in the lawsuit, cooperation is required between the insured and insurer in effectuating settlement. A determination of whether the insurer exercised its reserved rights under the policy to control the negotiation and settlement of third-party claims is necessarily more complex and challenging under these circumstances. Moreover, a determination of bad faith is inherently factual, rendering the ability to determine its existence as a matter of law elusive. *Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W. 3d 64, 95 (Mo. Ct. App. Feb. 15, 2005).

While concluding both the insurer's conduct and the policies' language could be considered in determining the first two elements, the Court's 9/21/2020 Order also rejected Zurich's argument that certain conduct–defending under a reservation of rights and hiring independent defense counsel–established an insurer's lack of control over settlement. Upon

further reflection, the Court finds its ruling should have been more explicit and restrictive in anticipation of use of this evidence at trial. The Court agrees with Fluor that *Scottsdale* focuses on the right to settle, not the day to day defense of a claim, particularly under the circumstances where, as here, an insurer is defending pursuant to a reservation of rights. A defense under a reservation of rights, entailing the hiring of independent defense counsel and diminishing the insurer's direct role in the litigation, should not permit an insurer to evade liability for bad faith failure to settle. Therefore, the Court will not allow argument by Zurich that its reservation of rights and the selection of independent defense counsel establishes waiver of Zurich's right to settle claims or prohibit voluntary settlement payments by Fluor. Nor will the Court permit Zurich to argue that the day-to-day defense of the Bronson/Smoger cases waived Zurich's policy rights. The Court, however, while precluding argument, cannot exclude evidence of Zurich's reservation of rights or the role of the independent defense counsel. This would leave gaping holes in the evidence presented. Any potential prejudice can be alleviated with proper instruction to the jury that Zurich's reservation of rights defense and the hiring of independent defense counsel did not waive Zurich's right to settle the Bronson/Smoger suits or prohibit voluntary settlement payments by Fluor. The Court will grant Fluor's motion in part and deny it in part.

### XV.    Fluor's Motion in Limine Number Two [541].

Fluor asserts evidence and argument Zurich had a routine practice of waiving the provision in its insurance policies prohibiting insureds from voluntarily making settlement payments without Zurich's consent should be excluded because it is inadmissible under Federal Rule of Evidence 406 and otherwise lacks foundation. Fluor states Rule 406 requires Zurich to establish "a history of doing" what it claims to be routine and Zurich cannot meet this burden as

it cannot establish it had a general corporate practice of releasing policyholders from the no-voluntary-payment prohibition as part of settlement negotiations.

In response, Zurich states it is not introducing evidence of its "routine practice" of waiving the voluntary payments provision under Rule 406. Because Zurich is not trying to show it "acted in accordance with the habit or routine practice" as to Fluor in November 2010, Zurich contends Rule 406 does not apply. Zurich argues evidence of the parties' course of dealing is relevant and admissible under Federal Rule of Evidence 402.

Evidence of the parties' course of conduct regarding the Policies' voluntary payment provision in the settlement of the Herculaneum suits is relevant and admissible under Rule 402. A determination of bad faith requires consideration of the insurer's state of mind. The parties' prior course of conduct in the settlement of related Herculaneum lawsuits subject to the same Policies is relevant to Zurich and Fluor's state of mind in the negotiation and settlement of the Bronson/Smoger claims in 2010. Although Fluor argues this evidence is inadmissible under Rule 406, Rule 406 applies only where evidence is offered to show conduct, the provision does not apply to evidence offered to prove a mental state or to show parties' intent regarding the meaning of language in their contract. *See* Wright and Miller, 23 Fed. Prac. & Proc. Evid. § 5275 (2d ed. 2021). The Court denies Fluor's motion.

### XVI.  **Fluor's Motion in Limine Number Three [542].**

Fluor asks the Court to exclude evidence and argument related to coverage defenses other than the issue Zurich raised to Fluor and Doe Run in 2010: whether each plaintiff in the underlying lawsuit was born (or conceived) during the policy period. Fluor asserts Zurich did not raise any other coverage defenses as a reason to limit its contribution to the proposed global

settlement in 2010. Fluor argues all other coverage arguments and evidence will only mislead the jury and should be excluded under Federal Rule of Evidence 403.

In response, Zurich asserts that prior to and during 2010, Zurich raised several coverage positions, not limited to the argument that there was no coverage for plaintiffs born or conceived outside the policy period. Specifically, Zurich states its reservation-of-rights letters included additional reserved coverage positions raised by Zurich before Zurich's alleged refusal to settle in 2010 and factored into Zurich's decision-making. Zurich contends the Court should deny Fluor's motion as these reserved coverage positions are relevant to Zurich's state of mind, and any potential bad faith, as of 2010.

Several of the Court's previous orders have addressed the issue of the relevancy of coverage to Fluor's bad faith failure to settle claim. In its Sept. 30, 2019 Order, the Court dismissed as unripe Zurich's first three claims seeking a declaration that the Zurich Policies do not provide coverage for the Herculaneum lawsuits. In that same Order, the Court also granted summary judgment against Zurich with respect to Zurich's indemnity-related affirmative defenses. ECF No. 322 at 8-18. In dismissing Zurich's indemnity arguments, the Court found the bad faith failure to settle claim at issue "does not require Fluor to establish a right to indemnity coverage," and under Missouri law "a determination on coverage here, after Zurich's alleged bad faith occurred, is irrelevant to and cannot defeat Fluor's [bad faith failure to settle] claim." ECF No. 322 at 11, 17.

The Court later found that Zurich had a duty to defend Fluor that was triggered "when it was faced with what Zurich itself characterized in its reservation of rights letters as 'potentially implicated claims.'" ECF No. 481 at 46. Because Zurich never sought to withdraw from defending Fluor or to extinguish its defense obligation via a judicial declaration, the Court

concluded "Zurich's duty to defend Fluor continued until the resolution of the [Herculaneum] lawsuits." ECF No. 481 at 46. The Court found any resolution of the question of coverage in this action would not retroactively eliminate Zurich's duty to defend Fluor. *Id.* at 46-47.

In accordance with these rulings, in its February 18, 2021 Order addressing the parties Daubert motions, the Court excluded Zurich's expert Allan Windt's proposed testimony as to reasons Zurich could have reasonably believed the Bronson Smoger lawsuits were not covered under the Zurich Policies. The Court stated post hoc coverage determinations and hypothetical rationales for Zurich's alleged bad faith conduct were not only unhelpful but may serve to confuse the jury. However, the Court clarified that what Zurich determined and communicated about coverage in 2010 was relevant to determining whether Zurich acted in bad faith. The Court explained:

> Bad faith is a state of mind–indicated by acts and circumstances, which would include the insurer's position on coverage at the time of a settlement opportunity. So, the Court . . . will not bar testimony concerning non-coverage where it is grounded in facts and circumstances relevant to Zurich's state of mind in 2010.

ECF No. 504 at 21.

Although Zurich argues its numerous reserved coverage defenses in its reservation of rights letters were relevant to its state of mind in 2010, the Court finds no evidence (other than non-coverage for plaintiffs born and conceived outside policy periods) that these coverage defenses were specifically relied upon, communicated or determined in 2010 with regard to the settlement opportunity. The Court further finds any marginal relevance and probative value of these additional reserved coverage defenses is outweighed by the potential danger of unfair

prejudice, confusing the issues, misleading the jury and wasting time under Federal Rule of Evidence 403.[6]  The Court will therefore grant Fluor's Motion in Limine Number Three.

## XVII.   Fluor's Motion in Limine Number Four [543].

Fluor moves to exclude evidence and argument regarding details from the 2011 *Alexander* trial[7] and other Bronson-Smoger lawsuits.  Fluor concedes the jury will have to understand something about the allegations in the Bronson-Smoger lawsuits but argues details about pollution allegedly caused by the smelter and the plaintiffs' personal interests and specific injuries are not relevant to the claims in this case. Fluor asks that the evidence be limited to the general statement that the Bronson-Smoger suits involved bodily injury and property damage allegations caused by exposure to lead from the Doe Run lead smelter.  Fluor asserts further

---

[6] Zurich argues it should be permitted to put on evidence of its reserved coverage positions during trial in accordance with *Advantage Buildings & Exteriors, Inc. v. Mid-Continent Casualty Co.*, 449 S.W.3d 16 (Mo. Ct. App. 2014). Zurich asserts that the insurer in *Advantage* was allowed to put on evidence at trial of its own coverage defenses. In *Advantage*, the circuit court did permit the insurer to present evidence of its belief about coverage at trial. *Id*. at 27. However, this belief was not merely a potential coverage defense enumerated in a reservation of rights letter. A closer reading of *Advantage* reveals the insurer had concluded long before a failed mediation attempt that the insured faced a multi-million-dollar exposure–of which the insurer determined only $50,000 was covered by insurance. *Id.* at 24. The insurer conducted its coverage analysis nine months prior to mediation but did not advise its insured of its determinations until five days after the mediation and four days before trial of the matter. *Id.* at 26.  The *Advantage* court's admission at trial of evidence of the insurer's coverage belief is consistent with this Court's reasoning above.  In *Advantage*, the insurer's coverage determination was relevant to its state of mind at the time the insurer's alleged bad faith conduct occurred.  The insurer's documented beliefs about coverage limited the insurer's contribution at mediation and prompted the insurer's subsequent decision to withdraw from the insured's defense before trial.  Thus, the insurer's belief about coverage was also highly relevant and probative as to whether the insurer acted in bad faith.

[7] "*Alexander*" refers to the following lawsuits that were consolidated for trial in 2011: *Alexander, et al. v. Fluor Corp., et al.*, *Pedersen, et al.  v.  Fluor Corp., et al.*, and *Heilig, et al. v. Fluor Corp., et al*.

elaboration on this evidence would be hearsay, irrelevant, cumulative, and highly prejudicial to Fluor.

In its response in opposition, Zurich contends Fluor seeks to exclude relevant evidence necessary to adjudicate bad faith failure to settle. Zurich argues Fluor's conduct and strategic decisions (i.e. its commitment to go to trial) are essential to the jury's understanding and evaluation of Zurich's conduct. Zurich asserts the cases that went to trial in *Alexander* and the appeal in *Blanks* constitute relevant evidence of Fluor's strategic corporate decisions. Zurich further claims Fluor's conduct in the *Alexander* trial is directly relevant to causation and damages. [8]

The Court cannot broadly conclude details of the *Alexander* trial and Bronson/Smoger lawsuits (beyond Fluor's suggested general description) are irrelevant to the determination of the

---

[8] As a threshold argument, Zurich asserts Fluor should be judicially estopped from seeking exclusion of the judicial opinions in the *Alexander* case and the *Blanks* appeal. Zurich notes in the *Fluor Corporation v. Doe Run Resources Corporation et al* action in Jefferson County, Fluor successfully resisted a motion by Doe Run to bar Fluor from using the *Blanks* opinion and the *Alexander* trial materials. Having obtained such a result, Zurich argues Fluor should be judicially estopped from obtaining the opposite result here. In the prior proceeding, Fluor sought to introduce materials from the *Alexander* trial and the *Blanks* opinion in support of its motion for summary judgment. Doe Run sought to strike the use of these materials, arguing 1) their use violated an agreement between the parties and 2) Fluor should not be permitted to use the *Blanks* opinion as res judicata or to collaterally estop Doe Run from making any claims and argument in the Jefferson County action. The doctrine of judicial estoppel "protects the integrity of the judicial process." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006). A court invokes judicial estoppel when a party abuses the judicial forum or process by making a knowing misrepresentation to the court or perpetrating a fraud on the court. *Id.* Therefore, a party that takes a certain position in a legal proceeding, and succeeds in maintaining that position," is prohibited from thereafter assuming a contrary position "simply because his interests have changed. *Id.* Because Fluor successfully opposed Zurich's arguments to strike *Alexander* materials and the *Blanks* opinion in the *Fluor v. Doe Run* action, Zurich argues Fluor should be judicially estopped from seeking to exclude those materials here. The Court disagrees as Fluor's position here, that the *Alexander* materials and *Blanks* opinion are irrelevant and prejudicial hearsay is different from, but not inconsistent with, Fluor's previous opposition to Zurich's arguments that the materials were barred by an agreement and being improperly used as res judicata.

claims at issue here. Because the Bronson Smoger cases involved covered and uncovered plaintiffs, cooperation between the insurer and insured in effectuating settlement was required. An understanding of the parties' interactions and Fluor's conduct is necessary to evaluate Zurich's state of mind and determine whether it acted in bad faith. Therefore, Fluor's strategic decision making with regard to settlement opportunities and the possibility of trial (and the circumstances essential to understanding Fluor's decisions) are relevant to the jury's bad faith failure to settle determination. Details of the *Alexander* trial and other Bronson/Smoger cases *may* be relevant to understanding Fluor's strategic decision making and conduct at crucial times. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

However, it is unclear to the Court at this time exactly what evidence will be introduced by Zurich and the purpose of this evidence. Fluor has failed to identify the specific evidence to which it objects. and failed to demonstrate such evidence is not relevant. Thus, the Court cannot make a blanket determination as to relevancy of this potential evidence, nor can it weigh its prejudice to Fluor. The Court will determine the admissibility of the evidence throughout the course of the trial as each piece of evidence is presented, but only on advance warning by Zurich at the bench.

Fluor also argues the 2014 judicial opinion in *Blanks v. Fluor Corp.*, 450 S.W.3d 308 (Mo. Ct. App. 2014), is inadmissible hearsay and highly prejudicial. Fluor asks the Court to prohibit Zurich from introducing or quoting from this judicial opinion. In response, Zurich contends court judgments, rulings, and findings of fact are not hearsay if offered to prove their "operative legal effect" or "effect on the hearer," a "non-truth related purpose." Zurich contends

there are "innumerable" details from the *Alexander* litigation and the *Blanks* appeal that constitute both legally operative rulings and statements that affected the parties (as "listener") in their conduct and decisions, and so are not hearsay.

Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). A court's prior judgment or ruling is inadmissible hearsay if it is offered to prove the truth of the matter asserted in the judgment or ruling. *See* Fed. R. Evid. 801(c); *UnitedHealth Grp. Inc. v. Exec. Risk Specialty Ins. Co.*, 870 F.3d 856, 864 (8th Cir. 2017); *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004). To the extent the *Alexander* or *Blanks* courts' judgments, rulings, or findings of fact are offered for the truth of the matter asserted, this Court will exclude it.

However, judicial rulings that are offered for a different non-hearsay purpose, such as to show effect on the listener, are admissible. *UnitedHealth Grp. Inc.*, 870 F.3d at 864; *Boulware*, 384 F.3d at 806; *see United States v. Wright*, 739 F.3d 1160, 1170 (8th Cir. 2014). Similarly, a prior judgment is not hearsay where it is offered to show its legally operative effect determining the rights and duties of the parties. *Boulware*, 384 F.3d at 806. If Zurich or Fluor seek to offer a judicial ruling from *Alexander* or *Blanks* as evidence, it must establish it is being offered for a non-hearsay purpose relevant to the claims at issue here by first approaching the bench to make a record. Zurich asserts there are innumerable details from the *Alexander* litigation and *Blanks* appeal that are not hearsay. The Court declines a blanket ruling and will address arguments as to admissibility at trial. The Court notes establishing the *Blanks* opinion is non-hearsay, as the opinion had an effect on its listener Fluor, will be difficult as the opinion was handed down by the Missouri Court of Appeals in 2014, long after much of the alleged bad faith conduct at issue here occurred. Nevertheless, in the event details of *Alexander* and *Blanks* are determined to be

admissible non-hearsay during trial, at that time the Court will further balance the relevancy of the evidence under Federal Evidence Rule 402 with its potential prejudice under Rule 403. Fluor's motion on this point is granted in part and denied in part.

## XVIII.    Fluor's Motion in Limine Number Five [544].

Fluor moves the Court for an order excluding evidence and argument Zurich relied on the advice of counsel in handling Fluor's claims.  Specifically, Fluor seeks to exclude evidence Zurich's executives relied on advice of counsel when they withheld from Fluor details of Doe Run's separate settlement at the November 18, 2010 mediation and information from Zurich's 2012 settlement with Doe Run.   Fluor argues Zurich should be estopped from asserting it relied on advice of counsel because it repeatedly disclaimed any reliance on this defense in discovery. Fluor also contends Zurich's failure to plead advice of counsel as an affirmative defense forecloses its assertion of the defense later in the litigation.

The Court finds both of Fluor's arguments without merit.  The principle of estoppel declares that a party who makes a representation that misleads another person, who then reasonably relies on that representation to his detriment, may not deny that representation." *Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 659 (8th Cir. 1992).  Although Fluor offers evidence Zurich made representations during discovery that it would not argue advice of counsel, Fluor fails to show how it relied on these representations to its detriment. The record reflects Fluor has been long aware of Zurich's assertion it relied on the advice of its counsel in keeping confidential the details of Doe Run's 2010 global settlement with the Bronson/Smoger plaintiffs. Fluor has had ample opportunity to obtain discovery with regard to Zurich's assertions. Moreover, Fluor itself relies on evidence of advice imparted to Zurich by Zurich's counsel regarding its reserves, etc., to establish Zurich acted in bad faith.

The Court similarly finds that Zurich's failure to plead advice of counsel as an affirmative defense does not foreclose introduction of evidence and argument at trial. Fluor provides no Missouri authority for its proposition that advice of counsel constitutes an affirmative defense to a bad faith failure to settle claim. "Rule 8(c) of the Federal Rules of Civil Procedures governs affirmative defenses. The term 'affirmative defense' is defined as '[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's ... claim, even if all allegations in the complaint are true.'" *PNC Bank, Nat. Ass'n v. El Tovar, Inc.,* No. 4:13–CV–1073 CAS, 2014 WL 538810, at *7–8 (E.D. Mo. Feb. 11, 2014) (quoting Black's Law Dictionary 430 (7th ed.1999)). "Affirmative defenses, if accepted by the court, will defeat an otherwise legitimate claim for relief." *Id.* (quoting 2 James Wm. Moore, et al., *Moore's Federal Practice* § 8.08[1] (3d ed. 2013).

While relevant to the reasonableness of Zurich's conduct, the Court does not find Zurich's reliance on the advice of counsel would serve as a valid affirmative defense to Fluor's bad faith failure to settle claim. An advice of counsel defense alone would not allow Zurich to escape liability and defeat Fluor's bad faith failure to settle allegations as is required under Rule 8(c). *See Jamison v. Depositors Ins. Co.,* No. 4:14-CV-3009, 2016 WL 4443873, at *1–2 (D. Neb. Aug. 22, 2016); *Penn v. Nat'l Interstate Ins. Co.,* No. CV 12-18-BU-DLC-CSO, 2013 WL 1089864, at *7 (D. Mont. Jan. 4, 2013); *Graske v. Auto-Owners Ins. Co.,* 647 F. Supp. 2d 1105, 1110 (D. Neb. 2009). Thus, Zurich was not required to plead advice of counsel as an affirmative defense and any its failure to do so cannot serve as a basis for the exclusion of evidence and argument. Fluor's motion is denied.

### XIX.   Fluor's Motion in Limine Number Six [546].

Fluor asserts Zurich should be precluded from admitting evidence and pleadings governed by the stipulated protective order in *Fluor Corp. et al. v. The Doe Run Resources Corp., et al., No. 12-JE-CC-00090*, (the "Jefferson County action"). Fluor correctly notes on December 13, 2019, this Court ruled that confidential materials and sealed pleadings from the Jefferson County action, which have not independently been produced here, cannot be used in this case (or any other litigation) because of the protective order in place. Fluor argues there is no legitimate basis for Zurich to use materials governed by the Jefferson County protective order. Fluor contends if Zurich utilizes these materials at trial, Fluor would be prejudiced in responding, because it cannot disclose protected information from the Jefferson County Action. Fluor contends Zurich has previously sought to reveal documents governed by the protective order in the litigation.

In response, Zurich states none of the documents Zurich seeks to use is under seal or subject to the protective order in the Jefferson County action. To dispel Fluor's contention Zurich has previously sought to introduce protected documents, Zurich states every document from the Jefferson County action previously used by Zurich is a public document, filed in court and maintained by that court in its publicly accessible file. To further establish the admissibility of these publicly available documents, Zurich argues Fluor's pleadings (in particular, Fluor's statements of fact in its petition and motion for summary judgment) in the Jefferson County action are statements of a party, admissible against Fluor under Rule 801(d)(2).

In the Court's 12/13/2019 Order, it found the deposition transcripts/exhibits of Doe Run representatives and counsel in the Jefferson County action were governed by the protective order in that case and their production could not be compelled by Zurich. Similarly, here, the Court

precludes Zurich from offering materials and documents governed by the Jefferson County action's protective Order as evidence at trial.[9]   Fluor's motion on this point is granted.

Fluor also seeks exclusion of publicly available documents in the Jefferson County action that have been redacted in accordance with the protective order. Fluor suggests an issue may arise if Zurich offers these redacted documents or pleadings from the Jefferson County action, which Fluor claims cannot be understood fully without revealing the redacted portions of the materials. Fluor also seems to anticipate it will be prejudiced by the admission of these redacted documents as Zurich has previously implied (during a July 19, 2019 hearing, and during depositions of Gerson Smoger and Andy Rothschild) there was something improper or nefarious in the redacted portions of these documents.  Fluor argues the partially redacted publicly available Jefferson County action documents "should be excluded altogether" at trial.

The Court does not find an adequate basis for exclusion in Fluor's argument.  The Court has reviewed the exhibits submitted to establish Zurich's alleged intimations of impropriety with regard to the redacted portions but fails to find Zurich's argument or questioning referencing the redactions prejudicial.  Nor can the Court conclude confusion requiring exclusion would result from the admission of the redacted documents.  Fluor may certainly raise specific objections at trial, but the Court declines to issue a blanket exclusion on that basis at this time.  Fluor's motion on this point will be denied.

---

[9] Zurich's response in opposition notes Zurich has previously made use of one ruling by the Jefferson County Court, which was publicly filed without redactions.  Zurich contends its use of this document was not challenged in Fluor's motion *in limine*.  Fluor's motion here seeks exclusion based upon the protective order in the Jefferson County action or the presence of redactions in the public documents in that action, not on the basis of hearsay.  As such, the Court's ruling herein, while it does not deem a publicly-filed judicial ruling from the Jefferson County action subject to exclusion (as it is not subject to the operative protective order), should not be construed as sanctioning such a document's admissibility at trial regardless of hearsay objections.

## XX.    **Fluor's Motion in Limine Number Seven [547].**

Fluor requests the Court enter an order excluding evidence and argument regarding Zurich's claims that (a) Zurich's policies were exhausted by its 2012 settlement payment to Doe Run and (b) Zurich has a right to recoup previously paid defense costs.  Fluor asserts this order would have the effect of barring evidence and argument supporting Zurich's Fourth and Fifth Causes of Action and its Twenty-Eighth and Thirty-Sixth Affirmative Defenses, which Fluor also moves to dismiss as moot and unripe pursuant to Federal Rule of Civil Procedure 12(b)(1). Fluor argues this Court's 2019 and 2020 Orders granting Fluor's motions to dismiss and for summary judgment rejected the basis for Zurich's remaining Fourth and Fifth Causes of Action as well as its Twenty-Eighth and Thirty-Sixth Affirmative Defenses.  Because there is no longer a live dispute with respect to these claims, Fluor contends any evidence in support of them is legally irrelevant and must be excluded to avoid the risk of juror confusion.

In response, Zurich contends the Court's rulings did not apply to the *Howze* and *Lingo*[10] cases, for which Fluor seeks damages from Zurich for unpaid defense costs in Fluor's first cause of action for breach of the duty to defend.  Zurich states the *Howze* and *Lingo* claims were tendered by Fluor and rejected by Zurich in 2013 on the basis that the Zurich Policies had been exhausted.  Zurich contends, therefore, that evidence of policy exhaustion in Zurich's Fourth Cause of Action is relevant to Fluor's claim to recover defense costs for *Howze* and *Lingo* and the declaration sought by Zurich in its Fourth Cause of Action–that its policies were exhausted by its 2012 settlement payment to Doe Run–is not moot as argued by Fluor.

---

[10] *Howze, et al. v. Fluor et al.*, 23rd Judicial Circuit Court, Jefferson County, Missouri, Cause No. 12JE-CC000153 and *Lingo, et al. v. Fluor Corporation*, et al., 21st Judicial Circuit Court, St. Louis County, Missouri, Case No. 12SL-CC04853.

Zurich's first three causes of action were dismissed by the Court's Orders on September 30, 2019 and September 21, 2020. Zurich has two remaining claims in this action: its Fourth and Fifth Causes of Action. Zurich's Fourth Cause of Action seeks a judicial determination the Zurich Policies were exhausted by virtue of the Global Settlement with regard to the Herculaneum Claims and the personal injury coverage in the Zurich Policies. ECF No. 1 at 11.[11] Zurich's Fifth Cause of Action is a claim for recoupment of defense costs against Fluor. Specifically, Zurich states in its Counterclaim: "To the extent there is no coverage for Fluor under the Zurich Policies, Zurich is entitled to indemnity and /or contribution from Fluor for those defense fees and costs paid by Zurich for Fluor's defense in the Herculaneum Claims." *Id.*

Zurich's dismissed first three causes of action each sought a declaration Fluor was not entitled to a defense or indemnity under the Zurich Policies.[12] On September 30, 2019, the Court partially dismissed Zurich's first three claims insofar as they concerned the duty to indemnify, and granted Fluor summary judgment with respect to Zurich's First, Sixth, Seventh, and Eighteenth Affirmative Defenses related to indemnity. The Court determined Zurich's duty to indemnify was not properly before the Court because the claims were not ripe for adjudication as Fluor had not sought indemnity from Zurich. The Court granted summary judgment on the indemnity portions of the claims. Only the portions of the first three claims seeking a declaration with respect to Fluor's right to a defense under the Policies remained. However, on September

---

[11] Zurich's Fourth Cause of Action sought a Declaration against both Fluor and Hartford. Zurich's claim against Hartford was dismissed as unripe on November 1, 2019.

[12] The First Cause of Action sought a declaration the Policies did not provide coverage for the defense and/or indemnity of the *Alexander/Pedersen/Heilig* litigation. The Second Cause of Action sought a declaration Fluor was not entitled to defense and/or indemnity under the Zurich Policies for the Herculaneum Claims based upon the reservations of rights asserted by Zurich. The Third Cause of Action sought a declaration Fluor had no right to defense and/or indemnification from Zurich for the Herculaneum Claims because it is not an insured under the Zurich Policies.

21, 2020, the Court granted summary judgment against Zurich with respect to the remainder of Zurich's First, Second, and Third Causes of Action.

In its September 21, 2020 Order, the Court noted Zurich's duty to defend was activated when it agreed to defend Fluor's tendered Herculaneum claims pursuant to a reservation of rights. In proffering a reservation of rights defense, Zurich considered a portion of the tendered claims as potentially covered under its Policies and reserved the right to withdraw from its agreement to defend Fluor or to seek to extinguish its defense obligation by obtaining a judicial declaration if it becomes apparent that there was no potential for coverage. As Zurich did not exercise its reserved rights "to withdraw" from defending Fluor or "to extinguish" its defense obligation, the Court found Zurich's duty to defend continued until the resolution of the lawsuits. Therefore, the Court found the declarations sought by Zurich that it had no duty to defend (based upon coverage, its reservation of fights or Fluor's status as an insured) failed as a matter of law. The Court concluded it could not provide retrospective relief and nullify Zurich's duty to defend.

Zurich's Fourth Cause of Action seeks a determination the Zurich Policies were exhausted by virtue of the Global Settlement. In accordance with its prior Orders, a determination on exhaustion here will not retroactively eliminate Zurich's duty to defend the Bronson/Smoger cases it agreed to defend pursuant to a reservation of rights. Moreover, a determination the Policies were exhausted by Zurich's global settlement payments to Doe Run in March 2012 is irrelevant to Fluor's claim for bad faith failure to settle based on conduct and policy limits in 2010.

Zurich, however, alleges in its response in opposition that exhaustion is relevant to a claim unaddressed by the Court–Fluor's First Cause of Action for Breach of the Duty to Defend. Zurich argues exhaustion is relevant to this claim as Fluor alleges Zurich improperly failed to

reimburse Fluor for defense costs of *Lingo* and *Houze*, two underlying actions Zurich refused to defend after they were tendered in 2013. Fluor alleges in its Counterclaim Zurich relied on "exhaustion" as its basis for refusing to accept the defense of *Lingo* and *Houze*. Zurich's Duty to defend in *Lingo* and *Howze* was not at issue in Zurich's first three causes of action. Therefore, the Court's summary judgment ruling on Zurich's duty to defend does not extend to *Lingo* and *Howze*. Zurich's defense to Fluor's claim for the defense costs of *Lingo* and *Howze* relies on the rationale it proffered at the time in refusing the defenses of these two cases–exhaustion.

Therefore, the Court cannot conclude Zurich's Fourth Cause of Action seeking a declaration on exhaustion has been rendered moot by the Court's prior rulings. Fluor's request to exclude evidence and argument with respect to Zurich's claims that its Policies were exhausted by its 2012 settlement payment to Doe Run, as well as Fluor's 12(b)(1) motion to dismiss the Fourth Cause of Action will be denied. Based upon this same rationale, the Court will also deny Fluor's request to dismiss Zurich's Twenty-Eighth and Thirty-Sixth Affirmative Defenses concerning exhaustion.[13] Based upon Zurich's representations in its Response, however, the Court concludes Zurich has narrowed the scope of the declaration sought in its fourth cause of action to the *Howze* and *Lingo* cases.

Zurich's Fifth Cause of Action is a claim for recoupment of defense costs against Fluor. Fluor argues the Court's prior rulings as well as Missouri law justify exclusion of evidence related to this claim as well as its dismissal. In its previous September 21, 2020 Order, the Court concluded the potential for coverage existed when Zurich undertook defense of the Herculaneum

---

[13] Zurich's Twenty-Eighth Affirmative Defense states "Zurich is not liable to the extent the Zurich Policies have been exhausted through payment of their respective policy limits." ECF No. 46 at 10. Zurich's Thirty-Sixth Affirmative Defense states "Zurich's obligations, if any, to an insured are defined by the . . . Zurich Policies . . . and any such coverage obligations cease upon the exhaustion of the applicable limits of coverage." *Id.* at 12.

claims pursuant to a reservation of rights, giving rise to Zurich's duty to defend. The Court further concluded as Zurich never exercised its reserved right to withdraw or sought to extinguish its duty to defend, its duty to defend persisted until the resolution of the suits. Under Missouri law, any resolution of the question of coverage only relieves the defending insurer of its duty to defend going forward and will not retroactively eliminate the insurer's duty to defend the insured. *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919, 923-24 (8th Cir. 1998). In *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919, 924 (8th Cir. 1998), the Eighth Circuit, applying Missouri law, concluded the insurer Liberty remained obligated to defend its insured so long as there remained any question as to whether the underlying claims were covered by the policies. Because the court determined the insurer Liberty had a duty to defend its insured until such determination was made, it rejected Liberty's argument that it was entitled to reimbursement of defense costs. *Id.* Based upon the holding in *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, the court may not retroactively eliminate Zurich's duty to defend and Zurich's claim for recoupment of defense costs therefore fails as a matter of law. Fluor's motion to dismiss Zurich's Fifth Cause of Action is granted and evidence and argument regarding recoupment will be excluded at trial.

### XXI. Fluor's Motion in Limine Number Eight [548].

Fluor asserts evidence and argument related to Fluor's financial condition should be excluded as it is irrelevant and unduly prejudicial under Rules 401, 402, and 403. Fluor contends Zurich will seek to present evidence of Fluor's financial condition to argue Fluor was large and affluent enough to bear the costs of settlement. In response, Zurich acknowledges it anticipates presenting two categories of limited evidence of Fluor's financial condition. Zurich states this evidence is directly relevant to Zurich's defense of Fluor's bad faith failure to settle (BFFS)

claim. Zurich argues introduction of this limited evidence would not be unfairly prejudicial under Rule 403, because it is based on Fluor's own statements about its actions.

First, Zurich contends certain statements of Fluor's in-house lawyer Ronald Stuff should be admitted. Zurich states in response to being asked if "anyone at Fluor [had] responsibility for keeping track of impairment to insurance policies that covered Fluor," Mr. Stuff stated:

> I cannot tell you today that there was an individual who was responsible for all insurance policies for Fluor Corporation, which did billions of dollars of work worldwide. I—I don't know if there was such a person or who it would be. We had an insurance group that was responsible for -- for procuring insurance both corporately and for individual projects. But there were hundreds of projects, if not thousands, and, you know, billions of dollars of corporate risk that needed to be insured.

ECF No 574-1 at 2. Zurich explains Stuff's statements will be offered to show a) Fluor cannot prove Zurich refused to settle any claims within policy limits as Fluor did not keep track of the Zurich policy limits; and b) why Fluor was ignorant of Zurich's policies limits and could not have made a demand for settlement within them.

Second, Zurich contends Fluor's financial condition in 2011 also is relevant to how Fluor approached settlement opportunities and why it chose to try the *Alexander/Pedersen/Heilig* cases rather than settling them. Zurich argues Fluor's willingness and ability to pay an adverse verdict in the *Alexander/Pedersen/Heilig* trial, should be allowed into evidence to show Fluor did not want to settle these claims.

With respect to the statements of Mr. Stuff, the substance of the testimony quoted by Zurich indicates Mr. Stuff was unaware whether there was a single individual at Fluor whose responsibility it was to keep track of ***all*** the insurance policies and their applicable policy limits. Mr. Stuff's testimony implies the unlikelihood of this proposed scenario as Fluor did billions of dollars of work and had a group to procure insurance corporately and for projects (that could number in the thousands and represented billions of dollars of risk). Whether one person alone

was in charge of monitoring *all policy* limits has only the most attenuated relevance as to whether Fluor kept track of the *Zurich* policy limits at issue here, which in turn influenced whether Fluor demanded settlement. The Court finds this marginal probative value outweighed by the danger of unfair prejudice to Fluor of the references to Fluor's financial condition.  The Court will exclude Zurich's proposed evidence of Fluor's size and affluence.

The Court finds unpersuasive Zurich's contention Fluor's financial condition was a relevant factor in Fluor's willingness to go to trial with regard to the *Alexander/Pedersen/Heilig* litigation.  Zurich has not established evidence Fluor actually considered and weighed its ability to pay an adverse verdict in its decision making.  Any probative value this could have is far outweighed by the prejudicial effect of presenting Fluor's financial condition before the jury. Fluor's motion is granted.

Accordingly,

**IT IS HEREBY ORDERED** Defendant Zurich American Insurance Company's Motion in Limine (No. 1) to exclude argument that Fluor demanded Zurich settle the Bronson Smoger cases [528] is **GRANTED**.

**IT IS FURTHER ORDERED** Zurich's Motion in Limine (No. 2) to preclude argument or evidence that it owed a duty to settle claims of uncovered plaintiffs [529]is **DENIED as moot**.

**IT IS FURTHER ORDERED** Zurich's Motion in Limine (No. 3) to preclude argument or evidence that Plaintiffs' $ 60 million settlement offer remained open [530] is **DENIED**.

**IT IS FURTHER ORDERED** Zurich's Motion in Limine (No. 4) to preclude reference or argument that Zurich should have told Fluor the Doe Run Settlement number [531] is **GRANTED.**

**IT IS FURTHER ORDERED** Zurich's Motion in Limine (No. 5) to exclude reference to discovery disputes and discovery sanctions [532] is **GRANTED.**

**IT IS FURTHER ORDERED** Zurich's Motion in Limine (No. 6) to preclude evidence of its reinsurance [533] is **GRANTED**.

**IT IS FURTHER ORDERED** Zurich's Motion in Limine (No. 7) to preclude evidence of its size, ownership, financial condition, and net worth [534] is **GRANTED, in part, and DENIED, in part.**

**IT IS FURTHER ORDERED** Zurich's Motion in Limine (No. 8) to exclude evidence of other bad faith claims [551] is **DENIED** as premature.

**IT IS FURTHER ORDERED** Zurich's Motion in Limine (No. 9) to preclude evidence of reserves and settlement authority [535] is **DENIED.**

**IT IS FURTHER ORDERED** Zurich's Motion in Limine (No. 10) to preclude improper witness testimony [536] is **GRANTED.**

**IT IS FURTHER ORDERED** Zurich's Motion to Bifurcate Punitive Damages [550] is **GRANTED, in part, and DENIED, in part.**

**IT IS FURTHER ORDERED** Fluor Corporation's Motion in Limine Number One [540] is **GRANTED in part, and DENIED, in part**.

**IT IS FURTHER ORDERED** Fluor's Motion in Limine Number Two [541] is **DENIED**.

**IT IS FURTHER ORDERED** Fluor's Motion in Limine Number Three [542] is **GRANTED**.

**IT IS FURTHER ORDERED** Fluor's Motion in Limine Number Four [543] is **GRANTED in part, and DENIED, in part**.

**IT IS FURTHER ORDERED** Fluor's Motion in Limine Number Five [544] is **DENIED**.

**IT IS FURTHER ORDERED** Fluor's Motion in Limine Number Six [546] is **GRANTED in part, and DENIED, in part**.

**IT IS FURTHER ORDERED** Fluor's Motion in Limine Number Seven [547] is **GRANTED in part, and DENIED, in part**.

**IT IS FURTHER ORDERED** Fluor's Motion in Limine Number Eight [548] is **GRANTED**.

So Ordered this 16th day of July, 2021.

_____

**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**