**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| FLUOR CORPORATION, | Case No. 4:16-CV-00429 HEA |
| Plaintiff, | |
| vs. | Hon. Henry E. Autrey |
| ZURICH AMERICAN INSURANCE COMPANY, | **REDACTED – PUBLICLY AVAILABLE** |
| Defendant. | |

**FLUOR CORPORATION'S MEMORANDUM**
**IN SUPPORT OF MOTION FOR A NEW TRIAL**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    LEGAL STANDARD...........................................................................................2

III.   ARGUMENT.......................................................................................................2

     A.    The Flawed Emphasis On "Control" Tainted Multiple Aspects Of The Trial................................................................................................2

     B.    A New Trial Is Warranted Because Zurich's Closing Misled The Jury .................8

          1.    Zurich Misled The Jury On The First Element............................................8

          2.    Zurich Misled The Jury On The Second Element ....................................11

          3.    Zurich Misled The Jury On The Third Element .......................................14

          4.    Collectively, Zurich's Misleading Arguments Were Clearly Injurious ..................................................................................17

     C.    A New Trial Is Warranted Because Improper Evidence Was Admitted And Erroneous Instructions Were Given As To Zurich's Reservation Of Rights ..................................................................................17

     D.    A New Trial Is Warranted Because The Jury's Verdict Was Against The Weight Of The Evidence ................................................................19

     E.    A New Trial Is Warranted Because Evidence Of Zurich's Bad Faith Was Erroneously Excluded..................................................................23

IV.   CONCLUSION.................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Adams v. Fuqua Indus., Inc.*,
820 F.2d 271 (8th Cir. 1987) ...................................................................................... 23

*Advantage Bldgs. & Exteriors, Inc. v. Mid-Continent Cas. Co.*,
449 S.W.3d 16 (Mo. Ct. App. 2014) ...................................................................... 12, 16

*Bamford Inc. v. Regent Ins. Co.*,
822 F.3d 403 (8th Cir. 2016) ...................................................................................... 25

*Bank of Am., N.A. v. JB Hanna, LLC*,
766 F.3d 841 (8th Cir. 2014) ................................................................................. 19, 20

*Blair v. Wills*,
420 F.3d 823 (8th Cir. 2005) ...................................................................................... 17

*Brown v. State Farm Mut. Auto. Ins. Co.*,
776 S.W.2d 384 (Mo. banc 1989) ................................................................................. 5

*Cox v. Dubuque Bank & Tr. Co.*,
163 F.3d 492 (8th Cir. 1998) ................................................................................. 18, 19

*Curtis Park Grp., LLC v. Allied World Specialty Ins. Co.*,
124 F.4th 826 (10th Cir. 2024) ..................................................................................... 6

*Gray v. Bicknell*,
86 F.3d 1472 (8th Cir. 1996) ........................................................................................ 2

*Gruca v. Alpha Therapeutic Corp.*,
51 F.3d 638 (7th Cir. 1995) ..................................................................... 8, 11, 12, 16

*Howard v. Cassity*,
No. 4:09CV01252 ERW, 2015 WL 410611 (E.D. Mo. Jan. 29, 2015) ................................. 7

*Johnson v. Allstate Ins. Co.*,
262 S.W.3d 655 (Mo. Ct. App. 2008) ..................................................................... passim

*Landie v. Century Indem. Co.*,
390 S.W.2d 558 (Mo. Ct. App. 1965) ......................................................................... 12

*Major Brands, Inc. v. Mast-Jägermeister US, Inc.*,
121 F.4th 661 (8th Cir. 2024) .............................................................................. 2, 8, 17

*Med. Protective Co. v. Bubenik*,
No. 4:06CV01639 ERW, 2008 WL 2132100 (E.D. Mo. May 20, 2008) .............................. 24

*Morrissey v. Welsh Co.*,
821 F.2d 1294 (8th Cir. 1987) ...................................................................................... 17

*Pearce v. Cornerstone Clinic for Women*,
938 F.2d 855 (8th Cir. 1991) ...................................................................................... 2, 8

*Peterson v. City of Plymouth*,
60 F.3d 469 (8th Cir. 1995) ................................................................................ 2, 8, 17, 18

*Purscell v. Tico Ins. Co.*,
790 F.3d 842 (8th Cir. 2015) ...................................................................................... 23

*Scottsdale Ins. Co. v. Addison Ins. Co.*,
448 S.W.3d 818 (Mo. banc 2014)............................................................................... passim

*Seeck v. Geico Gen. Ins. Co.*,
212 S.W.3d 129 (Mo. banc 2007)................................................................................ 4

*Shobe v. Kelly*,
279 S.W.3d 203 (Mo. Ct. App. 2009)...................................................... 3, 12, 14, 15

*State ex rel. Key Ins. Co. v. Roldan*,
587 S.W.3d 638 (Mo. banc 2019)................................................................................ 4

*Vaidyanathan v. Seagate US LLC*,
691 F.3d 972 (8th Cir. 2012) ...................................................................................... 8

*Valadez v. Watkins Motor Lines, Inc.*,
758 F.3d 975 (8th Cir. 2014) ................................................................................ 11, 17

*White v. Pence*,
961 F.2d 776 (8th Cir. 1992) ...................................................................................... 19

*Whittenburg v. Werner Enters.*,
561 F.3d 1122 (10th Cir. 2009) .................................................................................. 11

*Zumwalt v. Utils. Ins. Co.*,
228 S.W.2d 750 (Mo. 1950) ........................................................................................ 15

**RULES**

Fed. R. Civ. P. 59(a)(1)(A) ............................................................................................ 2

## I.    INTRODUCTION

The jury verdict in this case was based upon foundational misrepresentations of Missouri law.  The plain language of the parties' insurance policies and Defendant Zurich American Insurance Company's reservation of rights letters gave Zurich the exclusive right to ███████ ██████████████████ arising from the Bronson-Smoger litigation, Ex. 1 (P-0002) at .0012, and made clear that coverage was ████████ for settlements that violated Plaintiff Fluor Corporation's ████████████████████ ██████████ without Zurich's approval, Ex. 2 (P-0019B) at .0004; Ex. 3 (P-0500A) at .0005.  Based on its own financial interests, Zurich deviated from its established precedent by preordaining that it would offer *no* money toward a global settlement at the mediation on November 18, 2010, regardless of whether it was in Fluor's best interests to do so.  At trial, Zurich never meaningfully disputed these critical facts, which alone establish the tort of bad faith refusal to settle ("BFRS").

Instead, having come within a hair's breadth of losing the first trial only months ago, Zurich pivoted to a new strategy:  It invented new *legal* requirements that it insisted Fluor could not satisfy.  Specifically, Zurich claimed that it could not be liable unless Fluor was able to establish that (1) Zurich exercised "day to day control" over the litigation, (2) Fluor had affirmatively expressed "willingness" to make voluntary payments to settle, and (3) Zurich had prevented Fluor from making such a voluntary payment by rejecting a specific demand.  Zurich then claimed that, even if Fluor proved all of this, and even if Zurich breached its fiduciary duties of candor or loyalty, Zurich would *still* not be liable unless those breaches were "intentional[] or reckless[]."  Dkt. 1195 (Tr. Vol. 11A) at 80:5-6.

These requirements have no basis in Missouri law, and resulted in a trial that was fundamentally unfair.  The first two elements of the BFRS tort should never have been submitted

1

to the jury in the first place.  But, if they were, there needed to be careful guardrails establishing how evidence regarding those elements was to be evaluated, along with strict limitations on witnesses and counsel making statements that misrepresented the law.  None of that occurred. Instead, Zurich time and again pushed and repeatedly breached the boundaries of this Court's orders, and made legally incorrect statements that prejudiced Fluor in front of the jury.  Zurich's plainly illegitimate strategy cannot be ratified.  Any one of these errors requires a new trial, and, collectively, these errors make clear that the verdict cannot stand.  This Court should order a new trial.

## II.    LEGAL STANDARD

The district court may grant a new trial on all or some issues "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  A new trial is appropriate when "legal errors at trial" or a "verdict against the weight of the evidence" "result[] in a miscarriage of justice."  *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996).  Legal errors that warrant a new trial include the erroneous admission or exclusion of evidence, erroneous jury instructions, and improper closing argument.  *See Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (evidentiary error); *Major Brands, Inc. v. Mast-Jägermeister US, Inc.*, 121 F.4th 661, 669-70 (8th Cir. 2024) (instructional error); *Pearce v. Cornerstone Clinic for Women*, 938 F.2d 855, 859 (8th Cir. 1991) (improper closing argument).

## III.    ARGUMENT

### A.    The Flawed Emphasis On "Control" Tainted Multiple Aspects Of The Trial

The first two elements of Fluor's claim are whether "(a) Zurich reserved the exclusive right to contest or settle any claim against Fluor" and "(b) Zurich prohibited Fluor from voluntarily assuming any liability or settling any claims without Zurich's consent."  Dkt. 1173 at 18 (Instruction No. 14).  Two interrelated errors as to these elements undermine the jury's verdict.

2

*First*, these elements are questions of law that the jury should not have been asked to resolve in the first place because they turned on the interpretation of unambiguous insurance policies and reservation of rights letters. In denying summary judgment in Fluor's favor on these two elements, Judge Webber held that the Court would "consider not only the Policies' provisions, but also Zurich's conduct in controlling the Bronson/Smoger litigation and settlement." Dkt. 481 at 23. According to that ruling, "evidence" that Doe Run led settlement negotiations and that Fluor had independent counsel "creat[ed] a genuine issue of material fact" as to whether the first two elements were satisfied. *Id*. at 24-25. Although the Court rejected Zurich's position that it could be liable only if it had "*total, exclusive* control" over the litigation, it did not explain what degree of "control" Fluor was required to establish (or otherwise explain how this "control" factor could be satisfied). *Id*. at 33.

That holding fundamentally misapplied Missouri law, and required the jury to resolve questions of law that should have been reserved for the Court. The first two elements of BFRS do not turn on whether an insurer exercises total, exclusive, day-to-day, or any other type of "control" over litigation. *See, e.g.*, *Shobe v. Kelly*, 279 S.W.3d 203, 211 (Mo. Ct. App. 2009) (rejecting position that BFRS liability must "be premised on procedural steps—the assumption of control of legal proceedings by the insurer, the making of a demand by the insured—which are not likely to occur where the insurer completely rejects its fiduciary duties"). Rather, they depend on whether the insurer *reserved the rights* to settle the case and legally prohibit the insured from making voluntary payments to effectuate such a settlement.

Here, the text of the insurance policies and reservation of rights letters conclusively determine whether Zurich "reserved" each relevant "right." "An insurer's duty to act in good faith in settling third-party claims arises from the insurer's reservation *in the policy* of the exclusive right to contest and settle third-party claims." *Scottsdale Ins. Co. v. Addison Ins. Co.*, 448 S.W.3d

3

818, 829-30 (Mo. banc 2014) (emphasis added).  Accordingly, the inquiry properly focuses on whether "*the policy* . . . issued to [the policyholder] grants [the insurer] the exclusive right to contest or settle any claim" and whether "*the policy* prohibits [the policyholder] from voluntarily assuming any liability or settling any claims without [the insured's] consent."  *State ex rel. Key Ins. Co. v. Roldan*, 587 S.W.3d 638, 642 (Mo. banc 2019) (emphasis added).  The interpretation of the policies and reservation of rights letters is a "question of law" for the Court, not the jury. *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007).

In this case, the unequivocal language of the policies and reservation of rights letters resolves the first two elements.  The policies give Zurich the right to ██████████ ████████████████ and impose a duty of cooperation that requires Fluor to ████████ ██████████████ Ex. 1 at .0003, .0012.  The reservation of rights letters made clear that Zurich reserved the right to pay ████████████████████████ ████████████████████████████████ and then ████████████ from Fluor, and warned that coverage would be ████████████████████ Ex. 2 at .0003, .0005; Ex. 3 at .0004, .0007.  This language by itself establishes the first element of BFRS because it gives the insurer the power to settle any claim against the insured.

With respect to the right to prohibit the voluntary assumption of liability, the policies provide that Fluor, the insured, ████████████████████████████ ██████████████████████ Ex. 1 at .0003 (emphasis added).  The reservation of rights letters reiterate this prohibition, stating that coverage is ████████████ ████████████████████████████ including ████████████████████ ████████████████ Ex. 2 at .0004; Ex. 3 at .0005.

Thus, far from being free to voluntarily assume liability, an insured who tries to settle without the

4

insurer's approval would sacrifice its coverage and risk a suit for breach of its policy obligations. Because Zurich expressly invoked these policy rights in reservation of rights letters, the first two elements of BFRS are satisfied, regardless of whether Zurich also exercised day-to-day control over the litigation or settlement negotiations.

The only circumstance in which "control" could even theoretically be relevant to the first two elements is if an insurer purported, through its conduct, to waive its policy rights reserved in reservation of rights letters. Here, however, there was no triable issue of fact regarding any waiver. In general, an insurer can only waive a right by "either (1) an express waiver by the insurer or (2) conduct which clearly and unequivocally shows a purpose by the insurer to relinquish a contractual right." *Brown v. State Farm Mut. Auto. Ins. Co.*, 776 S.W.2d 384, 388 (Mo. banc 1989). But Zurich's insurance policies eliminated the second path by stating that ███████████

███████████████████████████████████████████

██████ Ex. 1 at .0004. Thus, it was contractually *impossible* for Zurich to have waived its rights via "conduct." The only way Zurich could have waived its rights to contest or settle and to prohibit Fluor from settling without Zurich's consent was via a written endorsement, which it did not make.

Nevertheless, Zurich exploited Judge Webber's erroneous summary judgment ruling for all it was worth. Zurich presented the jury with evidence and wrongly argued that because of Zurich's purported lack of "control," Zurich did not have the very settlement rights it contracted for and expressly reserved. Dkt. 1187 (Tr. Vol. 7A) at 51:12-16 ("[B]ecause [Zurich was] defending under a reservation of rights, Doe Run and Fluor were the ones that were controlling the litigation . . . ."); *see infra* at 17-19 (improper testimony regarding reservation of rights letters erroneously admitted). For example, Zurich's Assistant Vice President and Director of Pollution Claims, Dawn Hiestand, told the jury that when an insurer defends with a reservation of rights, the rights to settle a claim and to prohibit the insured from making voluntary payments *do not apply*.

5

Dkt. 1187 (Tr. Vol. 7A) at 49:23-50:2 ("Q: Was it your testimony that the rights and obligations that are discussed in Plaintiff's 258 have no application here because Zurich is defending this case with—not without—but with a reservation of rights? A: Yes.").  Rather, Hiestand testified that when a reservation of rights letter is sent, it indicates the existence of "coverage" is unclear and therefore the "insured"—not the insurer—"controls the cases." *Id*. at 77:4-9, 78:12-15.

In sum, the jury was not only asked to answer a legal question of contract interpretation, but, in doing so, was permitted to consider evidence that nullified the plain meaning of the contract's terms.  The "misconceptions about the governing law" regarding the first two elements thus had "cascading prejudicial effects throughout the trial."  *Curtis Park Grp., LLC v. Allied World Specialty Ins. Co.*, 124 F.4th 826, 838 (10th Cir. 2024).

*Second*, even if control were "relevant" to the first two elements of BFRS, the jury received no guidance about the legal significance of "control"—a concept that, on its face, "has nothing whatsoever to do with" "the elements of bad faith [refusal] to settle" that appeared in the instructions.  Dkt. 1178 (Tr. Vol. 2A) at 4:18-25.  In other words, the jury received no guidance as to *how* to evaluate "control," or what level of "control" Fluor needed to prove.  Permitting the presentation of "control" evidence without any guardrails as to its proper consideration was error.

Before trial, Fluor moved in limine to exclude argument and evidence that Fluor's use of independent counsel to handle the day-to-day defense of the litigation affected Zurich's settlement rights and duties.  Dkt. 680 at 26.  Judge Webber ruled that Zurich was prohibited from arguing that "its reservation of rights and the selection of independent defense counsel establish[] waiver of Zurich's right to settle claims or prohibit voluntary settlement payments by Fluor."  *Id*. at 29.  He further held that Zurich could not "argue that the day-to-day defense of the Bronson/Smoger cases waived Zurich's policy rights."  *Id*.  But, at the same time, Judge Webber erroneously permitted the jury to consider evidence of "whether the insurer *exercised* its reserved rights under

6

the policy to control the negotiation and settlement of third-party claims," including "cooperation . . . between the insured and insurer in effectuating a settlement." *Id*. at 28 (emphasis added).

The "exercise" of policy rights, however, is not a fact question for lay jurors. It turns on whether an insurer invokes those rights in the first instance or expressly waives them in clear and unambiguous terms. *Supra* at 3-6. Missouri law does not allow for the confusing middle ground Judge Webber created. It is therefore unsurprising that Judge Webber could not square his holding that Zurich's "cooperation" and "control" were somehow relevant with his conclusion that the "reservation of rights," "the selection of independent defense counsel," and "day-to-day defense" do not "establish[] waiver" of Zurich's policy rights. Dkt. 680 at 28-29. By failing to resolve this conflict, Judge Webber effectively made the insurer's "control" and "cooperation" an element of the BFRS tort that Zurich repeatedly used to confuse the jury. Even if there had been a legitimate dispute regarding Zurich's settlement rights and obligations, the motion in limine ruling should have clarified the specific conduct, if any, relevant to determining whether Zurich waived its policy rights. Judge Webber's failure to do so only compounded the error.

Allowing Zurich to introduce evidence and argument that it did not have the policy rights required to satisfy the first two elements was plainly prejudicial because it was a focus of the trial. The jury heard extensive testimony about Fluor's day-to-day control, giving the impression that this evidence was material to its decision. *E.g.*, Dkt. 1187 (Tr. Vol 7A) at 94:3-97:11 (overruling objection to testimony about "independent counsel . . . defending these lawsuits"); *see Howard v. Cassity*, No. 4:09CV01252 ERW, 2015 WL 410611, at \*6 (E.D. Mo. Jan. 29, 2015) ("Introducing evidence of a trustee's conduct before becoming trustee will only confuse the jury as to what actions the defendants may be liable."). After this testimony about control was admitted without instructions cabining the jury's consideration of it, Zurich encouraged the jury to resolve the case based on day-to-day control, which Zurich contended was relevant to, or even dispositive of, the

7

first two elements.  Dkt. 1195 (Tr. Vol. 11A) at 57:14-19, 70:16-18.  This error therefore "substantially influenced the jury's verdict" by leading "the jury to focus on the wrong question." *Peterson*, 60 F.3d at 475.

As the Eighth Circuit has explained, "misstat[ing] Missouri law" with respect to an issue "[t]he parties spent significant time at trial addressing" can have "a probable effect on [the] jury's verdict."  *Major Brands*, 121 F.4th at 670 (quoting *Vaidyanathan v. Seagate US LLC*, 691 F.3d 972, 978 (8th Cir. 2012)).  That is exactly what happened here.

**B.      A New Trial Is Warranted Because Zurich's Closing Misled The Jury**

An improper closing argument requires a new trial when counsel makes "plainly unwarranted" and "clearly injurious" statements.  *Pearce*, 938 F.2d at 859.  Zurich's closing made the most unwarranted and injurious statements possible: those that misled the jury on questions of law.  Specifically, over Fluor's objection, Zurich invented legal requirements that dramatically heightened Fluor's burden on the first three elements of Fluor's claim.  When a court overrules an objection to misstatements of law in a closing argument, that "misstatement of the law" "bec[o]me[s] a statement of the district court."  *Gruca v. Alpha Therapeutic Corp.*, 51 F.3d 638, 645 (7th Cir. 1995).  Because Zurich's mischaracterizations of essential elements of Fluor's claim were not corrected by the Court, the jury's "mistaken view of the law could have directly resulted in the jury's verdict in favor of" Zurich.  *Id.* at 646.  In a case where the parties largely agreed on the underlying facts—but hotly disputed the legal significance of those facts—misstating the law in this manner was critical to the result.

**1.      Zurich Misled The Jury On The First Element**

During closing argument, Zurich repeatedly argued to the jury that Zurich's day-to-day control functioned as a free-standing element of Fluor's claim.  These improper and prejudicial statements require a new trial.

8

As noted, Judge Webber deemed facts about day-to-day control "relevant" to evaluating BFRS. Dkt. 680 at 28. But Judge Webber precluded Zurich from using control over the "day-to-day defense" to resolve whether Zurich had the exclusive right to settle a claim. *Id*. at 29. The motion in limine ruling specifically forbade Zurich from arguing "that its reservation of rights and the selection of independent defense counsel establish[] waiver of Zurich's right to settle claims or prohibit voluntary settlement payments by Fluor"; it also barred any argument "that the day-to-day defense of the Bronson/Smoger cases waived Zurich's policy rights." *Id.* Although these circumstances might "diminish[] the insurer's direct role in the litigation," they "should not permit an insurer to evade liability for" BFRS. *Id.* If the law were otherwise, "every insurer defending under a reservation of rights would escape liability for [BFRS]." Dkt. 481 at 33. In line with Judge Webber's rulings, Judge Autrey instructed the jury that "[t]he hiring of independent defense counsel to conduct the day-to-day defense of the Bronson-Smoger lawsuits did not affect Zurich's rights under the insurance policies." Dkt. 1173 at 19 (Instruction No. 15).

Zurich openly flouted these restrictions. Zurich ignored the bar on arguing that Fluor's independent counsel vitiated Zurich's policy rights, insisting that an insurer only has an obligation not to "refuse a settlement in bad faith" if the insurer "takes control" and its "own lawyers try the case." Dkt. 1195 (Tr. Vol. 11A) at 56:14-15, 19-20. Throughout the closing, Zurich doubled down on this characterization: "When Zurich takes control over a case . . . Zurich's lawyers defend the case . . . then they decide whether or not to settle the case or to go to trial." *Id*. at 56:25-57:7; *id*. at 65:13-16 (where "Zurich has its lawyer take the case," "Zurich controls th[e] case," "Zurich's lawyers decide whether or not to take it to trial," and the insured "get[s] no voice"). These statements in closing echoed the testimony that Zurich elicited from Hiestand, that "Doe Run and Fluor with their counsel" "decided whether cases were contested or settled." Dkt. 1187 (Tr. Vol. 7A) at 94:18-19. Zurich's improper closing argument about day-to-day control undermined this

9

Court's rulings forbidding Zurich from eliciting such improper testimony about control during trial. *See* Dkt. 1183 (Tr. Vol. 4B) at 54:21-55:4 (sustaining objection); Dkt. 1185 (Tr. Vol. 6A) at 93:23-95:13 (same); Dkt. 1188 (Tr. Vol. 7B) at 6:20-25, 11:20-12:17 (same).

Zurich also misled the jury about the relationship between "control" and settlement authority. Zurich asserted that because the underlying litigation involved both covered and uncovered plaintiffs, Zurich could not have exercised settlement authority, because Fluor would need to pay to settle the uncovered claims. Dkt. 1195 (Tr. Vol. 11A) at 65:4-12; *id.* at 65:13-24 (when some plaintiffs are "not covered" by an insurance policy, the insured "ha[s] the risk" and "get[s] to decide"); *id.* at 63:19-64:6, 73:6-10. That assertion was grossly misleading.[1] Zurich's own reservation of rights expressly invoked its exclusive right to pay ██████████████ ███████████████████████████████████████████████████████ Ex. 2 at .0005 (emphasis added); Ex. 3 at .0007 (same). Put another way, that certain plaintiffs were purportedly "uncovered" was wholly irrelevant to whether Zurich had the right or ability to settle the lawsuit in its entirety. As a matter of law, "Zurich had a duty to defend Fluor against the claims arising from Herculaneum, including the Bronson-Smoger lawsuits," Dkt. 1173 at 21 (Instruction No. 17), and this "duty to defend" created an "obligation to act in good faith" regardless of "whether the Zurich insurance policies covered all or part of the Bronson-Smoger lawsuits," *id.* at 23 (Instruction No. 19). Zurich fundamentally mischaracterized this framework by arguing that

---

[1] This assertion was also wrong as a matter of fact. Doe Run had already agreed to pay for uncovered plaintiffs. Zurich's contribution would have closed the gap between Doe Run's offer and the amount needed to accomplish a global settlement. *E.g.*, Dkt. 1189 (Tr. Vol. 8A) at 16:14-17:19 (Dowd testifying that "if 5 to $6 million had been contributed by Zurich, the deal could have been done"); Dkt. 1169-4 (Halpern Dep.) at 149:06-150:02 ("[I]f Zurich had come with a meaningful amount of financial participation, then the deal would have gotten done for everyone."); Dkt. 1169-5 (Rothschild Dep.) at 252:22-253:04 ("[I]f a meaningful amount of money had been put on the table by Fluor and its insurer a deal could have been done . . . .").

10

the presence of "uncovered" plaintiffs meant that Zurich bore no responsibility for the global settlement, and that it could not have exercised "control" over the litigation.

Prejudice is easily satisfied here. This argument was the central thrust of Zurich's closing; such "overemphasi[s]" on "an improper argument" creates the "requisite prejudice" warranting a new trial. *Whittenburg v. Werner Enters.*, 561 F.3d 1122, 1131 (10th Cir. 2009); *see also Valadez v. Watkins Motor Lines, Inc.*, 758 F.3d 975, 982 (8th Cir. 2014) ("emphasis of" improper "evidence in [the] closing" was "troubl[ing]"). When Fluor requested a sidebar or objected, the Court let Zurich "[p]roceed" with its legally improper closing arguments. Dkt. 1195 (Tr. Vol. 11A) at 57:20-21; *id.* at 69:5-8. By allowing Zurich's mischaracterizations to stand uncorrected, the Court effectively "adopt[ed]" its "misstatements of the law." *Gruca*, 51 F.3d at 645.

### 2.     Zurich Misled The Jury On The Second Element

Zurich also egregiously misled the jury with respect to the second element of Fluor's BFRS claim. The jury instructions stated that the second element required Fluor to show that "Zurich prohibited Fluor from voluntarily assuming any liability or settling any claims without Zurich's consent." Dkt. 1173 at 18 (Instruction No. 14); *see Scottsdale*, 448 S.W.3d at 827. In its closing argument, Zurich purported to explain this instruction by inventing two distinct legal requirements that Fluor supposedly had to prove in order to satisfy this element. *First*, Zurich claimed that Fluor had to show that it "was willing to pay [and] assume a liability to settle the case." Dkt. 1195 (Tr. Vol. 11A) at 69:1-4. *Second*, Zurich claimed that Fluor additionally had to prove that "Zurich prohibited" Fluor from "settl[ing]" the case when Fluor otherwise would have. *Id.* Zurich even used a slide to display these two requirements—in effect, creating alternative jury instructions under this element. Ex. 4 (Zurich Closing Slides) at 18, 22, 37 █████████████

████████████████████████████████

█████████████   Fluor immediately objected that Zurich's two-part test "isn't an element."

Dkt. 1195 (Tr. Vol. 11A) at 69:5-6.  By overruling that objection, this Court permitted Zurich's "misstatement[] of the law" to "bec[o]me a statement of the district court" as to the elements governing Fluor's claim.  *Gruca*, 51 F.3d at 645.  The result was that Zurich's closing presented the jury with a supplementary instruction on the second element that directly contravened settled Missouri law and this Court's earlier rulings.

*First*, there is no requirement that an insured affirmatively demonstrate ██████████ ████████████████████████████████████  Ex. 4 at 37.  Zurich cited no authority for this requirement.  Nor could it.  Missouri law simply requires that an insured lacks the legal ability to settle a case without the insurer's approval—not that the insured make some affirmative statement or action indicating a "willingness" to settle without their insurer's approval (which would be in breach of its policy).  Indeed, numerous Missouri cases have found that an insurer acted in bad faith even when there was no effort by the insured to voluntarily pursue settlement.  *See, e.g.*, *Landie v. Century Indem. Co.*, 390 S.W.2d 558, 563 (Mo. Ct. App. 1965) (insured demanded that insurer settle for $15,000 without expressing willingness to pay); *Johnson v. Allstate Ins. Co.*, 262 S.W.3d 655, 665 (Mo. Ct. App. 2008) (insurer failed to advise insured of demand, so insured could not demand settlement or express willingness to pay); *Advantage Bldgs. & Exteriors, Inc. v. Mid-Continent Cas. Co.*, 449 S.W.3d 16, 25-26 (Mo. Ct. App. 2014) (insured demanded that insurer settle but did not express willingness to pay); *Shobe*, 279 S.W.3d at 211-12 (insurer did not consult with insured before rejecting settlement within policy limits).

That makes good sense, because once an insurer assumes its duty to defend—which triggers its exclusive contractual authority to settle—there is no reason why an insured would (or even could) make independent efforts to settle a case outside of the insurance framework.  Indeed, as here, it is often the case that an insured would not even *know* the details of a potential opportunity to settle.  Yet under Zurich's flawed theory, an insurer's failure to settle—even for

12

bad-faith reasons—cannot give rise to liability unless the insured can first prove that it was "willing" to accept a settlement it knew nothing about.  Put differently, so long as an insurer keeps the insured in the dark, the insurer faces no liability.  That is not the law.  *See Johnson*, 262 S.W.3d at 662 ("[C]ircumstances indicating an insurer's bad faith include not advising an insured of . . . the existence of settlement offers.").

Zurich's mis-instruction was plainly prejudicial.  The jury was squarely told that unless Fluor could prove that it was willing to accept a particular settlement offer (even one it did not know existed), Zurich could not be liable.  Indeed, Zurich made this point time and again during closing, claiming that because Fluor "was not going to pay to settle," "[t]hat's the end of this element," Dkt. 1195 (Tr. Vol. 11A) at 69:10-70:21, and that Fluor "never asked [Zurich] can we settle," *id.* at 58:9-10.  But whether Fluor was willing to risk breaching its policy obligations and forfeiting its insurance coverage has no bearing whatsoever on whether Zurich, as Fluor's insurer and fiduciary, was obligated to settle on Fluor's behalf.  Zurich's narrative that Fluor "controlled [its] own fate" was based on a false legal premise that infected the jury's determination.  *Id.* at 58:16.  That alone warrants a new trial.

*Second*, Zurich then layered one invented requirement upon another by claiming that Fluor must also prove that Zurich took some affirmative action—beyond repeatedly invoking its policy rights and warning Fluor that any failure to abide by its obligations could forfeit coverage—to "prohibit[]" Fluor from making a particular voluntary payment or assuming a particular liability to settle the case.  No such requirement exists.  Indeed, this Court prohibited Zurich from "suggesting that" an insured's settlement "demand is required to prove [BFRS], or that the absence of a demand is 'highly relevant' to that claim." Dkt. 994 at 1.  It did so because in *Scottsdale*, the Supreme Court of Missouri foreclosed this fictional demand requirement, unequivocally stating that it "has never required the insured to make a demand for settlement" as a prerequisite to a

13

BFRS claim.  448 S.W.3d at 827 n.5.  In other words, an insured can assert a BFRS claim without ever making a demand on the insurer, so long as the insurer acts in bad faith with respect to a settlement opportunity.  But if that is so, then there necessarily cannot be any requirement that an insurer *reject* a specific demand to settle from the insured.  Yet Zurich again and again told the jury that it could not be liable without such a "demand."  *See, e.g.*, Dkt. 1195 (Tr. Vol. 11A) at 76:19-21 ("This is just an offer, and *that's not a refusal of a demand* to pay from Doe Run or Fluor, which was never made.") (emphasis added); *id.* at 79:13-14 ("There was *no demand from Fluor* for Zurich to settle to refuse.") (emphasis added).  In its closing, Zurich ran roughshod over this Court's pretrial ruling, and openly misrepresented Missouri law.

Putting these two invented requirements together, Zurich erected a false legal foundation for its case.  In essence, it argued to the jury that even when an insured is legally barred from voluntary settlement, a BFRS tort still cannot lie unless an insured makes a specific attempt to voluntarily settle a case *and* the insurer then makes some statement or takes some action that prevents that voluntary settlement.  No Missouri case has ever required a plaintiff to prove such an elaborate counterfactual proposition.  *See, e.g.*, *Shobe*, 279 S.W.3d at 211-12.

### 3.    Zurich Misled The Jury On The Third Element

Zurich also misled the jury about the requirements for establishing bad faith.  Zurich argued that under a bad faith standard, it had to ███████████████████████████████ Ex. 4 at 46; Dkt. 1195 (Tr. Vol. 11A) at 80:5-6 (bad faith is "did [Zurich] intentionally or recklessly disregard Fluor's interests").  This was wrong in two key respects.  *First*, it misstated the jury instructions' definition of "bad faith," which included Zurich "indifferent[ly]" or "arbitrar[ily]" disregarding Fluor's financial interests.  *See* Dkt. 1173 at 20 (Instruction No. 16).  *Second*, Zurich doubled down on its misrepresentation about what is necessary to prove bad faith by mischaracterizing the Court's related jury instruction regarding Zurich's fiduciary duties.  *See* Dkt.

14

1173 at 22 (Instruction No. 18) ("If you find that Zurich breached its fiduciary duty to Fluor, you can find that Zurich acted in bad faith."). According to Zurich, whether it "violated its fiduciary duty" by "put[ting] its own interests above that of its insured" might be "relevant" to "bad faith" but would not compel a "verdict . . . for Fluor," Dkt. 1195 (Tr. Vol. 11A) at 80:10-14. Put another way, Zurich's version of the bad-faith element requires a showing of intent to harm Fluor or recklessness as to Fluor *in addition to* a showing of a breach of fiduciary duty.

These interrelated misrepresentations of Missouri law wrongly heightened Fluor's burden. The BFRS tort exists "to deter insurance companies from failing to fulfill fiduciary duties to their insureds." *Shobe*, 279 S.W.3d at 211. Thus, an insurer's violation of its fiduciary duty is not just "relevant to" bad faith, Dkt. 1195 (Tr. Vol. 11A) at 56:3-4—it *is* bad faith. As the Supreme Court of Missouri explained when recognizing the BFRS tort, an insurer engages in bad faith by failing to "*sacrifice its interests in favor of*" the insured when their "interest[s] conflicted." *Zumwalt v. Utils. Ins. Co.*, 228 S.W.2d 750, 756 (Mo. 1950). Just as this Court's jury instruction did, Missouri law equates bad faith with a breach of the duty of loyalty, *i.e.*, a principal's failure "to protect and prioritize the interests of its beneficiary" and "place its beneficiary's interests above its own interests." Dkt. 1173 at 22 (Instruction No. 18). *Zumwalt* explained that a further showing that the insurer's failure to settle "maliciously, willfully, *intentionally*, or *recklessly* inflicted injury on" the insured was necessary to obtain "punitive damages." 228 S.W.2d at 756 (emphasis added). But that further showing is not necessary to prove BFRS's bad-faith element and recover actual damages. In line with these settled principles, the Court instructed the jury that "[i]f you find that Zurich breached its fiduciary duty to Fluor, you can find that Zurich acted in bad faith." Dkt. 1173 at 22 (Instruction No. 18). Ignoring that instruction and well-established Missouri law, Zurich added to Fluor's burden by insisting that a breach of fiduciary duty must be committed "intentionally or recklessly" for it to reflect bad faith.

Zurich then attempted to water down its duties even further, asserting that Zurich would not be liable if it "fail[ed] to do its best" or "there was something more that Zurich could have done." Dkt. 1195 (Tr. Vol. 11A) at 80:1-5.  In closing argument, Zurich insisted that whether it—as an insurer with a duty to defend a claim against its insured—was obligated to "offer[] something itself" to settle claims against Fluor was an "interesting question," but "not the question you have to answer." *Id*. at 79; *id.* at 56 (Zurich arguing that "why wasn't Zurich Fluor's guardian angel saving Fluor from itself?  Those are interesting questions, but they have nothing . . . to do with this case").  But Missouri law is clear that not making a "settlement offer on [an insured's] behalf" is itself bad faith. *See Advantage*, 449 S.W.3d at 26.  And contrary to Zurich's argument, insurers are also obligated to do "something more," Dkt. 1195 (Tr. Vol. 11A) at 80:1-5:  An insurer engages in bad faith by, *e.g.*, "not fully investigating and evaluating a third-party claimant's injuries," or "not recognizing the severity of a third-party claimant's injuries and the probability that a verdict would exceed policy limits." *Johnson*, 262 S.W.3d at 662.

This improper argument pervaded Zurich's closing and prejudiced Fluor.  As an insurer subject to fiduciary duties of care and loyalty, Zurich was obligated to inform Fluor about the claim against it and put Fluor's interest first in seeking to resolve it. *E.g.*, *Scottsdale*, 448 S.W.3d at 828 ("insurer's duty is to protect the insured's financial interests").  But the trial record reflected that Zurich did just the opposite by not making any funds available to contribute to settlement, not saying anything about this lack of authority to its insured, Fluor, and not settling on Fluor's behalf, let alone informing Fluor of an opportunity to settle. *See Johnson*, 262 S.W.3d at 666 (insurer that "chose to do nothing" in face of settlement opportunity acted in bad faith).  Yet Zurich expressly told the jury that doing nothing could not be bad faith.  This repeated reliance on a "mistaken view of the law" "could have directly resulted in the jury's verdict." *Gruca*, 51 F.3d at 646.

16

**4.      Collectively, Zurich's Misleading Arguments Were Clearly Injurious**

Each of Zurich's counsel's misstatements in closing argument independently warrants a new trial because each was clearly injurious. *Supra* at 8-16. Considered "as a whole," Zurich's uncorrected misstatements on multiple elements of Fluor's claim undoubtedly injured Fluor. *Morrissey v. Welsh Co.*, 821 F.2d 1294, 1304 (8th Cir. 1987). Given the prior hung jury, this case is, at minimum, "close," which "increase[s]" "the possibility that" Zurich's "improper conduct could have influenced the jury's verdict." *Blair v. Wills*, 420 F.3d 823, 830 (8th Cir. 2005).

**C.      A New Trial Is Warranted Because Improper Evidence Was Admitted And Erroneous Instructions Were Given As To Zurich's Reservation Of Rights**

A new trial is also warranted due to the erroneous admission of evidence and rejection of a jury instruction regarding the effect of Zurich's reservation of rights letters. An improper jury instruction requires a new trial when it does not "'fairly and adequately submit[] the issues in the case to the jury'" and that error "affect[s] a party's substantial rights." *Major Brands*, 121 F.4th at 667. An evidentiary error requires a new trial when that error has a "'substantial influence' on the jury's verdict." *Peterson*, 60 F.3d at 475. Both standards are satisfied here.

As the motion in limine order recognized, Zurich's defense pursuant to a "reservation of rights" did not "establish[] waiver of Zurich's right to settle claims or prohibit voluntary settlement payments by Fluor." Dkt. 680 at 29. The motion in limine ruling forbade Zurich from raising this argument at trial. But Zurich presented witness testimony designed to support just such an argument. As noted above, Hiestand told the jury that when an insurer defends with a reservation of rights, the "insured"—not the insurer—"controls the cases." Dkt. 1187 (Tr. Vol. 7A) at 49:23-50:2, 77:4-9, 78:12-15. Hiestand's testimony was "exactly the sort of opinion testimony about an ultimate conclusion" that is impermissible. *Valadez*, 758 F.3d at 982. This testimony and argument were squarely precluded by Judge Webber's motion in limine ruling that Zurich's

17

defense pursuant to a "reservation of rights" did not "establish[] waiver of Zurich's right to settle claims or prohibit voluntary settlement payments by Fluor." Dkt. 680 at 29. By eliciting such improper testimony, Zurich "led the jury to focus on the wrong question" regarding the reservation of rights letters' effect on Zurich's policy rights—which is a "question of law" that should not have been left open. *Peterson*, 60 F.3d at 475.

In light of this testimony and Zurich's arguments, Fluor proposed a curative instruction stating: "Zurich's *reservation of rights and* the hiring of independent defense counsel to conduct the day-to-day defense of the Bronson-Smoger lawsuits did not affect Zurich's rights under the insurance policies." Dkt. 1174 at 3 (Instruction No. 15B (Alternative)) (emphasis added); Dkt. 1194 (Tr. Vol. 10B) at 59:12-64:8; Dkt. 1195 (Tr. Vol. 11A) at 4-6, 7:12-8:20. But the Court refused to give this instruction.

That was error. Fluor's proposed jury instruction "correctly state[d] the applicable law," addressed a matter "not adequately covered by the charge," and involved a point "so important that failure to give the instruction seriously impaired [Fluor's] ability to present an effective case." *Cox v. Dubuque Bank & Tr. Co.*, 163 F.3d 492, 496-97 (8th Cir. 1998). Fluor's proposed instruction was consistent with both the law and the Court's existing, correct motion in limine ruling on this score. The instructions did not otherwise address the reservation of rights letters, which were a central point of dispute between the parties. Zurich "relied heavily" on Hiestand's testimony about their function in presenting evidence and in its closing argument. *Id*. at 497; *see* Dkt. 1195 (Tr. Vol. 11A) at 71:1-5. The net result was that the jury wrongly was led to believe that the reservation of rights letters dispositively established that Zurich had waived its rights under the insurance policies, and that Fluor therefore could not establish the first two elements of its BFRS claim. The failure to instruct the jury on the significance of the reservation of rights letters

18

in the waiver inquiry thus "improperly magnified the probative value of" those letters and requires

a new trial.  *Cox*, 163 F.3d at 497-98.

> **D.     A New Trial Is Warranted Because The Jury's Verdict Was Against The Weight Of The Evidence**

A new trial is warranted because the verdict "is against the great weight of the evidence so

as to constitute a miscarriage of justice."  *Bank of Am., N.A. v. JB Hanna, LLC*, 766 F.3d 841, 851

(8th Cir. 2014).  In considering whether to grant a new trial based on the weight of the evidence,

"the district court is authorized to analyze" witness testimony, "make a credibility determination,"

and "find the testimony unworthy of belief."  *White v. Pence*, 961 F.2d 776, 782 (8th Cir. 1992).

This is an appropriate case for the court to exercise its discretion to find a verdict against

the weight of the evidence, because the decisive factual issues regarding Zurich's conduct are not

in material dispute.  Rather, as noted, determination of each element turned on the legal

significance of those largely undisputed facts.  This Court should properly apply the law to those

largely undisputed facts, and find that the verdict was against the weight of the evidence.

*First*, the exclusive right to settle element is overwhelmingly satisfied.  Under the policies,

Zurich, the insurer, had the right to ███████████████████████████████████

████████████████████████████████████████████████████████████  Ex.

1 at .0003, .0012.  The reservation of rights letters made clear that Zurich reserved the right to pay

██████████████████████████████████████████████████████████████

███████████████████  and warned that coverage would be ████████████████

████████████████  Ex. 2 at .0003, .0005; Ex. 3 at .0004, .0007.  The uncontradicted

evidence reflects that Zurich never waived these rights with respect to the Bronson-Smoger

lawsuits via written endorsement, as the policies require. Dkt. 1190 (Tr. Vol. 8B) at 36:19-23.[2] It is thus indisputable that Zurich had "reserved" the "exclusive right" to contest and settle the cases, Dkt. 1173 at 18 (Instruction No. 14), and "[a]ny conclusion by the jury that [Zurich] established" a waiver of rights under the policy would therefore be "against the great weight of the evidence." *Bank of Am., N.A.*, 766 F.3d at 853. Zurich's contrary argument is based on assertions about day-to-day control, the use of independent counsel, and Zurich's role in settlement and mediation discussions. Under the legal framework set forth in the motion in limine order—but disregarded by Zurich at trial, most egregiously during closing—Zurich has no cognizable evidence that it waived its exclusive right to control settlement of the claims here.

*Second*, the prohibition of voluntary assumption of liability element is likewise conclusively met. The policies at issue provide that Fluor, the insured, ████████████████ ████████████████████████████████ Ex. 1 at .0003 (emphasis added). The reservation of rights letters state that coverage is ████████ ████████████████████████████████ including ████████████████ ████████████████████████████ Ex. 2 at .0004; Ex. 3 at .0005. Zurich's evidence purporting to negate this element was that Fluor neither wanted to pay for a specific settlement opportunity nor asked Zurich to do so. But whether Fluor sought to pay would only matter under Zurich's fabricated two-part test for BFRS's second element. *Supra* at

---

[2] The evidence shows that Zurich purported to waive its rights *only* with respect to the *Warden* lawsuit in 2008. *See* Ex. 5 (P-0025) at .0002 ████████████████ ████████████████████████████████ ████████████████████████████████ ████████

11-14. Under the proper test, what matters is whether Zurich waived the right to prohibit voluntary payments, and the record is clear that it did not do so.

*Third*, the evidence of Zurich's bad faith also weighed decidedly in Fluor's favor. Fluor had $21.5 million in available limits under the Zurich policies. Dkt. 1173 at 24 (Instruction No. 20). But it was undisputed that Zurich came to the mediation with *no authority* to contribute a single dollar of that $21.5 million to settlement.[3] Indeed, well before the mediation, Zurich had decided not to authorize a settlement of any amount for the entire 2010 calendar year, but it did not tell Fluor that in advance.[4] Instead, Zurich told Fluor that the mediation would proceed in the same way as the prior mediations, in which Zurich authorized money for covered plaintiffs in advance and required that its contribution be used to settle the claims against Fluor.[5] But Zurich refused to follow that precedent during the mediation on November 18, 2010. Zurich then compounded its bad faith both during and after that mediation by failing to tell Fluor that there

---

[3] Ex. 6 (P-0110Z) at .0027 ███████████ ███████ Ex. 7 (P-0140) ███████████ ███████████ ; Ex. 8 (P-0148) ███████████ Ex. 9 (P-0167) at .0002 ███████████████ ███████████████ Ex. 11 (P-0226) at .0001 ███ ███████████ Dkt. 1180 (Tr. Vol. 3A) at 59:11-60:1; Dkt. 1182 (Tr. Vol. 4A) at 6:8-12; Dkt. 1169-4 (Halpern Dep.) at 133:11-15 (Zurich did not bring a "penny"); *id*. at 146:16-23 ("the fact that they showed up with nothing was astounding").

[4] Ex. 12 (P-0117) at .0001 ███████████████████ ███████████████████ Dkt. 1185 (Tr. Vol. 6A) at 75:7-19; Dkt. 1187 (Tr. Vol. 7A) at 53:9-54:15, 56:5-8, 58:1-59:4; Dkt. 1191 (Tr. Vol. 9A) at 28:7-16.

[5] Dkt. 1189 (Tr. Vol. 8A) at 101:19-102:10, 111:21-25 (Zurich previously "authorize[d] or commit[ted] to fund settlement agreements for Doe Run before the mediation started"); Dkt. 1190 (Tr. Vol. 8B) at 48:24-49:12, 59:23-60:4, 106:5-9; Ex. 13 (D-208A) at .1 ███████████ ███████ Ex. 7 (Zurich acknowledging ███████████ Ex. 14 (P-0160) (Wilson 11/18/10 letter insisting any settlement include Fluor); Ex. 15 (P-0204A) at .0006-.0007 (12/3/10 CSR summarizing prior settlements; Zurich paid for covered plaintiffs, Doe Run paid the balance).

was an opportunity to include Fluor in a global settlement with the addition of $4 to $6 million.[6]

Zurich nevertheless contended that there was no *legal* obligation for Zurich to act as Fluor's "guardian angel," and that while it was an "interesting question" whether Zurich could have done more to protect Fluor's interests at the November mediation, Zurich was not *legally* required to do so. Dkt. 1195 (Tr. Vol. 11A) at 56:7-10. But that is not correct. If Zurich decided not to put any money forward at that mediation because of its own financial interests and further decided to conceal that information from Fluor (both of which it undisputedly did), that is bad faith. To the extent the jury concluded otherwise, that determination would have been premised on a legal misunderstanding and against the weight of the evidence.

*Finally*, Fluor's evidence of damages follows inexorably from satisfying the other elements. As a result of Zurich's failure to settle the claims against Fluor, Fluor incurred a $300 million loss to resolve the same claims. Ex. 16 (P-0394) at .0002 (Settlement Agreement reflecting payment); Ex. 17 (P-0795) (wire transfer confirmation for Fluor's 2014 settlement payment). It is unquestionable that if Zurich had exercised its contractual authority to settle the case at the November 2010 mediation, then Fluor would not have incurred its subsequent damages. In other words, if Zurich's conduct was bad faith, damages are necessarily established. Zurich's contrary argument rested on the tenuous assertion that the $300 million amount of Fluor's settlement may have been motivated by other concerns. Dkt. 1195 (Tr. Vol. 11A) at 91:1-15. But the key point is that Fluor would never have been required to pay *any* amount had Zurich made its insurance proceeds available to finalize a global settlement that would have resolved all cases against Fluor

---

[6] Ex. 6 at .0030 (11/23/10 Rausa note: ██████████████████████████ Dkt. 1189 (Tr. Vol. 8A) at 17:12-19 (Dowd agreeing that $5-6 million contribution from Zurich would have secured the global settlement at the mediation and into December 2010); Dkt. 1169-4 (Halpern Dep.) at 149:16-19 ("[I]f Zurich had come with a meaningful amount of financial participation, then the deal would have gotten done for everyone.").

22

in November 2010.  *See Scottsdale*, 448 S.W.3d at 828-29 (where insurer's "failure to act on . . . earlier settlement demands was in bad faith and caused [insured] to lose its opportunity to fully settle the claim within [insurer's] policy limits," that tortious conduct obligates the insurer to "make [the insured] whole or put [insured] in the same position as if [insurer] had performed its obligations to settle in good faith").  The verdict cannot stand.

### E.    A New Trial Is Warranted Because Evidence Of Zurich's Bad Faith Was Erroneously Excluded

A new trial is also required because "there is no reasonable assurance that the jury would have reached the same conclusion had" significant evidence of Zurich's bad faith "been admitted." *Adams v. Fuqua Indus., Inc.*, 820 F.2d 271, 273 (8th Cir. 1987).

*First*, the Court should have permitted evidence that the Bronson-Smoger plaintiffs' $60 million global settlement offer remained open until December 13, 2010.  As Judge Webber recognized in his initial ruling allowing this evidence, that "the offeror remained willing to negotiate a settlement for the terms of the offer after [Doe Run's] alleged rejection" is relevant "[i]n a *tort* action for bad faith [refusal] to settle" because it indicates that "a settlement *opportunity* may have nevertheless remained for Fluor."  Dkt. 680 at 7.  The later ruling reversing course and prohibiting this evidence was wrong and prejudiced Fluor.

Under Missouri law, insurers must act in good faith regarding a "chance" or "opportunity" to settle.  *Scottsdale*, 448 S.W.3d at 828; *Purscell v. Tico Ins. Co.*, 790 F.3d 842, 847 (8th Cir. 2015) (examining whether insurer "had a reasonable opportunity to settle").  Evidence from the Bronson-Smoger plaintiffs' counsel that "despite the tentative separate settlement with Doe Run, a global settlement opportunity was not withdrawn prior to December 13, 2010" thus was relevant to the jury's determination whether Zurich squandered a chance to settle the claims against Fluor in bad faith. Dkt. 680 at 7.  While Fluor was prevented from presenting such evidence, Zurich was

23

allowed to present contrary evidence and argument.  For instance, Zurich's claims adjuster Bradley Rausa testified that after Doe Run counteroffered, the plaintiffs "did not want to negotiate with Fluor" and "wanted to pursue negotiations with Doe Run only."  Dkt. 1182 (Tr. Vol. 4A) at 83:5-15.[7]  Fluor was prejudiced because it could not counter with evidence that, in fact, a global settlement involving Fluor remained on the table.  Had the jury been told that such a settlement opportunity remained available and that Zurich knew about it but failed to do anything, the jury may have concluded that Zurich acted in bad faith.  *See Johnson*, 262 S.W.3d at 662.

*Second*, Fluor should have been allowed to show the jury a November 7, 2010 memorandum in which Zurich's coverage counsel informed Zurich of the global settlement opportunity and advised Zurich to authorize funding for the settlement, which would reduce its "bad faith exposure."  Dkt. 948 at 4 (quoting P-0129 at .0011).  Fluor obtained this memorandum because Judge Webber ordered Zurich to produce it "without redaction or any claims of privilege" after Zurich's serious discovery misconduct.  Dkt. 308 at 2.  The memorandum was highly probative of Zurich's state of mind with respect to the 2010 global settlement opportunity, as Judge Webber recognized in his summary judgment ruling.  *See* Dkt. 481 at 6, 36.  Discussions with counsel are "certainly relevant" to an insurer's state of mind, and the Court erred by excluding such evidence.  *Med. Protective Co. v. Bubenik*, No. 4:06CV01639 ERW, 2008 WL 2132100, at

---

[7] Rausa's testimony was directly contradicted by a sentence redacted from a memorandum by Zurich's own counsel stating that the plaintiffs viewed Doe Run's counteroffer ███████ ███████████████ and that they ███████ ████████████████ Ex. 10 (P-0167) (unredacted version) at .0002; *see* Dkt. 1064 (Tr. Vol. 6B) at 22:24-23:2 (redacted sentence); Dkt. 1183 (Tr. Vol. 4B) at 97:20-23 (Rausa testifying that Doe Run settlement "made it a lot less likely that [plaintiffs] would take only the difference from" Fluor).  It was error to prohibit Fluor from offering the unredacted memorandum into evidence because it allowed Zurich to paint a one-sided, false picture of the 2010 mediation and the implications of the difference between the plaintiffs' global settlement demand and the Doe Run settlement.  Dkt. 1064 (Tr. Vol. 6B) at 22:6-27:1.

24

*2 (E.D. Mo. May 20, 2008).   This exclusion prejudiced Fluor:   Had the jury reviewed this evidence, it may have concluded that Zurich acted in bad faith when—"contrary to advice from its counsel"—it failed to take advantage of the opportunity to settle the claims against Fluor.  *Bamford Inc. v. Regent Ins. Co.*, 822 F.3d 403, 412-13 (8th Cir. 2016).

*Third*, Fluor should have been allowed to present evidence that Zurich's 2010 conduct violated its own "Best Practices Guidelines."  Dkt. 904, Ex. A (P-0074).  As the Missouri Court of Appeals' analysis in *Johnson* demonstrates, evidence that the insurer's conduct in refusing to settle a claim failed to "follow its own manual for handling claims" is highly relevant in a BFRS case.  262 S.W.3d at 664.  The Court erred in nonetheless excluding the Guidelines, which may have allowed the jury to conclude that BFRS liability was appropriate here because Zurich's actions diverged from its own best practices.

## IV.    CONCLUSION

For these reasons, Fluor respectfully requests that the Court order a new trial limited to the third and fourth elements of Fluor's claim or, alternatively, a new trial on all four elements.

DATED:   December 17, 2025

Respectfully submitted,

**LATHAM & WATKINS LLP**

*/s/ John T. Ryan*
John T. Ryan # 211899CA
Brook B. Roberts # 214794CA
Steven Lesan # 294786CA
**LATHAM & WATKINS LLP**
12670 High Bluff Drive
San Diego, CA 92130
858.523.5400 telephone
858.523.5450 fax
*jake.ryan@lw.com*
*brook.roberts@lw.com*
*steven.lesan@lw.com*

Joseph Serino, Jr. # 2407492NY
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
212.906.1200 telephone
212.751.4864 fax
*joseph.serino@lw.com*

Grant Strother # 284612CA
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
415.395.8083 telephone
415.395.8095 fax
*grant.strother@lw.com*

Kirsten C. Jackson # 265952CA
**LATHAM & WATKINS LLP**
10250 Constellation Boulevard, Suite 1100
Los Angeles, CA 90067
424.653.5500 telephone
424.653.5501 fax
*kirsten.jackson@lw.com*

Booker T. Shaw # 25548MO
**THOMPSON COBURN LLP**
One US Bank Plaza
St. Louis, MO 63101
314.552.6087 telephone
314.552.7000 fax

26

*bshaw@thompsoncoburn.com*

**ATTORNEYS FOR PLAINTIFF FLUOR CORPORATION**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 17, 2025, the foregoing document was served on all counsel of record by electronic mail.

DATED:  December 17, 2025

*/s/ John T. Ryan*
John T. Ryan # 211899CA
Attorney for Plaintiff Fluor Corporation
Latham & Watkins LLP
12670 High Bluff Drive
San Diego, CA 92130
Tel: 1.858.523.5400